**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
March 3, 2014
**JEFFREY P. COLWELL, CLERK**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:13-cv-3422-WJM-CBS


ARAPAHOE SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
HAMPDEN SURGERY CENTER, LLC,
KISSING CAMELS SURGERY CENTER, LLC,
SURGCENTER OF BEL AIR, LLC, and
WESTMINSTER SURGERY CENTER, LLC,

      Plaintiffs,

v.

CIGNA HEALTHCARE, INC.,
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
CIGNA HEALTHCARE – MID-ATLANTIC, INC., and
CIGNA HEALTHCARE OF COLORADO, INC.,

      Defendants.

---

## FIRST AMENDED COMPLAINT

---

      Plaintiffs Arapahoe Surgery Center, LLC, Cherry Creek Surgery Center, LLC,

Hampden Surgery Center, LLC, Kissing Camels Surgery Center, LLC, SurgCenter of Bel Air

LLC, and Westminster Surgery Center LLC are ambulatory surgical care facilities providing

surgical services to patients not requiring hospitalization to patients with health benefits provided

by Defendants CIGNA Healthcare, Connecticut General Life Insurance Company, CIGNA

Healthcare – Mid-Atlantic, Inc. and/or CIGNA Healthcare of Colorado, Inc. (collectively,

"CIGNA," or "Defendants").

Plaintiffs Kissing Camels Surgery Center, LLC, SurgCenter of Bel Air, LLC, and Westminster Surgery Center, LLC bring this action for violations of the Employee Retirement Income Security Act ("ERISA"), breach of contract, and breach of the implied covenant of good faith and fair dealing against Defendants CIGNA Healthcare and Connecticut General Life Insurance Company. Kissing Camels Surgery Center also brings these claims against CIGNA Healthcare of Colorado, Inc., and SurgCenter of Bel Air also brings these claims against CIGNA Healthcare – Mid-Atlantic, Inc.

Plaintiffs Arapahoe Surgery Center, LLC, Cherry Creek Surgery Center, LLC, Hampden Surgery Center, LLC, and Kissing Camels Surgery Center, LLC ("Colorado Plaintiffs") bring this action for violations of Section 1 of the Sherman Antitrust Act and violations of the Colorado Antitrust Act against Defendants CIGNA Healthcare, Connecticut General Life Insurance Company, and CIGNA Healthcare of Colorado, Inc. Plaintiffs allege as follows:

### Introduction

1.      Plaintiffs are ambulatory surgical care facilities which provide surgical procedures and services to patients not requiring hospitalization.

2.      Patients greatly benefit from treatment in ambulatory surgical care facilities as opposed to in hospitals because the cost of care is much less expensive, the risk of infection is much less, and scheduling is more flexible and convenient.

3.      Through their unlawful actions in refusing to pay Plaintiffs amounts due for treatment of their subscribers[1] (the ERISA and breach of contract allegations) and in conspiring with other health insurers and hospital systems in a joint boycott designed to drive the Colorado

---

[1] As used herein, the terms "CIGNA subscribers" or "subscribers" refer to member or beneficiaries of plans that are either insured by CIGNA or are insured by a plan for which CIGNA is the administrator.

Plaintiffs from the market (the antitrust allegations), the Defendants have not only damaged the Plaintiffs, but have also acted to deprive their subscribers of their choice of health care providers and to prevent them from using insurance benefits for which they have paid premiums.

## The ERISA and Breach of Contract Allegations

4.      Plaintiffs have not contracted with CIGNA and consequently are considered out-of-network providers with CIGNA.  Plaintiffs' ERISA and breach of contract claims arise from CIGNA's arbitrary and unilateral refusal to pay and/or from its draconian reduction of payments for claims for medically necessary services provided to CIGNA subscribers.  These arbitrary payment determinations stem from, among other things, a contrived "fee forgiveness" policy specifically designed to allow CIGNA to avoid its obligation to pay benefits and to increase its profits through "shared savings" with its employer customers (described below).  This policy is implemented when out-of-network medical providers such as the Plaintiffs endeavor to make medical care affordable by reducing patients' coinsurance payments to their in-network benefit levels.  When this occurs, CIGNA misconstrues subscribers' benefit plans to allow it to avoid paying any benefits or to pay *de minimus* amounts even though their subscribers have paid additional premiums for benefit plans allowing treatment at out-of-network facilities.  As such, CIGNA's "fee forgiveness" policy and its adjudications of medical claims thereunder serve only to unnecessarily increase healthcare costs to its subscribers and to breach its fiduciary duty to its subscribers to adjudicate medical claims solely in the subscribers' interest without regard to its own financial interest.

5.      The amounts CIGNA is required to pay for services to out-of-network medical providers such as Plaintiffs are determined by the terms of a patient's benefit plan.

6.      In order to enable CIGNA patients to use their out-of-network benefits at the facility of their choice at affordable rates, Plaintiffs reduce patients' co-pays, deductibles, and co-insurance amounts to in-network levels.   Plaintiffs do not waive patient responsibilities and patients remain responsible for the full amount of the charges if CIGNA does not pay or drastically reduces payments on the medical claims.   Plaintiffs routinely require patients to sign forms acknowledging their responsibility to pay if their insurer does not when they seek treatment at Plaintiffs' facilities. Plaintiffs also routinely require patients to sign assignments of benefits forms, assigning all of their rights to seek payment from CIGNA to Plaintiffs.

7.      CIGNA does not dispute that Plaintiffs have provided medically necessary services to CIGNA subscribers.

8.      CIGNA likewise does not dispute that the CIGNA subscribers at issue have the contractual right to obtain healthcare from out-of-network providers.

9.      Instead, CIGNA purports to deny Plaintiffs' claims or to dramatically reduce their payments based solely on a theory contrived by CIGNA.

10.     According to this theory, which CIGNA refers to as its "fee-forgiveness" policy, if Plaintiffs reduce the amount a CIGNA subscriber must initially pay out-of-pocket, then CIGNA has no obligation whatsoever to pay for the services Plaintiffs provide or, alternatively, CIGNA may unilaterally and drastically reduce the amount CIGNA will pay for those services.

11.     CIGNA's "fee forgiveness" policy has no contractual basis or legal justification. Rather, upon information and belief, CIGNA misconstrues language in many of its benefit plans stating that CIGNA is not responsible for paying benefits for medical services for which subscribers have no responsibility to pay to allow it to deny payment when out-of-network

4

providers reduce patients' co-pays, deductibles or co-insurance amounts. Moreover, CIGNA insists on this interpretation even when, as is the case with medical services provided by Plaintiffs, CIGNA subscribers remain obligated to pay the full charges if CIGNA does not.

12.     Upon information and belief, CIGNA has implemented and enforced the policy in order to increase CIGNA's profits, to discourage subscribers' use of out-of-network services and to coerce Plaintiffs into becoming in-network providers. The policy increases CIGNA's profits because benefits not paid to medical providers are considered "savings" to the employers and other entities contracting with CIGNA to provide health benefit plans to their employees. On information and belief, many of these contracts compensate CIGNA in part by allowing CIGNA to share some of these savings. CIGNA also benefits when facilities are forced to become in-network providers because rates paid to in-network providers are generally lower than rates paid to out-of-network providers.

13.     Plaintiffs have been damaged by CIGNA's illegal conduct and have lost in excess of $6 million dollars as a result of CIGNA's failure to properly pay for the medical services Plaintiffs have provided to CIGNA subscribers.

14.     Absent declaratory and injunctive relief, CIGNA's illegal conduct will continue unabated.

### The Antitrust Allegations

15.     In Colorado, CIGNA conspired with the two dominant hospital systems in Denver and Colorado Springs, a trade association, and other health insurers in a joint boycott designed to hurt the Colorado Plaintiffs' business and to drive them out of the market.

16.     On information and belief, the conspiracy was developed over a series of

conference calls, meetings, and e-mail communications at which CIGNA was represented throughout the end of 2011 and 2012. The conspiracy consisted, *inter alia,* of an agreement between the co-conspirators for CIGNA and other health insurers to terminate and/or sanction medical providers who referred patients to the Colorado Plaintiffs' facilities, thereby depriving the Colorado Plaintiffs of patient referrals and the dollars that would have been associated with the care of those patients.

17.     In addition to attempting to put the Colorado Plaintiffs out of business, the intent of the conspiracy was to steer patients to facilities owned in whole or in part by the co-conspirator hospital systems. Such steerage was intended to increase CIGNA's and the health insurer co-conspirators' profits because the hospital systems and their ambulatory surgical care facilities were generally in-network with the insurers and consequently are paid much lower in-network rates.

## Parties

18.     Plaintiff Arapahoe Surgery Center, LLC d/b/a SurgCenter on Dry Creek ("Arapahoe") is a Colorado limited liability company with its principal place of business in Englewood, Colorado. Arapahoe was licensed to do business on April 12, 2010. It has suffered and in all likelihood will continue to suffer antitrust injury as a result of CIGNA's anticompetitive activities and agreements in restraint of trade, including, but not limited to, decreased utilization and/or decreased revenues.

19.     Plaintiff Cherry Creek Surgery Center, LLC ("Cherry Creek") is a Colorado limited liability company with its principal place of business in Denver. Colorado. Cherry Creek was licensed to do business on June 21, 2012. It has suffered and in all likelihood will continue to suffer antitrust injury as a result of CIGNA's anticompetitive activities and

agreements in restraint of trade, including but not limited to decreased utilization and/or decreased revenues.

20.     Plaintiff Hampden Surgery Center, LLC ("Hampden") is a Colorado limited liability company with its principal place of business in Denver, Colorado.  Hampden was licensed to do business on September 19, 2012.  It has suffered and in all likelihood will continue to suffer antitrust injury as a result of Defendants' anticompetitive activities and agreements in restraint of trade, including, but not limited to, decreased utilization and/or decreased revenues.

21.     Plaintiff Kissing Camels Surgery Center, LLC ("Kissing Camels") is a Colorado limited liability company with its principal place of business in Colorado Springs, Colorado. Kissing Camels was licensed to do business on June 14, 2010.  Kissing Camels has provided services to members or beneficiaries that are either insured by CIGNA or are insured by a plan for which CIGNA is the administrator.  Kissing Camels has sought payments pursuant to assignments and has been denied payment based on CIGNA "fee-forgiveness" policy.  In addition, Kissing Camels has suffered and in all likelihood will continue to suffer antitrust injuries as a result of CIGNA's anticompetitive activities and arrangements and agreements in restraint of trade, including, but not limited to decreased utilization and/or decreased revenues.

22.     Plaintiff SurgCenter of Bel Air, LLC ("SurgCenter of Bel Air") is a Maryland limited liability company with its principal place of business in Bel Air, Maryland.  SurgCenter of Bel Air has provided services to members or beneficiaries that are either insured by CIGNA or are insured by a plan for which CIGNA is the administrator.  SurgCenter of Bel Air has sought payment pursuant to assignments and has been denied payment based on CIGNA "fee-

forgiveness" policy.

23.     Plaintiff Westminster Surgery Center, LLC ("Westminster") is a Maryland limited liability company with its principal place of business in Westminster, Maryland.  Westminster has provided services to members or beneficiaries that are either insured by CIGNA or are insured by a plan for which CIGNA is the administrator.  Westminster has sought payments pursuant to assignments and has been denied payment based on CIGNA's "fee-forgiveness" policy.

24.     Defendant CIGNA Healthcare, Inc. is a Vermont corporation with its principal place of business in Philadelphia, Pennsylvania that does business nationally.

25.     Defendant Connecticut General Life Insurance Company is a Connecticut corporation with its principal place of business in Connecticut that does business nationally, and during all times acted as a "third party administrator" of various employers' healthcare plans or as an insurer of healthcare insurance policies.

26.     Defendant CIGNA Healthcare of Colorado, Inc. is a Colorado corporation with its principal place of business in Colorado that does business in Colorado and nationally.  During all times involved in this Complaint, it acted as either the "third party administrator" of various employers' healthcare plans or as an insurer of various healthcare insurance policies.

27.     Defendant CIGNA Healthcare – Mid-Atlantic, Inc. is a Maryland corporation with its principal place of business in Maryland that does business nationally and during all times acted as either the "third party administrator" of various employers' healthcare plans or as an insurer of various healthcare insurance policies.

28.     When CIGNA does not directly insure group health plans, it functions as the third

party "plan administrator" as that term is defined under ERISA, and thus assumes all obligations imposed by ERISA on such plan administrators.  CIGNA serves in this capacity, for example, for self-funded plans in which a plan sponsor (such as an employer or a union) acts as the insurer and retains CIGNA to administer the plans.

## Jurisdiction and Venue

29.    This Court has subject matter jurisdiction over this action pursuant 28 U.S.C. §1331, in that most of the claims asserted herein are brought under federal statutes and necessarily involve adjudication of one or more federal questions.  For Plaintiffs' ERISA claims, jurisdiction additionally arises under §502(e) of ERISA, 29 U.S.C. §1132(e).  For Plaintiffs' Sherman Act claims, jurisdiction additionally arises under 28 U.S.C. §1337.  This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367.

30.    This Court has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of this Court and each Defendant systematically and continuously conducts business in this State and otherwise has minimum contacts with this State sufficient to establish personal jurisdiction over each of them.

31.    Venue is appropriately established in this Court under 28 U.S.C. §1391 and 29 U.S.C. §1132(e)(2) because Defendants conduct a substantial amount of business in this District, including marketing, advertising and selling insurance products, and administering health plans inside this District.

## Facts

32.    CIGNA offers health insurance plans that differentiate between coverage for medical treatment provided by (i) in-network providers who have negotiated discounted rates with

the insurer and (ii) out-of-network providers.

33.     Health insurance plans that permit subscribers to seek medical services from out-of-network healthcare providers are more expensive than plans that limit members' coverage to care provided by in-network providers.   Accordingly, members pay higher premiums for out-of-network benefits for the flexibility and right to obtain medical care from the provider of their choice.

34.     CIGNA prefers for its members to utilize its panel of in-network providers because it pays far less for in-network services under its provider agreements than it is required to pay under the out-of-network benefit plans for which patients have paid additional premiums.   In-network fees are generally set at rates lower than a provider's usual and customary charges in exchange for health insurers' steering patients to in-network providers.

35.     The plans at issue permit members and beneficiaries to obtain healthcare from out-of-network or non-participating providers.

36.     Plaintiffs are ambulatory care facilities that have not contracted with CIGNA and, accordingly, are considered to be out-of-network providers.

37.     Plaintiffs have provided and continue to provide medical services to CIGNA subscribers.

38.     Plaintiffs disclose to CIGNA subscribers that they are out-of-network providers.

39.     Plaintiffs require that all CIGNA subscribers sign documents assigning to Plaintiffs the subscribers' benefits and rights under their plans, including the rights to appeal benefit denials and to sue.   These assignments confer upon Plaintiffs the standing to bring this action with regard to both ERISA and non-ERISA plans.

40.     Plaintiffs also require that all CIGNA subscribers sign documents whereby the subscriber agrees to be personally responsible for all charges.

### Facts – ERISA and Breach of Contract Claims

41.     CIGNA has denied numerous claims submitted by Plaintiffs or, alternatively, has drastically reduced its payments to Plaintiffs based on CIGNA's "fee forgiveness" policy which, according to CIGNA, permits CIGNA to deny payment or to dramatically reduce payments whenever a provider discounts the initial amount a subscriber must pay out of pocket.

42.     CIGNA purportedly bases its "fee forgiveness" policy on language in many of its benefits plans that exclude from coverage charges for which subscribers are not billed or for which they are not obligated to pay.   Plaintiffs maintain that the "fee forgiveness" policy misconstrues the benefit plan language.   Moreover, even if CIGNA's interpretation were correct, CIGNA subscribers remain obligated to pay Plaintiffs' charges, and therefore its "fee forgiveness" policy should not be applied to Plaintiffs' claims.

43.     On information and belief, CIGNA's "fee forgiveness" policy was designed with the express purpose of forcing out-of-network providers to go in-network so that CIGNA would pay the lower in-network rates.   On further information and belief, CIGNA's "fee forgiveness" policy was designed with the express purpose of significantly decreasing payments to out-of-network providers, thereby entitling CIGNA to shared savings payments available under many of its customer contracts.

44.     In application, the "fee forgiveness" policy renders the out-of-network benefits for which its subscribers have paid additional premiums illusory.

45.     Plaintiffs have implemented payment policies which often reduce patients' out of

pocket costs to match their in-network benefit levels.  This policy is designed to allow patients to have their medically necessary treatments performed in the facility of their choice without incurring significant out of pocket costs.  This policy has been consistently and repeatedly fully disclosed to CIGNA.

46.     Pursuant to their agreements with Plaintiffs, however, CIGNA subscribers are financially liable for payment should CIGNA fail to fully pay Plaintiffs' claims.

47.     Plaintiffs have appealed numerous denials or reductions in benefits, to no avail. CIGNA's correspondence and response to appeals regarding its "fee-forgiveness" policy make clear that appeals of CIGNA's benefit determinations pursuant to this policy would be futile. Accordingly, Plaintiffs have either sufficiently exhausted administrative appeals or for any claims for which an appeal has not yet become final, the exhaustion requirement under ERISA should be excused.

48.     Under federal law, CIGNA is an ERISA fiduciary for the ERISA health plans at issue.  Accordingly, CIGNA owes its plan members the fiduciary duties of care and loyalty, and must apply plan provisions in good faith and as required under ERISA.  Moreover, as a fiduciary, CIGNA is required to administer its plans solely in the interest of subscribers, rather than in furtherance of its own self-interest.  When subscribers assign their ERISA benefits to healthcare providers such as Plaintiffs, CIGNA also owes such fiduciary duties and obligations to act in good faith to the assignee healthcare providers.  CIGNA has breached these duties and, in doing so has violated ERISA.

49.     In the event CIGNA fails to pay for these medically necessary services rendered, its members will be responsible for any amounts remaining due on their bills.

50.     Upon information and belief, the agreements between CIGNA and its subscribers expressly provide subscribers the right to receive treatment from out-of-network providers such as Plaintiffs and provide that CIGNA will pay a specific percentage of the lesser of the actual, billed charge, the usual and customary charge for the procedure or another comparable benchmark. CIGNA has breached its subscriber agreements and has breached the duty of good faith and fair dealing by denying payment for Plaintiffs' claims or by drastically reducing payments to Plaintiffs.

**Plaintiff Kissing Camels and the ERISA/Breach of Contract Allegations**

51.     Plaintiff Kissing Camels, an ambulatory surgery center, has treated and continues to treat CIGNA subscribers.

52.     Upon information and belief, Plaintiff Kissing Camels has treated CIGNA subscribers of ERISA plans and non-ERISA plans.[2]

53.     On July 13, 2011, CIGNA notified Plaintiff Kissing Camels that it was conducting an audit of claims for services provided to several CIGNA members.  That letter stated:  "Under the terms of most of the plans administered and/or underwritten by CIGNA, member's incurring out of network expenses are subject to larger personal and out of pocket costs.  In other words, plans may require a significantly higher deductible and/or coinsurance payment from the member."  Kissing Camels was asked to provide details regarding its billing and collections policies, specifically including whether it collected "payment on the member's full out of network responsibility."

54.     After Kissing Camels Surgery Center assured CIGNA that CIGNA patients were

---

[2]  Information regarding whether a particular plan is, in fact, an ERISA plan or a non-ERISA plan is solely in the control of CIGNA.

not experiencing higher out-of-network costs, CIGNA notified counsel for Kissing Camels by letter dated December 13, 2011 that Kissing Camels would remain under audit until CIGNA was presented clear evidence that: "The Cigna Participant is required to pay the applicable full out-of-network coinsurance and/or deductibles."

55.     In an e-mail dated January 25, 2012, Robin Mastrianni of CIGNA stated that based on CIGNA's audit findings, "no claims will be payable…."

56.     CIGNA's decision not to pay any of Kissing Camel's claims has been based not on terms in patients' plans excluding the medical services from coverage, but rather from application of its arbitrarily contrived "fee forgiveness" policy.  CIGNA has systematically and uniformly applied this arbitrary policy to all CIGNA subscribers receiving medical services at Kissing Camels.

57.     One example will demonstrate the policy as applied to Plaintiff Kissing Camels. Plaintiff Kissing Camels provided services to Patient A on January 27, 2012.

58.     Patient A signed a document entitled "Assignment of Benefits, Assignment of Rights to Pursue ERISA and Other Legal and Administrative Claims Associated with My Health Insurance and/or Health Benefit Plan (including Breach of Fiduciary Duty) and Designation of Authorized Representative," assigning medical benefits and/or insurance reimbursement as well as "any legal or administrative claim or cause of action arising under any group health plan, employee benefits plan, health insurance or tort feasor insurance concerning medical services, treatments, therapies, and/or medications I received."  As indicated in the assignment, Patient A made "an express and knowing assignment of ERISA breach or fiduciary duty claims and other legal and/or administrative claims."  This is a standardized form that Plaintiff Kissing Camel

requires all patients to sign.

59.    Patient A also signed a document entitled "Financial Agreement, Assignment of Benefits and Release of Records," assigning and authorizing "payment directly to Kissing Camels Surgery Center all benefits due…under Medicare, Medicaid or any insurance policy providing benefits for facility charges, for services rendered by the facility."  Patient A also accepted responsibility for all charges:  "I HEREBY AGREE, WHETHER I AM SIGNING AS PATIENT OR GUARANTOR, TO PAY ALL SUMS DUE THE FACILITY AT THE USUAL AND CUSTOMARY CHARGE OF THE FACILITY.  I hereby waive all claims of exemption. Should the account be referred to an attorney or collection agency for collection, I shall pay reasonable attorney's fees and collection expenses whether suit is filed or not.  Delinquent accounts and amounts (those not paid within 60 days from date of services) may bear interest on the unpaid amount up to the maximum amount allowed by law.  I understand that the facility files for reimbursement from my insurer or other payor as a courtesy, and failure on the part of the insurer to make payment shall not relieve me of my obligation to pay the facility."  This is a standardized form that Plaintiff Kissing Camels requires all patients to sign.

60.    In accordance with Kissing Camels' policy, patient A paid a portion of his or her deductible/co-pay at the time services were rendered.  Patient A paid $136.20 at the time the services were rendered and signed a promissory note for the payment of $408.60.  Accordingly, Patient A paid $544.80

61.    Kissing Camels submitted a claim to CIGNA for $18,674.00.  The claim form included the following notation:  "The insured's portion of this bill has been reduce[d] in amount so the patient's responsibility for the deductible and copay amount is billed at in network rates."

This notice is included in all claims submitted to CIGNA by Kissing Camels.

62. CIGNA refused to pay any of the charges billed for services rendered to Patient A on December 27, 2012.

63. CIGNA's refusal to pay indicated that the claim was not covered, but not because the medical service was excluded under the patient's benefit plan. Rather, the Explanation of Benefits included the following notation: "When CIGNA administers or underwrites a plan, we don't cover charges not billed to you or that you aren't required to pay."

64. As set forth above, contrary to this notation, Kissing Camels had charged Patient A co-payments and deductible amounts at the patient's in-network levels and the patient had assumed responsibility for payment of the charges in the event CIGNA did not pay the claim.

65. Kissing Camels routinely appealed claims such as those illustrated by Patient A and those appeals were all denied by CIGNA. It became apparent that appeals from these payment denials were futile.

66. Plaintiff Kissing Camels has appealed a multitude of CIGNA's denials and reductions based on CIGNA's "fee-forgiveness" policy to no avail. The following are a few examples of Kissing Camel Surgery Center's appeals and CIGNA's repeated refrain as CIGNA has consistently denied Plaintiff's appeals:

> (a) Kissing Camels submitted a claim for $3,864.00 to CIGNA for services provided on June 11, 2012 to Patient B. CIGNA denied coverage. CIGNA provided the following response to Patient B with regard to the appeal submitted by Kissing Camels Surgery Center:
>
> After reviewing the appeal request submitted by Kissing Camels

Surgery Center as well as all supporting documentation, including the benefit plan, I have decided to uphold the original decision.

Per page 48 of your [Plan Sponsor] summary plan description it says that charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this Plan.

CIGNA HealthCare's plans exclude payment for expenses that patients are not obligated to pay. If a patient is not obligated to pay a charge, any claim for reimbursement for any part of that charge under such a contract or benefit plan is not covered.

(b)     Similarly, Kissing Camels submitted a claim for $20,697.00 to CIGNA for

services provided on April 6, 2012 to Patient C.  CIGNA denied coverage

based on its "fee forgiveness" policy.  CIGNA provided the following

response to Patient C with regard to the appeal submitted by Kissing

Camels Surgery Center:

After reviewing the appeal request submitted by Kissing Camels Surgery Center as well as all supporting documentation, including the benefit plan, I have decided to uphold the original decision.

Per page 12 of your [Plan Sponsor] summary plan description it says that charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this Plan.

CIGNA HealthCare's plans exclude payment for expenses that patients are not obligated to pay. If a patient is not obligated to pay a charge, any claim for reimbursement for any part of that charge under such a contract or benefit plan is not covered.

67.     As of November 18, 2013, CIGNA has improperly withheld approximately $3

million dollars due Plaintiff Kissing Camels Surgery Center.

**Facts - SurgCenter of Bel Air and the ERISA/Breach of Contract Claims**

68.     Plaintiff SurgCenter of Bel Air has treated and continues to treat CIGNA subscribers, including, upon information and belief, CIGNA subscribers of ERISA plans and non-ERISA plans.[3]

69.     On December 13, 2011, Robin Mastrianni of CIGNA's Corporate Audit Department sent a letter regarding CIGNA's policy, attaching a document that purportedly set forth "Exclusions, Expenses Not Covered and General Limitations." Ms. Mastrianni highlighted a provision that stated "charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under the plan."

70.     In a letter date December 14, 2011 to SurgCenter of Bel Air's Administrator, Janice Stewart, Belinda Hazelton of Corporate Audit for CIGNA accused SurgCenter of Bel Air of "engaging in a practice known as "fee-forgiving." Ms. Hazelton indicated that CIGNA had adopted the following payment practice:

> [T]he calculated allowable amount Cigna shall consider for reimbursement for any claims received from SurgCenter of Bel Air LLC will reflect our understanding of SurgCenter of Bel Air LLC current fee-forgiving practice. For example, if SurgCenter of Bel Air LLC submits a claim for $15,000 in covered services, but charges a Cigna Participant $100.00 with the patient having an 80% out-of-network benefit, Cigna's covered allowance will be reduced to $500.00 which the payment would be $400.00.

71.     In a letter dated November 6, 2012 to SurgCenter of Bel Air Insurance Specialist Joann Collins, Susan Herman Schwartz, Claims Research Specialist, Claims Resolution Unit, CIGNA Legal indicated that the internal review process for CIGNA Account Number 332xxxx

---

[3]  Information regarding whether a particular plan is, in fact, an ERISA plan or a non-ERISA plan is in the control of CIGNA.

is "exhausted." According to Ms. Schwartz, "The allowed amount of $280.42 was applied to the deductible and the remaining balance was denied because charges for services or supplies for which you are not required to pay are not covered under the plan." Ms. Schwartz referenced "fee-forgiving" and indicated that "[i]f a patient is not obligated to pay a charge, any claim for reimbursement for any part of that charge under such a contract or benefit plan is not covered."

72. CIGNA has systematically and uniformly applied this policy to all CIGNA subscribers receiving medical services at Plaintiff SurgCenter of Bel Air.

73. One example will demonstrate the policy as applied to SurgCenter of Bel Air. Plaintiff SurgCenter of Bel Air provided services to Patient D on May 21, 2012.

74. In accordance with standard SurgCenter of Bel Air policy, Patient D paid $424.77 on the date of the procedure, an amount which reflected the patient's in-network co-payment and deductible amounts.

75. Patient D signed a document entitled, "Authorizations & Disclosures" whereby Patient D assigned to SurgCenter of Bel Air "all benefits payable…now due and to become due and payable, including major medical benefits, by reason of this admission under any policy of insurance or other health care coverage in which the patient is a covered beneficiary." This is a standardized form that Plaintiff SurgCenter of Bel Air requires all patients to sign.

76. Patient D also agreed to accept financial responsibility for payment for services rendered by SurgCenter of Bel Air:

> I understand that treatment deposit and/or acceptable hospitalization insurance is required for treatment in SurgCenter of Bel Air. Total balance is due on the day of surgery, with allowance made for insurance coverage APPROVED AND VERIFIED PRIOR TO TREATMENT. In accordance with above terms, and in consideration of SurgCenter of Bel Air's agreement to render treatment and furnish supplies, the undersigned patient and/or undersigned surety, do hereby

agree to pay SurgCenter of Bel Air, its agents or assigns, whatever the sums of money that shall become due on the account of the patient and that such liability shall be joint and several. Also by signing this agreement, you are agreeing to forward any and all payments received by you from your carrier along with the copy of the Explanation of Benefits to SurgCenter of Bel Air immediately upon your receipt of the same. It is agreed that if full payment is not made by insurance or other third party payors within thirty (30) days, the undersigned shall make payment in full. ANY PAST DUE BALANCES NOT PAID BY INSURANCE OR OTHER 3RD PARTY PAYER, SENT TO A COLLECTION AGENCY AND/OR ATTORNEY IS THE RESPONSIBILITY OF THE GUARANTOR AND HE/SHE AGREES TO PAY ALL COLLECTION FEES AND/OR ATTORNEY FEES, INTEREST OF 18% PER YEAR, ATTORNEYS FEES OF 33% OF THE TOTAL BALANCE DUE PLUS COURT COSTS.

This is a standardized form that Plaintiff Bel Air requires all patients to sign.

77.    SurgCenter of Bel Air submitted a claim to CIGNA for $7,525.00 for services rendered to Patient D. The claim form included the following notation: "The insured's portion of this bill has been reduced in amount so the patient's responsibility for the deductible and copay amount is billed at in network rates." This notice is included in all claims submitted by Bel Air to CIGNA.

78.    CIGNA denied the claim. SurgCenter of Bel Air appealed the denial on January 14, 2013. On January 24, 2013, S. Roseboro, an appeal processor with CIGNA, notified SurgCenter of Bel Air that the claim had again been denied.

79.    SurgCenter of Bel Air has appealed a multitude of CIGNA's denials and reductions based on CIGNA's "fee-forgiveness" policy to no avail. The following are a few examples of SurgCenter of Bel Air's appeals and CIGNA's repeated refrain as CIGNA has consistently denied Plaintiff's appeals:

(a)    SurgCenter of Bel Air submitted a claim for $10,656.00 to CIGNA for services provided on November 7, 2011 to Patient E. CIGNA denied

coverage based on its arbitrary "fee-forgiveness" policy. CIGNA provided the following response to Patient E with regard to the appeal submitted by Bel Air:

After reviewing the appeal request submitted by SurgCenter of Bel Air as well as all supporting documentation, including the benefit plan, I have decided to uphold the original decision to deny coverage for the outpatient services provided for you on November 7, 2011.

The decision was based on the following:

According to the Summary Plan Description for [omitted] under the section titled 'Exclusions, Expenses Not Covered and General Limitations', it states that payment is specifically excluded from this plan for charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan.

This decision represents the final step of the internal administrative review process. However, if your plan is governed by ERISA, you have the right to bring a legal action under Section 502(a) of ERISA.

(b)     SurgCenter of Bel Air submitted a claim for $15,511.00 to CIGNA for services provided on November 7, 2011 to Patient F.  CIGNA denied coverage based on its arbitrary fee-forgiveness policy.  CIGNA provided the following response to Patient E with regard to the appeal submitted by SurgCenter of  Bel Air:

After reviewing the appeal request submitted by SurgCenter of Bel Air as well as all supporting documentation, including the benefit plan, I have decided to uphold the original decision to deny coverage for the outpatient services provided for you on November 7, 2011.

This decision was based on the following:

Cigna plans exclude payment for expenses that patients are not obligated to pay.  If a patient is not obligated to pay a charge, any claim for reimbursement for any part of that charge under such a contract or benefit plan is not covered.

(c)      SurgCenter of Bel Air submitted a claim for $8,690.00 to CIGNA for

services provided on December 5, 2011 to Patient G.   CIGNA denied

coverage based on its arbitrary "fee-forgiveness" policy.  CIGNA provided

the following response to Patient G with regard to the appeal submitted by

Plaintiff SurgCenter of Bel Air:

After reviewing the appeal request submitted by SurgCenter of Bel Air as well as all supporting documentation I have decided to uphold the original decision.

This decision was based on the following:

CIGNA HealthCare's plans exclude payment for expenses that patients are not obligated to pay. If a patient is not obligated to pay a charge, any claim for reimbursement for any part of that charge under such a contract or benefit plan is not covered.

(d)      SurgCenter of Bel Air submitted a claim for $10,627.68 to CIGNA for

services provided on April 5, 2012 to Patient H.  CIGNA denied coverage

based on its arbitrary "fee forgiveness" policy.   CIGNA provided the

following response to Patient H with regard to the appeal submitted by

Plaintiff SurgCenter of Bel Air:

After reviewing the appeal request submitted by SurgCenter of Bel Air as well as all supporting documentation, including the benefit plan, I have decided to uphold the original decision to deny claim payment.

This decision was based on the following:

According to your medical benefits plan, under the section titled Exclusions, Expenses Not Covered and General Limitations,

22

payment for the following is specifically excluded from this plan: Charges which you are not obligated to pay or for which you are not billed or for which you would have been billed except that they were covered under this plan.

(e)     SurgCenter of Bel Air submitted a claim for $7,371.00 to CIGNA for services provided on May 11, 2012 to Patient I.  CIGNA denied coverage based on its arbitrary fee-forgiveness policy.  CIGNA provided the following response to Patient I with regard to the appeal submitted by Plaintiff SurgCenter of Bel Air:

After reviewing the information submitted by SurgCenter of Bel Air and the terms of your benefit plan, I have decided to uphold the original decision to deny claim payment.

The decision was based on the following:

According to your medical benefits plan, under the section titled Exclusions, Expenses Not Covered and General Limitations, payment for the following is specifically excluded from the plan: Charges for which you are not obligated to pay or for which you are not billed or for which you would have been billed except that they were covered under this plan.

80.     Contrary to the assertions in these appellate denials, SurgCenter of Bel Air had charged the patients' co-payments and deductibles and the patients remained responsible for payment of the charges in the event CIGNA did not pay.

81.     As of November 19, 2013, CIGNA has improperly withheld in excess of $3 million due Plaintiff SurgCenter of Bel Air.

## Facts - Westminster and the ERISA/Breach of Contract Claims

82.     Plaintiff Westminster has treated and continues to treat CIGNA subscribers,

including CIGNA subscribers of ERISA plans and non-ERISA plans.[4]

83.   On May 16, 2011, Allyson Day with the CIGNA's Corporate Audit Department sent a letter to Westminster stating: "A recent audit of claims submitted to CIGNA by Westminster Surgery Center identified that Westminster Surgery Center may be engaging in a practice known as fee forgiving.   CIGNA regards fee forgiving as the practice of accepting CIGNA's out-of-network reimbursement as payment in full, waiving all or a portion of the CIGNA customer's obligation to pay amounts not paid by the benefit plan…."

84.   Westminster thereafter learned that CIGNA was withholding all payments for services rendered by Westminster to CIGNA subscribers.

85.   On November 28, 2011, Westminster sent a letter to Ms. Day of CIGNA explaining Westminster's billing practices as well as Westminster's policy of discounting co-pays and deductibles and Westminster's disclosure of this policy.   The letter also noted "that contrary to what is stated in your letter, the Center does not accept CIGNA's out-of-network reimbursement as payment in full or waive a patient's entire obligation to pay amounts not paid by the applicable benefit plan.   Each patient remains responsible to pay the Center for his or her medical care."

86.   Despite the letter addressing CIGNA's concern, CIGNA notified Westminster Surgery Center that CIGNA would continue to hold all payments for past and current claims.

87.   In a telephone conversation with Westminster's Business Office Manager on or around December 19, 2011, Ms. Day suggested that "perhaps contracting with CIGNA would help resolve this issue."

---

[4]  Information regarding whether a particular plan is, in fact, an ERISA plan or a non-ERISA plan is solely in the control of CIGNA.

88.     CIGNA has systematically and uniformly applied this policy to all CIGNA subscribers receiving medical services at Westminster.

89.     One example will demonstrate the policy as applied to Plaintiff Westminster. Westminster provided services to Patient J on November 12, 2012.

90.     In accordance with Westminster policy, on the date of the procedure, Patient J paid $1,247.73, the amount of the patient's in-network co-payments and deductibles.

91.     Patient J signed a document entitled "Authorizations and Disclosures" which included the following assignment of benefits: "The undersigned, and each of them, do hereby assign, transfer, and set over unto Westminster Surgery Center all benefits payable to them or either of them now due and to become due and payable, including major medical benefits, by reason of this admission under any policy of insurance or other health care coverage in which the patient is a covered beneficiary." This is a standardized document that Westminster has all patients sign.

92.     The document signed by Patient J also included the following acknowledgment of financial responsibility: "It is agreed that if full payment is not made by insurance or other third party payers within thirty (30) days, the undersigned shall make payment in full." This is another standardized document that Westminster has all patients sign.

93.     Westminster submitted a claim to CIGNA for $73,968.00 for services rendered to Patient J. The claim form included the following notation: "The insured's portion of this bill has been reduce[d] in amount so the patient's responsibility for the deductible and copay amount is billed at in network rates." This notice is included in all claims submitted to CIGNA by Plaintiff Westminster Surgery Center.

94.     CIGNA denied the claim based solely on its arbitrary "fee forgiveness" policy. The denial included the following notation:  "Charges which you are not obligated to pay or for which you are not billed are not covered under the benefit plans administered by and or underwritten by CIGNA and its subsidiaries."

95.     Westminster originally appealed CIGNA's denials and reductions based on CIGNA's "fee-forgiveness" policy to no avail.   CIGNA has consistently denied Plaintiff's appeals.  It was clear that further appeals given CIGNA's policies would be futile for the center.

96.     As of November 19, 2013, CIGNA has improperly withheld over 3 million dollars due Plaintiff Westminster Surgery Center.

### Facts – Antitrust Claims

97.     In a further effort to prevent its subscribers from seeking care from the Colorado Plaintiffs' out-of-network facilities and to limit payments to the Colorado Plaintiffs' facilities, CIGNA conspired with two of the major hospital systems in Denver and Colorado Springs, HCA, Inc. (along with its subsidiary HCA-HealthONE) and Centura Health Corporation, and with other Colorado health insurers, including Aetna, Inc., Kaiser Foundation Health Plan of Colorado, Rocky Mountain Hospital and Medical Service, Inc., d/b/a Anthem Blue Cross and Blue Shield of Colorado, and UnitedHealthcare of Colorado, Inc., and with the Colorado Ambulatory Surgery Center Association ("CASCA"), whose Board was dominated by the hospital systems' interests, in a concerted boycott to drive the Colorado Plaintiffs' facilities out of business.[5]

98.     One of the primary methods agreed to by CIGNA and its co-conspirators to drive the Colorado Plaintiff facilities out of business was to attempt to dry up referrals of patients to the

---

[5] This conspiracy is addressed with respect to CIGNA's other co-conspirators in another action pending in this Court, Kissing Camels Surgery Center, LLC et al v. HCA, Inc., et al. Civil Action No. 1:12-cv-03012-WJM-BNB.

facilities by physicians and other healthcare providers.  To further the conspiracy, CIGNA and its health insurer co-conspirators agreed to terminate participating physicians and/or to threaten to terminate physicians who referred patients to the Colorado Plaintiffs' facilities and to require participating physicians to refer patients to ambulatory surgery facilities owned in whole or in part by the co-conspirator hospital systems.

99.     Drying up referrals to the Colorado Plaintiffs' facilities and steering patients to the co-conspirator hospital systems' facilities, which on information and belief were participating providers with the health insurer co-conspirators, would increase health insurer profits because they could pay the generally much lower in-network rates than they would have been required to pay under their subscribers' out-of-network benefit plans.

100.    Requiring referrals to in-network facilities deprives patients of their ability to use their out-of-network benefits for which they paid additional premiums.

101.    As part of that conspiracy, on December 21, 2011, CIGNA threatened Jeffrey R. Chain, MD of Comprehensive ENT, Head and Neck Surgery, PC with termination of his CIGNA participation agreement for referring patients to Plaintiff Arapahoe.  This letter stated:  "Your referrals to non-Participating Providers must stop immediately or Cigna may have no option but to terminate your contract for cause, in accordance with Section 4 of your Agreement."

102.    As part of that conspiracy, on December 21, 2011, CIGNA threatened Arvin K. Rao, M.D. with termination of his participation agreement for referring patients to Plaintiff Arapahoe.  That letter stated:  "Your referrals to non-Participating Providers must stop immediately or Cigna may have no option to terminate your contract for cause, in accordance with Section 4 of your Agreement."

103.    On information and belief, neither Dr. Chain's nor Dr. Rao's contract contained provisions prohibiting referrals to Plaintiff Arapahoe or any of the other Colorado Plaintiffs' facilities.  Rather, on information and belief, CIGNA's letters were part of a larger effort to steer patients away from the Colorado Plaintiffs' facilities and to the in-network facilities of its hospital system co-conspirators in order to drive the Colorado Plaintiffs' out of business and to increase its profits.

104.    On information and belief, CIGNA representatives met and communicated with its co-conspirators throughout the end of 2011 and 2012.

105.    On May 18, 2012, representatives from CIGNA attended a conference call convened at CASCA's request to discuss the Colorado Plaintiffs.

106.    CIGNA representatives also participated in a follow-up meeting held on August 29, 2012 between the co-conspirator hospital systems, health insurers, CASCA, and the Colorado Association of Health Plans ("CAHP"), whose members include CIGNA and other health insurers.  At this meeting, CIGNA agreed with the other participants that it would join in a concerted boycott of the Colorado Plaintiffs, with the goal of shutting off their sources of revenue.

107.    Following the August 29, 2012 meeting, CASCA's Executive Director and Assistant Executive Director met with CAHP's Executive Director and Associate Director.  At that meeting, they agreed on a strategy to fulfill the goal of the August 29, 2012 meeting to shut off the Colorado Plaintiffs' sources of revenue.  CAHP's Board of Directors includes executives from CIGNA.

108.    Around this time, HealthONE was pressuring insurers, including CIGNA, to prevent physicians from referring patients to the Colorado Plaintiffs' facilities.  CIGNA not only

agreed to take action against its contracted physicians who referred patients to the Colorado Plaintiffs' facilities, but also kept HealthONE apprised of its efforts.

109.     Actions taken in furtherance of the conspiracy included a decision by one of the health insurer co-conspirators to refuse to execute a previously agreed upon participation agreement with Plaintiff Kissing Camels and decisions taken by the health insurers attending the August 29, 2012 meeting to continue termination and/or threats of terminating of participation agreements of physicians referring patients to the Colorado Plaintiff facilities.

110.     In furtherance of the conspiracy, on November 8, 2013 CIGNA notified Advanced Orthopedic & Sports Medicine Specialists that its Provider Group Services Agreement would be terminated for cause effective January 15, 2014.  On information and belief, CIGNA terminated the Agreement as a result of the practice's referrals to Plaintiffs Hampden and Arapahoe, even though such referrals did not violate the terms of the Agreement.

111.     In furtherance of the conspiracy, on November 8, 2013 CIGNA notified Colorado Brain & Spine Institute, LLC that its Physician Group Services Agreement would be terminated for cause effective January 15, 2014.  On information and belief, CIGNA terminated the Agreement as a result of the practice's referrals to Plaintiff Arapahoe, even though such referrals did not violate the terms of the Agreement.

112.     In furtherance of the conspiracy, on November 8, 2013 CIGNA notified Chad Prusmack, M.D. that his participation agreement would be terminated for cause effective January 15, 2014.  On information and belief, CIGNA terminated the agreement as a result of Dr. Prusmack's referrals to Plaintiff Arapahoe, even though such referrals did not violate the terms of the participation agreement.

113.   In furtherance of the conspiracy, on November 8, 2013, CIGNA notified Colorado Hand Center that it was in violation of its participation agreement by referring CIGNA subscribers to Plaintiff Kissing Camels and demanding that Colorado Hand Center refer subscribers to participating providers, even though Colorado Hand Center's referrals did not violate its participation agreement.

114.   In furtherance of the conspiracy, on November 8, 2013, CIGNA notified Colorado Orthopedic Consultants, PC that it was in violation of its participation agreement by referring CIGNA subscribers to Plaintiff Cherry Creek and demanding that Colorado Orthopedic Consultants refer subscribers to participating providers, even though Colorado Orthopedic Consultants' referrals did not violate its participation agreement.

115.   In furtherance of the conspiracy, on November 8, 2013, CIGNA notified Colorado Foot & Ankle Clinic, PC that it was in violation of its participation agreement by referring CIGNA subscribers to Plaintiff Kissing Camels and demanding that Colorado Foot & Ankle Clinic refer subscribers to participating providers, even though Colorado Foot & Ankle Clinic's referrals did not violate its participation agreement.

116.   In furtherance of the conspiracy, on November 8, 2013, CIGNA notified Comprehensive ENT Head & Neck Surgery, PC that it was in violation of its participation agreement by referring CIGNA subscribers to Plaintiff Arapahoe and demanding that Comprehensive ENT Head & Neck Surgery refer subscribers to participating providers, even though Comprehensive ENT Head & Neck Surgery's referrals did not violate its participation agreement.

117.   In furtherance of the conspiracy, on November 8, 2013, CIGNA notified Denver

Vail Orthopedics Associates, PC that it was in violation of its participation agreement by referring CIGNA subscribers to Plaintiff Hampden and demanding that Denver Vail Orthopedics refer subscribers to participating providers, even though Denver Vail Orthopedics' referrals did not violate its participation agreement.

118.    In furtherance of the conspiracy, on November 8, 2013, CIGNA notified Ghiselli Spine, PC that it was in violation of its participation agreement by referring CIGNA subscribers to Plaintiff Cherry Creek and demanding that Ghiselli Spine refer subscribers to participating providers, even though Ghiselli Spine's referrals did not violate its participation agreement.

119.    In furtherance of the conspiracy, on November 8, 2013, CIGNA notified Peak Orthopedics PLLC that it was in violation of its participation agreement by referring CIGNA subscribers to Plaintiff Cherry Creek and demanding that Peak Orthopedics refer subscribers to participating providers, even though Peak Orthopedics' referrals did not violate its participation agreement.

120.    In furtherance of the conspiracy, on November 8, 2013, CIGNA notified Foot & Ankle Center of Colorado, PC that it was in violation of its participation agreement by referring CIGNA subscribers to Plaintiff Arapahoe and demanding that Foot & Ankle Center of Colorado refer subscribers to participating providers, even though Foot & Ankle Center's referrals did not violate its participation agreement.

121.    In furtherance of the conspiracy, on November 8, 2013, CIGNA notified Rocky Mountain Ear Center, PC that it was in violation of its participation agreement by referring CIGNA subscribers to Plaintiff Arapahoe and demanding that Rocky Mountain Ear Center refer subscribers to participating providers even though Rocky Mountain Ear Center's referrals did not

violate its participation agreement.

122.     As a result of the conspiracy and CIGNA's actions in furtherance thereof, the Colorado Plaintiff facilities have lost patients and the significant amount of revenue that would have been associated with their care.

123.     To the extent that CIGNA or its co-conspirators have claimed that their decisions to terminate or threaten to terminate physicians were motivated by the Colorado Plaintiffs' billing practices, these claims are pretextual.   CIGNA and its co-conspirators' efforts to harm the Colorado Plaintiffs through anticompetitive action were motivated by eliminating competition, not the Colorado Plaintiffs' billing practices.  In fact, two of CIGNA's co-conspirators, Audubon Ambulatory Surgical Center and Centura Health Corporation, used billing practices similar to the Colorado Plaintiffs' at their own ambulatory surgical centers.

## COUNT I

### CLAIM FOR CIGNA'S FAILURE TO PROPERLY PAY BENEFITS IN VIOLATION OF ERISA, 29 U.S.C. §1132(a)(1)(B)

**(On Behalf of All Kissing Camels, Westminster and SurgCenter of Bel Air against CIGNA Healthcare, Inc. and Connecticut General Life Insurance Company; Kissing Camels against CIGNA Healthcare of Colorado; and Westminster and SurgCenter of Bel Air against CIGNA Healthcare – Mid-Atlantic)**

124.     Plaintiffs incorporate paragraphs 1 through 14 and 18 through 96 as though set forth fully herein.

125.     When a benefit plan is insured by, funded by or administered by CIGNA, CIGNA must pay benefits to subscribers or their assignees pursuant to the terms of the plan, including payments for out-of-network services pursuant to the methodology set forth in the subscribers' benefit plans.

126.    Plaintiffs are entitled to enforce the terms of the CIGNA ERISA plans as assignees of subscribers under 29 U.S.C. §1132(a)(1)(B).

127.    CIGNA has breached the terms of the plans, by arbitrarily denying or reducing payments due to Plaintiffs based on application of its "fee-forgiving" policy without justification and in derogation of the express terms of the plans.

128.    Upon information and belief, CIGNA's actions were taken to increase profits, to discourage subscribers' use of out-of-network benefits and to pressure Plaintiffs to become in-network providers.

129.    Plaintiffs seek unpaid benefits and interest calculated from the date the claims were initially submitted.

130.    Plaintiffs are also entitled to prejudgment interest, costs, expenses, attorneys' fees and other appropriate relief.

## COUNT II

### CIGNA'S BREACH OF FIDUCIARY DUTIES OF LOYALTY AND DUE CARE UNDER ERISA, 29 U.S.C. §1132(a)(3)

**(On Behalf of Kissing Camels, Westminster and SurgCenter of Bel Air against CIGNA Healthcare, Inc. and Connecticut General Life Insurance Company; Kissing Camels against CIGNA Healthcare of Colorado; and Westminster and SurgCenter of Bel Air against CIGNA Healthcare – Mid-Atlantic)**

131.    Plaintiffs incorporate paragraphs 1 through 14 and 18 through 96 as though set forth fully herein.

132.    As an insurer, third party administrator and fiduciary, CIGNA is obligated to comply with ERISA's fiduciary duties.  As such, CIGNA is responsible not only to the employer which adopted the healthcare plan but also to the individual employee members.  ERISA

requires that the interpretation and implementation of the plan shall be solely in the best interest of the participants and beneficiaries for the exclusive purpose of providing benefits for participants and beneficiaries.   The duty of loyalty imposed on ERISA fiduciaries, such as CIGNA, prohibits self-dealing and financial arrangements that benefit the fiduciary at the expense of the plan subscribers under 29 U.S.C. §1106.   CIGNA, for example, cannot make determinations for the purpose of saving money at the expense of subscribers or their assignees.

133.   Plaintiffs (as assignees of ERISA subscribers) are entitled to assert a claim for relief for CIGNA's breach of the fiduciary duties of loyalty and care under 29 U.S.C. §1132(a)(3).

134.   CIGNA breached its fiduciary duties of loyalty and care by arbitrarily denying claims and reducing payments for out-of-network care based on its "fee-forgiveness" payment policy.   On information and belief, CIGNA took these actions in order to discourage subscribers' use of out-of-network services and to coerce Plaintiffs to become in-network providers so that CIGNA could pay much lower in-network rates and to otherwise increase its profits.   On information and belief, CIGNA is compensated by some of the plan sponsors for whom it serves as third party administrator based on "savings," calculated in part based the amounts of claims for medical services *not* paid to medical providers such as Plaintiffs.   Consequently, by arbitrarily reducing the amounts it pays to Plaintiffs, CIGNA increases its compensation from these plan sponsors at the expense of subscribers and Plaintiffs.

135.   CIGNA also breached its duties of loyalty and care by demanding that Plaintiffs charge CIGNA subscribers higher out-of-network co-payments, deductibles, and co-insurance, which not only would have increased the cost of its members' treatment at the Plaintiffs'

facilities, but also would have hindered its members' ability to use their out-of-network benefits for which they had paid additional premiums.

136.    By engaging in such conduct, CIGNA failed to act with the care, skill, prudence, and diligence that a prudent plan administrator should use in violation of 29 U.S.C. §1104(a)(1)(B) and (D).

137.    CIGNA further breached its duty of loyalty and care by failing to act solely in the interest, or for the exclusive purpose of providing benefits to participants and subscribers in violation of 29 U.S.C. §1104(a)(1)(A).

138.    As a direct and proximate cause of such breach of fiduciary duties of loyalty and care, Plaintiffs have suffered injury and are entitled to equitable, injunctive and declaratory relief.

## COUNT III

### CIGNA'S FAILURE TO PROVIDE FULL AND FAIR REVIEW UNDER ERISA

**(On Behalf of Kissing Camels, Westminster, and SurgCenter of Bel Air against CIGNA Healthcare, Inc. and Connecticut General Life Insurance Company; Kissing Camels against CIGNA Healthcare of Colorado; and Westminster and SurgCenter of Bel Air against CIGNA Healthcare – Mid-Atlantic)**

139.    Plaintiffs incorporate paragraphs 1 through 14 and 18 through 96 as though set forth fully herein.

140.    CIGNA functions as the "plan administrator" within the meaning of such term under ERISA when it insures a group health plan or when it is designated as the plan administrator.

141.    As assignees of ERISA subscribers, Plaintiffs are entitled to assert a claim for relief under 29 U.S.C. §1132(a)(3).

142.     Although CIGNA was obligated to do so, it failed to provide a "full and fair review" and otherwise failed to make necessary disclosures pursuant to 29 U.S.C. §1133 and regulations promulgated thereunder.

143.     Plaintiffs appealed numerous denials of claims or reductions in payments.  Any such claims that were not appealed should be deemed exhausted or excused.

144.     Plaintiffs were proximately harmed by CIGNA's failure to comply with 29 U.S.C. §1133 and are also entitled to equitable, injunctive and declaratory relief to remedy CIGNA's continuing violation of these provisions.

**COUNT IV**

**BREACH OF CONTRACT**

**(On Behalf of Kissing Camels, Westminster, and SurgCenter of Bel Air against CIGNA Healthcare and Connecticut General Life Insurance Company; Kissing Camels against CIGNA Healthcare of Colorado; and Westminster and SurgCenter of Bel Air against CIGNA Healthcare – Mid-Atlantic)**

145.     Plaintiffs incorporate paragraphs 1 through 14 and 18 through 96 as though set forth fully herein.

146.     Plaintiffs bring this claim with regard to plans that are not subject to ERISA.

147.     The Agreement between CIGNA and its subscribers constitutes a contract.

148.     As assignees of Non-ERISA subscribers, Plaintiffs are entitled to assert a claim for breach of contract.

149.     Upon information and belief, the agreements between CIGNA and its subscribers expressly provide subscribers the right to receive treatment from out-of-network providers such as Plaintiffs and provide that CIGNA will pay a specific percentage of the lesser of the actual, billed charge or the usual and customary charge for procedure or another comparable benchmark.

36

150.   CIGNA breached this agreement by denying or drastically reducing the subscribers' claims for out-of-network services provided by Plaintiffs.

151.   Plaintiffs were damaged by CIGNA's breach of contract in that Plaintiffs received no payment or drastically reduced payments for services provided to CIGNA's subscribers.

152.   Accordingly, Plaintiffs seek damages in an amount to be determined at trial.

153.   Plaintiffs are also entitled to prejudgment interest, costs, expenses, attorneys' fees and other appropriate relief.

## COUNT V

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(On Behalf of Kissing Camels, Westminster, and SurgCenter of Bel Air against CIGNA Healthcare, Inc. and Connecticut General Life Insurance Company; Kissing Camels against CIGNA Healthcare of Colorado; and Westminster and SurgCenter of Bel Air against CIGNA Healthcare – Mid-Atlantic)**

154.   Plaintiffs incorporate paragraphs 1 through 14 and 18 through 96 as though set forth fully herein.

155.   Plaintiffs bring this claim with regard to plans that are not subject to ERISA.

156.   Implied in every contract is the duty of good faith and fair dealing.

157.   CIGNA violated its duty of good faith and fair dealing by denying or drastically reducing the subscribers' claims for out-of-network services provided by Plaintiffs with the purpose of increasing its own profits, discouraging subscribers' use of out-of-network services to which they are entitled and to coerce Plaintiffs to become in-network providers.

158.   Plaintiffs were damaged by CIGNA's breach of the implied covenant of good faith and fair dealing in that Plaintiffs received no payment or drastically reduced payments for services provided to CIGNA's subscribers.

159.   Accordingly, Plaintiffs seek damages in amount to be determined at trial.

160.   Plaintiffs are also entitled to prejudgment interest, costs, expenses, attorneys' fees and other appropriate relief.

## COUNT VI

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### 28 U.S.C. § 1337

### (On Behalf of the Colorado Plaintiffs against CIGNA Healthcare, Connecticut General Life Insurance Company and CIGNA Healthcare of Colorado)

161.   The Colorado Plaintiffs incorporate paragraphs 1 through 3, 15 through 40, and 97 through 123 as if fully set forth herein.

162.   The agreement among CIGNA and its co-conspirators to attempt to drive the Colorado Plaintiffs out of business through anticompetitive means represents a contract, combination or conspiracy with in the meaning of Section 1 of the Sherman Act.

163.   As a direct and proximate result of CIGNA's continuing violations of Section 1 of the Sherman Act, the Colorado Plaintiffs have suffered and continue to suffer injury and damages of the type that the federal antitrust laws were designed to prevent.  Such damages consist of having been paid lower rates, having fewer surgeries performed at the facilities, otherwise having business diverted to competitors who were part of the agreement, and/or having access to far fewer patients than they would have with fair competition but for CIGNA and its co-conspirators' anticompetitive agreements and practices.

164.   The Colorado Plaintiffs seek money damages from CIGNA for its violations of Section 1 of the Sherman Act.

165.   CIGNA's unlawful conduct threatens to continue to injure the Colorado Plaintiffs.

The Colorado Plaintiffs seek a permanent injunction prohibiting CIGNA from entering into, or from honoring or enforcing, any agreements that have been entered into in restraint of trade.

## COUNT VII

### CONTRACT, COMBINATION, OR CONSPIRACY IN RESTRAINT OF TRADE IN VIOLATION OF THE COLORADO ANTITRUST ACT
### Colo. Rev. Stat. § 6-4-104

**(On Behalf of the Colorado Plaintiffs against CIGNA Healthcare, Inc., Connecticut General Life Insurance Company and CIGNA Healthcare of Colorado)**

166.     The Colorado Plaintiffs incorporate paragraphs 1 through 3, 15 through 40, and 97 through 123 as if fully set forth herein.

167.     The agreement among CIGNA and its co-conspirators to attempt to drive the Colorado Plaintiffs out of business through a variety of anticompetitive means represents a contract, combination, or conspiracy in restraint of trade within the meaning of Colorado Revised Statutes 6-4-104.

168.     As a direct and proximate result of CIGNA's continuing violations of the Colorado Antitrust Act, the Colorado Plaintiffs have suffered and continue to suffer injury and damages of the type that the Colorado Antitrust Act was designed to prevent.  Such injury flows directly from that which makes CIGNA's conduct unlawful.  These damages consist of having been paid lower rates, having fewer surgeries performed at the Colorado Plaintiffs' facilities, otherwise having business diverted to competitors who were part of the agreement, and/or having access to far fewer patients than they would have with fair competition and but for CIGNA's and its co-conspirators' anticompetitive agreements.

169.     The Colorado Plaintiffs seek money damages from CIGNA for its violations of the Colorado Antitrust Act.

170.     CIGNA's unlawful conduct threatens to continue to injure the Colorado Plaintiffs. The Colorado Plaintiffs seek a permanent injunction prohibiting Defendants from entering into, or from honoring or enforcing, any agreements or conspiracies that have been entered into in restraint of trade.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor against CIGNA and provide the following relief:

a.       Compensatory damages in an amount to be determined, including amounts due for all services rendered to CIGNA subscribers;

b.       An order directing Defendants to recalculate and issue unpaid benefits to Plaintiffs that were not paid or were underpaid as a result of Defendants' unlawful activities;

c.       Restitution;

d.       A declaratory judgment stating that Defendants' actions violated ERISA and breached their subscriber agreements as well as the duty of good faith and fair dealing;

e.       A declaratory judgment stating that Defendants are obligated to properly pay the claims submitted by Plaintiffs;

f.       An Order estopping Defendants from underpaying or refusing to pay valid claims submitted by the Plaintiffs;

g.       An injunction to prevent continuation or recurrence of Defendants' unlawful conduct;

h.       A declaratory judgment stating that all Defendants other than CIGNA Healthcare – Mid-Atlantic have violated Section 1 of the Sherman Act.

i.       A declaratory judgment stating that all Defendants other than CIGNA Healthcare

– Mid-Atlantic have violated Colo. Rev. Stat. § 6-4-104.

j.       Treble damages on the antitrust claims in favor of the Colorado Plaintiffs;

k.       Punitive damages;

l.       Interest on all such amounts since the time they became due;

m.       Attorney's fees, collection costs, all other fees, costs and disbursements incurred

in connection with this lawsuit;

n.       Liquidated damages provided for under any of the subscriber Plans;

o.       Such other and further relief, at law and equity, as the Court deems just, proper

and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial for all claims so triable.

Date:  March 3, 2014                              Respectfully submitted,


 */s/ Joe R. Whatley, Jr.*
Joe R. Whatley, Jr.
Colorado State Bar No. 38820
WHATLEY KALLAS, LLP
720 East Durant Avenue
Suite E6
Aspen, CO  81611
Tel: (970) 300-4848
Fax: (970) 427-5536
Email:  jwhatley@whatleykallas.com

Edith M. Kallas
WHATLEY KALLAS, LLP
380 Madison Avenue, 23rd Floor
New York, NY  10017
Tel: (212) 447-7060
Fax: (800) 922-4851
Email:  ekallas@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA  30306
Tel.: (404) 607-8222
Fax: (404) 607-8451
Email: dwinegard@whatleykallas.com

W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place Tower, Suite 1000
Birmingham, AL  35203
Tel: (205) 488-1200
Fax: (800) 922-4851
Email: tbrown@whatleykallas.com

ARAPAHOE SURGERY CENTER, LLC
125 Inverness Drive East
Suite 150
Englewood, CO 80112

CHERRY CREEK SURGERY CENTER, LLC
5060 S. Syracuse Street
Denver, CO 80237

HAMPDEN SURGERY CENTER, LLC
4380 S. Syracuse Street
Suite 120
Denver, CO 80237

KISSING CAMELS SURGERY CENTER, LLC
2955 Professional Place
Suite 100
Colorado Springs, CO 80904

SURGCENTER OF BEL AIR, LLC
209 Thomas Street
Bel Air, MD 21014

WESTMINSTER SURGERY CENTER, LLC
826 Washington Road
Westminster, MD 21157