**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-03422-WJM-CBS


ARAPAHOE SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC
HAMPDEN SURGERY CENTER, LLC,
KISSING CAMELS SURGERY CENTER, LLC
SURGCENTER OF BEL AIR, LLC, and
WESTMINSTER SURGERY CENTER, LLC

      Plaintiffs,

v.

CIGNA HEALTHCARE, INC.,
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
CIGNA HEALTHCARE – MID-ATLANTIC, INC., and
CIGNA HEALTHCARE OF COLORADO, INC.

      Defendants.

_____

**REVISED PROPOSED SCHEDULING ORDER**
_____


      This revised Proposed Scheduling Order ("the Proposed Order") was developed

by the parties in an effort to address the concerns raised by the Court at the February

27, 2014 scheduling conference.  Specifically, the Proposed Order significantly shortens

the procedural schedule, adds specific benchmarks, and allows expert depositions only

after resolution of dispositive motions.  If, after reviewing the Proposed Order, the Court

believes that the schedule will allow efficient adjudication of the issues in the case and

is inclined to approve the Proposed Order without the need for further input from or

discussion with the parties, the parties would be willing for it to be entered without the

need for the scheduling conference currently set for March 21, 2014.

## 1.  DATE OF CONFERENCE
## AND APPEARANCES OF COUNSEL

The Scheduling Conference is scheduled for March 21, 2014 at 10:00 am.

Deborah J. Winegard, counsel for Plaintiffs and Counterclaim Defendants, shall appear in person.

Joe R. Whatley, Jr. and W. Tucker Brown, counsel for Plaintiffs and Counterclaim Defendants, shall appear telephonically.

Joshua B. Simon, counsel for Defendants and Counterclaim Plaintiffs, shall appear in person.

The addresses of counsel are set forth below:

Joe R. Whatley, Jr.
WHATLEY KALLAS, LLP
720 East Durant Avenue
Suite E6
Aspen, CO  81611
Tel: 970-300-4848
Fax: 970-429-8280

Edith M. Kallas
WHATLEY KALLAS, LLP
1180 Avenue of the Americas
20th Floor
New York, NY  10036
Tel: 212-447-7060
Fax: 800-922-4851

W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place Tower, Suite 1000
Birmingham, AL  35203
Tel: 205-488-1200
Fax: 800-922-4851

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA  30306
Tel: 404-607-8222
Fax: 404-220-9625

***Attorneys for Plaintiffs and Counterclaim Defendants***

Joshua B. Simon
Warren Haskel
Ryan McEnroe
KIRKLAND & ELLIS, LLP
601 Lexington Avenue
New York, NY 10022
Tel: 212-446-4800
Fax: 212-446-6460

Edwin P. Aro
Timothy R. Macdonald
ARNOLD & PORTER LLC
370 Seventeenth Street, Suite 4400
Denver, CO 80202
Tel.: 303.863.1000
Fax: 303.832.0428

***Attorneys for Defendants and Counterclaim Plaintiffs***

## 2.  STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331, in that most of the claims asserted herein were brought under federal statutes

and necessarily involve adjudication of one or more federal questions.  For the parties'

Employment Retirement Income Security Act ("ERISA") claims, jurisdiction additionally

arises under § 502(e) of ERISA, 29 U.S.C. § 1132(e).  For Plaintiffs' Sherman Act

claims, jurisdiction additionally arises under 28 U.S.C. § 1337.  For Defendants'

Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, jurisdiction additionally arises under 29 U.S.C. § 1962(c).  This Court has supplemental jurisdiction over the parties' state law claims under 28 U.S.C. § 1367.

### 3.  STATEMENT OF CLAIMS AND DEFENSES

a.      Plaintiffs and Counterclaim Defendants:

Plaintiffs allege that the Defendants breached Section 502 of ERISA, 29 U.S.C. § 1132, and their insurance contracts with their subscribers by arbitrarily and capriciously denying or reducing payments due to Plaintiffs without justification and in derogation of the express terms of the ERISA plans and their contracts, in order to increase their profits, discourage their subscribers' use of Plaintiffs' facilities, and to pressure Plaintiffs to accept lower reimbursement rates under CIGNA's direct Provider Agreements.

In support thereof, Plaintiffs allege that Defendants applied a contrived "fee forgiveness" policy to dramatically reduce or deny payment for Plaintiffs' claims for medically necessary services performed at Plaintiffs' ambulatory surgery facilities. Plaintiffs further allege that this "fee forgiveness" policy was specifically designed to allow Defendants to avoid their obligation to pay benefits and to increase their profits. The Defendants apply this policy in processing claims for medical services when medical providers, such as the Plaintiffs, endeavor to make medical care affordable by reducing patients' deductible and co-insurance payments to their in-network benefit levels.  When this occurs, the Defendants misconstrue subscribers' benefit plans and insurance contracts to allow them to avoid paying any benefits or to pay de minimus amounts even though their subscribers have paid additional premiums for benefit plans

allowing treatment at out-of-network facilities.  Thus, the Defendants' "fee forgiveness" policy and their adjudication of medical claims thereunder serve only to unnecessarily increase healthcare costs to their subscribers and breach their fiduciary duty to their subscribers to adjudicate medical claims solely in their subscribers' interest.

Plaintiffs Arapahoe Surgery Center, LLC; Hampden Surgery Center, LLC; and Kissing Camels Surgery Center, LLC ("the Colorado Plaintiffs") further allege that Defendants Cigna Healthcare, Inc.; Connecticut General Life Insurance Company; Cigna Healthcare of Colorado, Inc. ("the Colorado Defendants"), and their co-conspirators, two major Colorado hospital systems and other health insurers operating in Colorado, conspired and entered into agreements in restraint of trade to put Plaintiffs out of business in violation of § 1 of the Sherman Act and the Colorado Antitrust Act.

In support thereof, Plaintiffs allege that the Colorado Defendants conspired to choke off business to the Colorado Plaintiffs' facilities by terminating and/or threatening to terminate physicians' network participation contracts for referring patients to those facilities, and by pressuring the co-conspirator insurance companies to terminate and/or to threaten to terminate physicians' network participation contracts if they continued referring patients to those facilities.  One meeting, among others in furtherance of the conspiracy, was convened by the Colorado Ambulatory Surgery Center Association ("CASCA") and the Colorado Association of Health Plans ("CAHP") and held by conference call on May 18, 2012.  Another meeting in furtherance of the conspiracy was convened by CASCA and CAHP on August 29, 2012.  At these and other meetings, inaccurate and misleading information about the Colorado Plaintiff facilities' billing

practices was disseminated in order to cause health insurers to take measures to dry up referrals of patients to the Colorado Plaintiffs' facilities and to further a boycott of these facilities.

The antitrust allegations against the Colorado Defendants in this case are also the subject of another lawsuit pending in this Court against the Colorado Defendants' co-conspirators, Kissing Camels, et al v. HCA, Inc., et al, Civil Action no. 1:12-cv-03012-WJM-BNB (the "HCA action").

The counterclaims asserted by the Defendants are entirely without merit. Plaintiffs billing and collection policies are consistent with those of other ambulatory surgery centers and ambulatory surgery companies and have been fully disclosed to patients and the Defendants.   Therefore, by definition there is no fraud.   Moreover, Plaintiffs' billed charges to the Defendants are reasonable for the services provided.   In addition, the counterclaims contain several misleading statements.   For example, Plaintiffs do not waive copays and deductibles, but rather discount them to in-network levels to make healthcare services as affordable as possible for patients.   And, patients remain responsible for the entire billed charges when their health insurers fail to pay benefits.   Plaintiffs maintain that they have not been overpaid for medically necessary services and that Defendants do not have the right to seek return of any monies. Rather, in bringing the counterclaims, Defendants are merely seeking to avoid paying for medically necessary services provided to their subscribers and to prevent their subscribers from using out-of-network benefits for which they have paid additional premiums.   For these and many other reasons, Defendants cannot make out the

essential elements of their claims.   Plaintiffs' deadline for responding to the counterclaims has not yet passed.  Accordingly, Plaintiffs reserve the right to more fully articulate defenses to the counterclaims.

b.    Defendants and Counterclaim Plaintiffs:

SurgCenter and each of the ASCs are engaged in illegal "dual pricing" and "fee forgiving" schemes wherein the ASCs, at the direction of and in coordination with SurgCenter, submit charges to Cigna for reimbursement that do not reflect the charges that they actually bill patients.

Specifically, even though the ASCs are out-of-network facilities (meaning they have not joined Cigna's provider network), they lure patients to their facilities by promising to bill them only their "in-network" co-insurance, co-payments, and deductibles.  In order to approximate these "in-network" rates when calculating the patients' cost-sharing responsibility, the ASCs start with a baseline charge that is based on Medicare rates, and to that baseline, apply the members' in-network cost-sharing levels, waiving the out-of-network cost-sharing responsibilities that members are required to pay under their health care plans.  But when the ASCs submit charges to Cigna, they do not submit the Medicare-based charges that they quote to the patients; rather they submit exorbitant charges based on a separate fee schedule.  These fraudulent "charges" bear no relation to what patients are actually charged by the ASC; indeed, one court discussing a similar scheme referred to the provider's submitted charges as "phantom" charges.

Cigna-administered plans contain various provisions to guard against these

fraudulent billing practices by healthcare providers.  Courts have consistently found that these types of billing practices are improper and have affirmed healthcare plans' right not to cover the artificial, inflated "charges" that providers like the ASCs submit.  Indeed, the Colorado General Assembly has declared these types of schemes illegal and has enacted laws to stop them. See Colo. Rev. Stat. Ann. § 18-13-119 (West 2011).

Cigna initially paid the ASCs based on the fraudulently inflated charges they submitted, inducing Cigna into paying nearly $15 million to the ASCs.  As part of the dual pricing and fee-forgiving schemes, each of the ASCs funneled a portion of this fraudulently-obtained money back to SurgCenter, which retains a 35% interest in each ASC.  Thus, Cigna seeks to recover the overpayments in the possession of the ASCs and SurgCenter that Cigna paid as a result of the Counterclaim Defendants' fraudulent schemes.

Cigna is entitled to recover the overpayments it made to the ASCs pursuant to ERISA § 502(a)(3), or alternatively, under state-law causes of action for fraud, negligent, misrepresentation, and/or unjust enrichment.  Cigna also seeks injunctive and declaratory relief prohibiting the ASCs from engaging in the illegal dual pricing and fee forgiving schemes.  In addition, the Counterclaim Defendants are liable for tortious interference with contract, as their fraudulent schemes unlawfully interfered with Cigna's contracts (e.g. the plans administered by Cigna) with its members.  The Counterclaim Defendants have also violated state and federal criminal statutes, including mail and wire fraud, as part of their fraudulent schemes; therefore the Counterclaim Defendants are liable to Cigna under RICO, the Colorado Organized Crime Control Act ("COCCA"),

and Colorado's Civil Theft Statute.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1.     Plaintiff Arapahoe Surgery Center, LLC d/b/a SurgCenter on Dry Creek is a Colorado limited liability company with its principal place of business in Englewood, Colorado.

2.     Plaintiff Cherry Creek Surgery Center, LLC is a Colorado limited liability company with its principal place of business in Denver, Colorado.

3.     Plaintiff Hampden Surgery Center, LLC is a Colorado limited liability company with its principal place of business in Denver, Colorado.

4.     Plaintiff Kissing Camels Surgery Center, LLC is a Colorado limited liability company with its principal place of business in Colorado Springs, Colorado.

5.     Plaintiff SurgCenter of Bel Air, LLC is a Maryland limited liability company with its principal place of business in Bel Air, Maryland.

6.     Plaintiff Westminster Surgery Center, LLC is a Maryland limited liability company with its principal place of business in Westminster, Maryland.

7.     Counterclaim Defendant Surgical Center Development, Inc. is a Nevada corporation with its principal place of business in Pismo Beach, California.

8.     Defendant/Counterclaim Plaintiff Cigna Healthcare, Inc. is a corporation organized under the laws of Vermont with its principal place of business in Philadelphia, Pennsylvania.

9.      Defendant/Counterclaim Plaintiff Connecticut General Life Insurance Company is a company organized under the laws of Connecticut with its principal place of business in Connecticut.

10.     Counterclaim Plaintiff Cigna Health and Life Insurance Company is a company organized under the laws of Connecticut, with its principal place of business in Connecticut.

11.     Defendant/Counterclaim Plaintiff Cigna Healthcare of Colorado, Inc. is a Colorado corporation with its principal place of business in Colorado.

12.     Defendant/Counterclaim Plaintiff Cigna Healthcare – Mid-Atlantic, Inc. is a corporation organized under the laws of Maryland with its principal place of business in Maryland.

13.     A substantial part of the events giving rise to this action occurred in Colorado.

14.     The matters alleged in this action involve interstate commerce.

## 5.  COMPUTATION OF DAMAGES

Plaintiffs:

For the ERISA claims, three of the Plaintiffs seek payment of all arbitrarily denied and/or reduced claims at the amounts required under subscribers' benefit plans, which amounts are yet to be calculated but are likely in excess of $6 million and constantly increasing, plus interest, costs, and attorneys' fees.  For the antitrust claims, the four Colorado Plaintiffs seek damages, yet to be calculated, consisting of injury to business and property arising out of the Colorado Defendants' anti-competitive attempts to injure

or destroy their business. Plaintiffs also seek trebling of damages, costs, and expert and attorneys' fees under the Sherman Act and/or Colorado Antitrust Act.  In addition, Plaintiffs seek injunctive and declaratory relief.

Defendants and Counterclaim Plaintiffs:

Counterclaim Defendants' dual pricing and fee forgiving schemes induced Counterclaim Plaintiffs to reimburse the ASCs for charges that they did not bill their patients and were not covered by their patients' applicable healthcare plans; therefore Counterclaim Plaintiffs seek payment of all reimbursements made to the ASCs in excess of what they were owed under their patients' applicable healthcare plans, which amounts are yet to be calculated; damages relating to Counterclaim Defendants' tortious interference with Counterclaim Plaintiffs' contracts with members of Cigna-administered plans; other compensatory, exemplary and punitive damages; plus interest, costs and attorneys' fees.  To date, Cigna has made approximately $15 million in payments to the ASCs and incurred significant costs in investigating and uncovering the ASCs' unlawful conduct.  Further, due to Counterclaim Defendants' RICO, COCCA, and Civil Theft violations, Counterclaim Plaintiffs also seek trebling of damages, interest, costs, and expert and attorneys' fees.In addition, Counterclaim Plaintiffs seek injunctive and declaratory relief.

## 6. REPORT OF PRECONFERENCE DISCOVERY
## AND MEETING UNDER FED.R.CIV.P.26(f)

a.      Rule 26 (f) conferences were conducted on February 3, 2014 and on March 11, 2014.

b.      Counsel of record for each party participated in the Rule 26(f) conferences.

c.      The Rule 26(a)(1) disclosures were made on February 20, 2014. There are no proposed changes in the timing or requirement of disclosures under Fed. R. Civ. Proc. 26(a)(1).

d.      Plaintiffs filed an amended complaint pursuant to Federal Rule of Civil Procedure 15(a) on March 3, 2014.Defendants' response to the amended complaint will be due no later than April 11, 2014, Plaintiffs' opposition, if any, will be due no later than May 12, 2014, and Defendants' reply, if any, will be due no later than June 2, 2014.

e.      Counterclaim Defendant SurgCenter has agreed to accept service of the Counterclaim Plaintiffs' counterclaims, filed on February 10, 2014 [D.E. 17].  The parties have agreed that Counterclaim Defendants will file a response to the counterclaims no later than April 11, 2014.  Counterclaim Plaintiffs' opposition, if any, will be due no later than May 12, 2014, and Counterclaim Defendants' reply, if any, will be due no later than June 2, 2014.

f.      There have been no agreements concerning informal discovery.

g.      The parties have agreed to use a unified exhibit numbering system. There are no other agreements related to conduct of the litigation at this time. The parties

would like to proceed with discovery upon five (5) days of the service of Plaintiffs'
amended complaint.

h.      The parties anticipate that much of the documentary discovery in this case
will involve information in electronic format. Such documents may include financial
records relating to claims payments and damages. Each party has taken steps to
preserve electronic information that may be relevant to this litigation, including the
issuance of a "litigation hold" to relevant personnel. At this time, it is anticipated that
electronically stored information will be produced in native format. The parties will
discuss and promptly present the court with a form electronic discovery protocol
governing the production of electronic documents and data in the litigation.

i.      The parties have had ongoing discussions about the possibilities of a
prompt settlement or resolution of the case.  The Plaintiffs are always willing to engage
in further settlement discussions or mediation if there is serious interest from the
Defendants.

## 7.  CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate
judge.

## 8.  DISCOVERY LIMITATIONS

a.      Each side may take no more than fifteen depositions of each named party
to this action. Such limits do not apply to depositions of non-parties or any experts who
are required to submit a report pursuant to Rule 26(a)(2)(B), designated pursuant to this
Scheduling Order.

b.     Each side may serve no more than 25 interrogatories on each named party, including discrete subparts.

c.     No deposition may exceed one day of seven hours except by agreement of the parties.

d.     Each side may serve no more than a cumulative total of 50 requests for production and a cumulative total of 25 requests for admissions. The parties anticipate they will need to subpoena, for documents and testimony, certain non-parties to this litigation.  Should Plaintiffs' antitrust claims survive the pleading stage, the discovery taken in the HCA action may bear on this dispute. The parties agree that upon entry of an appropriate Protective Order allowing Defendants' access to the documents and other discovery taken in the HCA action, as well as allowing Defendants to attend and participate in depositions in that case, discovery developed in that case may be used in this Action.  Further, the Parties agree to the maximum extent possible, discovery of non-parties in this Action taken in the HCA action will not be duplicated by any party in this Action.

## 9.  CASE PLAN AND SCHEDULE

a.     The deadline to join parties and amend pleadings is June 2, 2014.

### Written Discovery

b.     The deadline to serve all written discovery requests pursuant to Federal Rules of Civil Procedure 33 and 34 to other parties is March 31, 2014.

c.     The deadline for the parties to serve any objections to written discovery requests is April 14, 2014, with substantive responses and document production to

follow on a rolling basis.

d.      The deadline for the parties to meet and confer regarding any objections with respect to written discovery requests is April 21, 2014.

e.      The deadline for the parties to submit to the Court any unresolved disputes regarding the written discovery requests is April 28, 2014.

f.      The deadline to serve third-party subpoenas is June 30, 2014.

g.      The deadline for the parties to substantially complete document production and substantive responses to all written discovery requests is September 19, 2014.

h.      The deadline for the parties to complete the exchange of all privilege logs is October 10, 2014.

i.      The deadline for the parties to meet and confer regarding any unresolved disputes regarding written discovery is October 17, 2014.

j.      The deadline for the parties to submit any unresolved disputes regarding written discovery to the Court is October 24, 2014.

**Deposition Discovery Pursuant to Federal Rule of Civil Procedure 30**

k.      The deadline for the parties to provide a list of all fact witnesses they wish to depose is October 24, 2014.

l.      The deadline for the completion of fact depositions is December 31, 2014.

m.      The deadline for the close of fact discovery is December 31, 2014.

**Expert Discovery Pursuant to Federal Rule of Civil Procedure 26
and Dispositive Motions**

n.      The parties shall designate all affirmative experts, serve affirmative expert reports, and provide opposing counsel with all information specified in Fed. R. Civ. P.

26(a)(2) by January 23, 2015.

o.      The parties shall file all dispositive motions by January 28, 2015.

p.      The parties shall designate all rebuttal experts, serve rebuttal expert reports, and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) by February 20, 2015.

q.      The parties shall file all responses to dispositive motions by February 27, 2015.

r.      The parties shall file all replies in support of their dispositive motions by March 20, 2015.

s.      Absent leave of the Court, the parties shall not take expert depositions prior to the Court's resolution of all dispositive motions.  The parties will complete expert depositions within 40days after the Court rules on all dispositive motions.

## 10.  DATES FOR FURTHER CONFERENCES

*[The magistrate judge will complete this section at the scheduling conference if he or she has not already set deadlines by an order filed before the conference.]*

a.      Status conferences will be held in this case at the following dates and times:

_____.

b.      A final pretrial conference will be held in this case on _____ \_\_\_\_\_ at \_\_\_ o'clock am/pm.  A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11.  OTHER SCHEDULING MATTERS

a.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

b.      The parties anticipate trial will last approximately two weeks.  The trial will be trial by jury to the extent any claims for trial are so triable.

c.      Plaintiffs believe that all pretrial proceedings should be conducted in the District Court's facilities in Denver, Colorado.

## 12.  NOTICE TO COUNSEL AND *PRO SE* PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a pro se party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of

change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13. AMENDMENTS TO SCHEDULING ORDER

The Scheduling Order shall only be altered or amended based on a showing of good cause.

DATED at Denver, Colorado, this _____ day of _____, 20<u>14</u>.

BYTHECOURT:

_____
United States Magistrate Judge

APPROVED:

/s/ Joe R. Whatley, Jr.
Joe R. Whatley, Jr.
Colorado State Bar No. 38820
WHATLEY KALLAS, LLP
720 East Durant Street
Suite E6
Aspen, CO 81611
Tel: 970-300-4848
Fax: 970-429-8280

*Attorney for Plaintiffs and Counterclaim*
*Defendants*

/s/ Joshua B. Simon
Joshua B. Simon
KIRKLAND & ELLIS, LLP
New York, NY 10022
Tel: 212-446-4800
Fax: 212-446-6460

*Attorney for Defendants and Counterclaim*
*Plaintiffs*