**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-03422-WJM-CBS

ARAPAHOE SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
HAMPDEN SURGERY CENTER, LLC,
KISSING CAMELS SURGERY CENTER, LLC,
SURGCENTER OF BEL AIR, LLC, and
WESTMINSTER SURGERY CENTER, LLC,

       Plaintiffs and Counterclaim Defendants,

  and

Surgical Center Development, Inc. d/b/a SurgCenter Development,

       Counterclaim Defendant,

v.

CIGNA HEALTHCARE, INC.,
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
CIGNA HEALTHCARE – MID-ATLANTIC, INC., and
CIGNA HEALTHCARE OF COLORADO, INC.,

       Defendants and Counterclaim Plaintiffs.

---

**COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS**

---

Pursuant to Rule 12(b)(6), Counterclaim Defendants move to dismiss Cigna's[1] counterclaims for failure to state a claim upon which relief can be granted.[2]  Pursuant to D.C.COLO.LCivR 7.1 (A) and WJM Revised Practice Standard III.D, the undersigned discussed the contents of this Motion with counsel for Defendants and Counterclaim Plaintiffs, and Defendants and Counterclaim Plaintiffs do not agree to the requested relief.  Based upon the nature of the defects in Cigna's Counterclaims, the undersigned do not believe that the deficiencies can be corrected by amendment.

## I.     CIGNA LACKS STANDING TO PURSUE THE COUNTERCLAIMS

Article III standing requires a plaintiff to show "injury in fact." *Kerr v. Hickenlooper*, 2014 U.S. App. LEXIS 4280, at *10 (10th Cir. Mar. 7, 2014).  Cigna lacks standing to pursue claims brought on behalf of ERISA plans because Cigna has not suffered injury: "The vast majority of Cigna-administered plans are ASO plans funded by the employers who sponsor them, and a Cigna entity serves only as the plans' claims administrator." Counterclaim ¶ 28.   Accordingly, if any injury resulted from overpayments to the ASCs, the plans – rather than Cigna – suffered the injury.

## II.    CIGNA'S RICO CLAIMS FAIL FOR NUMEROUS REASONS[3]

This action involves a simple payment dispute between Cigna and the

---

[1] "Cigna" includes Connecticut General Life Insurance Company; Cigna Health and Life Insurance Company; Cigna Healthcare, Inc.; Cigna Healthcare – Mid-Atlantic, Inc.; and Cigna Healthcare of Colorado, Inc.

[2] The Counterclaim Defendants are Arapahoe Surgery Center, LLC; Cherry Creek Surgery Center, LLC; Hampden Surgery Center, LLC; Kissing Camels Surgery Center, LLC; SurgCenter of Bel Air, LLC; Westminster Surgery Center, LLC (collectively the "Ambulatory Surgical Centers" or "ASCs"); and Surgical Center Development, Inc.

[3] Federal RICO and Colorado RICO "are similar and are generally construed according to similar principles."  *L-3 Commc'ns v. Jaxon Eng'g & Maint. Inc.*, 863 F.Supp. 1066, 1076 (D. Colo. 2012).  Accordingly, Cigna's Colorado RICO ("COCCA") claims should be dismissed for the same reasons as Cigna's federal RICO claims.

1

Ambulatory Surgery Centers.  At issue is whether Cigna is obligated to pay the ASCs for medical services provided to Cigna's insureds where the ASCs honored the insured's in-network benefits rather than collecting out-of-network benefits.  Cigna's attempt to contort this garden-variety payment dispute into a RICO claim fails because Cigna has not pled the threshold requirements for a RICO claim.

"To survive a Rule 12(b)(6) motion, a civil RICO claim must allege the defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Tal v. Hogan*, 453 F.3d 1244, 1269 (10th Cir. 2006).[4]  Moreover, in order to establish standing, Cigna must plausibly allege an injury proximately caused by racketeering activity.  18 U.S.C. § 1964(c); *Tal*, 453 F.3d at 1254.[5]  Because Cigna has not plausibly alleged the elements of a RICO claim or injury resulting from racketeering activity, Cigna's federal and state RICO claims must be dismissed.

### A. CIGNA HAS NOT PLAUSIBLY PLED PREDICATE ACTS OR INJURY FLOWING FROM RACKETEERING ACTIVITY.

Cigna's RICO claims are predicated on the ASCs' alleged commission of mail and wire fraud in violation of 18 U.S.C. Sections 1341 and 1343.  Counterclaim ¶¶ 209-10. In order to allege a violation of the mail or wire fraud statute, a plaintiff must allege "'(1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the

---

[4] *See also Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1136-37 (D. Colo. 2013) ("To properly allege a COCCA claim, Plaintiffs must plead that [defendants] plausibly participated in the affairs of an 'enterprise' through a pattern of two or more instances of racketeering activity").

[5] *See also Henson*, 935 F. Supp. 2d at 1141 ("In the absence of any actionable injury, Plaintiffs' substantive COCCA claim fails.")

hearer's right to rely on it; and (9) injury….'" *Tal*, 453 F.3d at 1263 (quoting *BancOklahoma Mortgage Corp.*, 194 F.3d 1089, 1102 (10th Cir. 1999)). "The particularity requirement of Rule 9(b), Federal Rules of Civil Procedure, applies to claims of mail and wire fraud" and "[f]ailure to adequately allege any one of the nine elements is fatal to the fraud claim." *Tal*, 453 F.3d at 1263.[6]  As the First Circuit has cautioned, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *Efron v. Embassy Suites, Inc.*, 223 F.3d 12, 20 (1st Cir. 2000).  Cigna has not plausibly alleged the elements of a RICO claim with the requisite particularity, and its allegations cannot survive close scrutiny.

The lynchpin of Cigna's Counterclaim and the source of Cigna's alleged injuries is the ASCs' alleged failure to collect the full amount of copayments and deductibles that Cigna contends are required by the terms of the plans.  Counterclaim ¶¶ 33-51, 63, 74.  Yet, Cigna concedes that the ASCs disclosed to both patients and Cigna that rather than collecting out-of-network patient responsibility amounts, they were instead collecting patient responsibility amounts based on in-network calculations. Counterclaim ¶ 77; Exs. D, E, F.  In an effort to obscure the fact that the ASCs disclosed the "fraud" that CIGNA contends resulted in injury, Cigna manufactures a "fee forgiving scheme" and a "dual pricing scheme." *See, e.g.*, Counterclaim ¶¶ 1, 62, 67.

---

[6]*See also Henson*, 935 F. Supp. 2d at 1137 ("It is well-established that if the predicates [sic] acts underlying a COCCA claim are fraudulent acts, the circumstances must be pled with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.")

Obviously, the "fee forgiving scheme" was not a fraudulent scheme because Cigna admits it was disclosed. Counterclaim ¶77. Cigna's real problem with the ASCs' practice of billing patients at in-network levels is that Cigna believes that it should not have to pay for services when a healthcare provider bills the patient less than the out-of-network amount. This constitutes a disagreement regarding the terms of Cigna's plans, which is the heart of this case. This does not, however, constitute a RICO scheme.

A RICO claim based on the "dual pricing scheme" is likewise foreclosed by Cigna's own allegations. Cigna's only contention regarding the insufficiency of the ASCs' disclosures is that the ASCs did not disclose their methodology for computing their charges and did not tell Cigna that they were using a different rate to calculate the patient's responsibility and Cigna's charges. Counterclaim ¶¶ 77-78. Cigna's summary of the alleged fraudulent scheme demonstrates the fallacy of these allegations and the implausibility of Cigna's RICO claims. In the first paragraph of Cigna's synopsis of the scheme, Cigna makes the following admission: "[E]ach ASC **estimates** to the Cigna plan members the cost of their outpatient procedures **based on Medicare rates to approximate in-network rates**." Counterclaim ¶ 68 (emphasis added).

First, as Cigna concedes, the charge that an ASC initially provides a Cigna plan member is simply an **estimate** of Cigna's in-network rate, used only to calculate what the ASC will charge the patient – not some kind of "dual price." Counterclaim ¶ 68 (emphasis added). At the time of service, the ASC collects an amount estimated to be equal to the patient's in-network responsibility and tells the patient that the ASC will process the claim with the intention of honoring in-network deductibles and co-

4

insurance.  Counterclaim Exs. D, E, F[7].  *See also* Counterclaim ¶ 2.  Once the ASC submits the claim for processing, Cigna, not the ASC, determines the amount of the claim that Cigna will allow. Counterclaim ¶ 33.  The ASC cannot determine final responsibility until Cigna calculates the allowed amount, which is not necessarily the full amount submitted by out-of-network providers.  *See* Counterclaim ¶¶ 35, 41, 49, 116.  Once Cigna has determined the allowed amount and has issued the plan member an explanation of benefits ("EOB"), the plan member is directed to provide the EOB to the ASC so the ASC can properly credit the account and make any necessary adjustments to assure that the promise of in-network liability will be honored.  Counterclaim Exs. D, E, F.[8]  As Cigna's own pleadings demonstrate, the ASC's initial estimate of the patient's financial responsibility is not fraudulent but is instead a necessary first step in determining a patient's ultimate liability.

Second, and even more damning, is Cigna's admission that the ASCs utilize Medicare rates in order **to approximate in-network rates**.  Counterclaim ¶¶ 3, 68.  Cigna does not plausibly allege that Defendants engaged in a nefarious scheme utilizing different rates with the intent to deceive Cigna to collect inflated charges.  Instead, Cigna's allegations demonstrate that Defendants utilized Medicare rates to approximate the patient's in-network responsibility, told the patients they were going to honor in-network benefits and then disclosed the practice to Cigna.  Cigna provides no

---

[7] "Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss."  *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[8] The patient also remains liable for any portion of the balance not paid by Cigna.  However, because Cigna chose not to include the documents demonstrating this fact as exhibits to their Counterclaim, Defendants do not seek dismissal on this basis.

explanation as to how the ASCs' failure to disclose the precise methodology the ASCs use to estimate the patient's in-network liability can constitute a fraudulent scheme. *See Tal*, 453 at 1266.  Cigna does not even explain and cannot plausibly allege a reason why the ASCs would have a duty to disclose this methodology. Yet, nondisclosure is not actionable mail or wire fraud without something more.  *United States v. Gallant*, 537 F.3d 1202, 1228 (10th Cir. 2008).  Cigna likewise does not allege why the methodology used to estimate patient responsibility would be material, given that the ASCs disclose the fact that they compute patient responsibility utilizing in-network rates.  Counterclaim ¶¶ 77-78, 85-86, 109.  Thus, Cigna also does not plausibly explain how the ASCs' alerting Cigna to the fact that they had calculated the patient's charges related to the claim in question based on in-network rates was either false or material.  *See* Counterclaim ¶ 78.  Because Cigna alleges that Medicare rates were used to approximate in-network rates, and that the ASCs disclosed that they were utilizing in-network rates, Cigna does not plausibly allege a fraudulent scheme.

Third, Cigna does not plausibly allege reasonable reliance with regard to the ASCs' failure to disclose their methodology or their statement that the insured's portion of the bill had been reduced in paying for Defendants' services.  Instead, Cigna offers only conclusory allegations of reliance on behalf of all Plaintiffs.  *See* Counterclaim ¶¶ 9, 214.  Such allegations of reliance are insufficient, given Cigna's admissions regarding the disclosures made by the ASCs, and given Cigna's concession that the ASCs were using Medicare rates to approximate in-network responsibility.

Finally, Defendants cannot plausibly allege reliance or injury based on the ASCs' failure to disclose their methodology for computing in-network rates. Cigna's alleged reason for having no duty to pay the claims in question is that the ASCs are not collecting the full amount of the plan member's responsibility in accordance with the terms of the plans, a fact the ASCs admittedly disclosed. *See* Counterclaim ¶¶ 4, 41-54, 74, 95-99, 120, 137-38, 147-49. Thus, Cigna's allegations clearly demonstrate that Cigna's only "injuries" flow from the ASCs' decision to honor patients' in-network benefits, which Cigna admittedly knew when it paid the ASCs' claims. Moreover, even if Cigna had known exactly how the ASCs estimated a patient's in-network responsibility, it would not have changed Cigna's responsibilities under the plan to pay for the ASCs services. As Cigna's allegations demonstrate, the plans are either obligated to pay the ASCs for medical services the ASCs provide to Cigna's insureds, or the plans are not obligated to pay the ASCs because the ASCs do not collect the full amount for out-of-network responsibility. Cigna-administered plans limit reimbursement for out-of-network services to the "Maximum Reimbursable Charge." Counterclaim ¶ 47, Ex. A at 14. Under the formula set forth in the plan, Cigna must pay 70% of the "Maximum Reimbursable Charge," which is the lesser of "the provider's normal charge for a similar service" or 125% of the fee listed on "a schedule that Cigna [has] developed." *Id.* Cigna suggests that "the inflated 'charges' submitted to Cigna by the ASCs were not their 'normal charge' for the services at issue, because they were not the charges that the ASCs actually charged their patients." Counterclaim ¶ 48. Yet, as Cigna admits, the ASCs used the Medicare rate only to approximate the patient's in-network liability

7

and then disclosed to Cigna that the patient's liability had been estimated based on in-network calculations. The ASCs' disclosure or nondisclosure of their methodology did not change Cigna's obligations under the plans. *See Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1136-37 (D. Colo. 2013). Because Defendants disclosed the fact that they were not requiring Cigna's insureds to pay the full out-of-network responsibility, Cigna could not have relied on the alleged "fee forgiving scheme" or the "dual pricing scheme" and was not injured by the alleged predicate acts. Cigna has not sufficiently pled federal or state RICO claims.

### B. CIGNA HAS NOT SUFFICIENTLY ALLEGED THAT DEFENDANTS CONTROL AN ENTERPRISE THROUGH RACKETEERING ACTIVITY.

Cigna has not alleged the existence of an enterprise, which is "[c]ritical to any RICO claim." *Marlow v. Allianz Life Ins. Co. of N. Am.*, 2009 U.S. Dist. LEXIS 43502, at *15 (D. Colo. May 12, 2009). The Counterclaim includes only conclusory allegations regarding the alleged enterprise made "upon information and belief." Counterclaim ¶ 201. Courts routinely find such conclusory allegations regarding a RICO enterprise to be insufficient. *Dalton v. City of Las Vegas*, 282 F. App'x. 652, 655 (10th Cir. 2008) (dismissing RICO claims where the complaint contained only a "conclusory allegation that the City is an 'enterprise' for RICO purposes"); *Andrews v. United States*, 2010 U.S. Dist. LEXIS 74660, at *12 (D. Colo. March 8, 2010) ("[T]he complaint fails to adequately allege the existence or the nature of the supposed enterprise"); *Jensen v. Lender*, 2010 U.S. Dist. LEXIS 67777, at *9 (D. Utah July 8, 2010) (dismissing where the plaintiff alleged "in conclusory fashion" that the defendants are an enterprise).

Notably absent from Cigna's pleading are facts demonstrating that the alleged enterprise is distinct from the Defendants. "[F]or purposes of 18 U.S.C. § 1962(c), the defendant 'person' must be an entity distinct from the alleged '"enterprise."'" *Brannon v. Boatmen's First Nat'l Bank of Okla.*, 153 F.3d 1144, 1146 (10th Cir. 1998). Cigna's enterprise allegations are nothing more than groupings of the Defendants themselves and do not sufficiently allege a distinction between person and enterprise. *Switzer v. Coan*, 261 F.3d 985, 992 (10th Cir. 2001); *Apache Tribe of Okla. v. Brown*, 2013 U.S. Dist. LEXIS 114776, at *11 (W.D. Okla. Aug. 14, 2013); *Wood v. World Wide Ass'n of Specialty Programs & Sch., Inc.*, 2011 U.S. Dist. LEXIS 86440, at *22-23 (D. Utah Aug. 2, 2011); *Hall v. Witteman*, 569 F. Supp. 2d 1208, 1227 (D. Kan. 2008).

Cigna has alleged no facts plausibly demonstrating the conduct of the enterprise as distinct from the conduct of the Defendants. "[A] separate enterprise is not demonstrated by the mere showing that the corporation committed a pattern of predicate acts in the conduct of its own business." *Board of County Comm'r*, 965 at 885. As in *Wood,* 2011 U.S. Dist. LEXIS 86440, at *22-23, "[t]here are no facts to support even an inference that the joint actions of the Defendants were carried out through a separate and distinct entity that could constitute a RICO enterprise."

Cigna has also not alleged why the enterprises which were pled "upon information and belief" were necessary to facilitate the alleged fraud. "[A]t a bare minimum, an allegation of RICO liability under 1962(c) must indicate how the defendant used the alleged enterprise to facilitate the fraudulent conduct." *Brannon*, 153 F.3d at 1148 (citing *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321 (7th Cir. 1997) and *Fitzgerald*

9

*v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997)). Because Cigna has not pled the existence of an enterprise or predicate acts, Cigna's federal RICO claim (Count II) and state RICO claim (Count XI) must be dismissed.

### III. CIGNA'S ERISA CLAIM AND CLAIM FOR DECLARATORY RELIEF IN COUNT XII SHOULD BE DISMISSED BECAUSE CIGNA DOES NOT SEEK EQUITABLE RELIEF

Cigna asserts claims for overpayments under ERISA Section 502(a)(3). Cigna also seeks declaratory relief related to "services provided to patients who are purportedly covered under employee health and welfare benefit plans that are insured or administered by Cigna." Counterclaim ¶ 303. Cigna should not be permitted to proceed with either claim.

In order to assert a claim pursuant to Section 502(a)(3), a plaintiff must seek equitable relief. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002). Numerous courts have held that an insurer seeking the return of alleged overpayments seeks only monetary legal damages and, therefore, cannot sustain a claim under Section 502(a)(3). *See Cent. States v. Gerber Life Ins. Co.*, 2013 U.S. Dist. LEXIS 169082 (S.D.N.Y. Nov. 26, 2013); *Cent. States v. Bollinger*, 2013 U.S. Dist. LEXIS 119295(D.N.J. Aug. 22, 2013); *Cent. States v. Health Special Risk, Inc.*, 2012 U.S. Dist. LEXIS 150120 (N.D. Tex. Oct. 18, 2012); *Cent. States v. Health Special Risk, Inc.*, 2012 U.S. Dist LEXIS 63137 (N.D. Tex. May 4, 2012). Cigna's attempts to recast its ERISA claims as claims for injunctive and declaratory relief are likewise unavailing. *See Gerber Life Ins. Co.*, 2013 U.S. Dist. LEXIS 169082, at *18-19; *Bollinger*, 2013 U.S. Dist. LEXIS 119295, at *17-21; *Health Special Risk, Inc.*, 2012 U.S. Dist. LEXIS

150120, at *6-8; *Health Special Risk, Inc.*, 2012 U.S. Dist. LEXIS 63137, at *9-10. Count I and Count XII should be dismissed for failure to state a claim.

## IV.   CIGNA'S STATE-LAW TORT CLAIMS ARE PREEMPTED

All of Cigna's state-law claims related to patients who are covered under employee health and welfare benefit plans that are insured or administered by Cigna are preempted. There are two types of ERISA preemption: "(1) 'conflict preemption' and (2) remedial or 'complete preemption.'" *David P. Codesina, D.D.S., P.C., Empl. Profit Sharing Plan & Trust v. Estate of Simper*, 407 F.3d 1126, 1135 (10th Cir. 2005). Cigna's state law claims are barred under the principles of both complete preemption and conflict preemption.

As Cigna's Counterclaim repeatedly demonstrates, "interpretation of the terms of[the] benefit plans [insured or administered by Cigna] forms an essential part" of Cigna's state-law claims and, therefore, liability under such laws could only exist because "of ERISA-regulated benefits plans." *Aetna Health Inc. v. Davila*, 124 S. Ct. 2488, 2498 (2004). Accordingly, Cigna's state-law causes of action "are not entirely independent of the federally regulated contract itself" and are completely pre-empted. *Id.*

Cigna's claims are also pre-empted by ERISA's express conflict provision, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter related to any [ERISA] plan." 29 U.S.C. § 1144(a). "[T]he Supreme Court has consistently held that the Act's preemptive scope is broad." *Estate of Simper*, 407 F.3d at 1136. A law relates to an employee benefit plan "if it has a connection with or

11

reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). The state-law claims here unquestionably have a connection to and reference the plans at issue. The claims "affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries." *Coldesina*, 407 F.3d at 1136. As Cigna's allegations make clear, the claims also have "an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." *Airparts Co. v. Custom Benefit Servs.*, 28 F.3d 1062, 1065 (10th Cir. 1994). As the Court found in *Central States v. Health Special Risk, Inc.*, 2013 U.S. Dist. LEXIS 83400, at *16-22 (N.D. Tex. Jun. 13 2013), Cigna's state law claims relate to plan benefits which were allegedly not paid in accordance with the terms of the plans and, accordingly, are conflict preempted.[9]

## V. CIGNA'S STATE-LAW FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS FAIL; THE AIDING AND ABETTING FRAUD CLAIMS ALSO FAIL

Even if ERISA does not preempt Cigna's claims under state law, those claims fail. As set forth in Part 1.A above, Cigna has not plausibly alleged misrepresentations, materiality, reliance or damages. Yet, each of these elements is required to state a fraud claim or a negligent misrepresentation claim under both Colorado and Maryland Law. *See Thomas v. Burg*, 2012 U.S. Dist. LEXIS 79067, at *6 (D. Colo. June 7, 2012); *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 597 (D. Md. 2013); *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011); *Lloyd v. General Motors*, 916 A.2d 257,

---

[9] There is no inconsistency between Cigna's lack of a remedy under ERISA and its inability to bring claims under state law. Courts have recognized that ERISA's broad preemption sometimes causes this result. *See Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1162-63 (10th Cir. 2004).

273 (Md. 2007). Because the underlying substantive claims fail, Cigna's aiding and abetting claims must be dismissed as well.

## VI.   DEFENDANTS WERE NOT UNJUSTLY ENRICHED

Defendants have not plausibly alleged unjust enrichment because Defendants provided services to Cigna's insureds, which benefitted Cigna.  See *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1130 (10th Cir. 2008); *Caroline County v. Dashiell*, 747 A.2d 600, 607 n.7 (Md. 2000).  As the Tenth Circuit noted, "If the Van Zanens were allowed to recover the fees that they paid to Qwest, they would, as the district court noted, be allowed to retain a benefit without paying for it."  *Van Zanen*, 522 F.3d at 1131.  Cigna's unjust enrichment claim does not seek to remedy or prevent injustice but instead attempts to secure an inequitable and unjustified windfall for Cigna.

## VII.   CIGNA'S TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED

Cigna's tortious interference claim is barred by the economic loss rule because the plan is the only possible source of duty for the ASCs to refrain from reducing a Cigna insured's patient responsibility amount to in-network levels.  *See Parr v. Triple L&J Corp.*, 107 P.3d 1104, 1108 (Colo. Ct. App. 2004).  Even if the claim was not barred, Cigna has not sufficiently pled a claim for tortious interference.  Cigna has not alleged that any Defendant intended to induce a breach of the plan.  To the contrary, Cigna has alleged that the ASCs' intent was "to induce the patients to use the ASCs' out-of-network services."  Counterclaims ¶ 257.  Moreover, inducement is not demonstrated by showing that a defendant "merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third

13

person." *Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 51 (10th Cir. 1963) (quoting Restatement of Torts § 766 (1939)). Maryland likewise follows the Restatement in construing the law of tortious interference. *See Discovery Commc'ns v. Computer Scis. Corp.*, 2013 U.S. Dist LEXIS 94688, at *6 (D. Md. July 8, 2013). Cigna has alleged neither unlawful nor wrongful conduct. As set forth herein, Cigna has not plausibly alleged a "fraudulent dual pricing scheme" or inflated charges (*see supra* Part I.A.). Likewise, Cigna has not alleged a violation of Section 18-13-119 (*see infra* Part VII). Cigna, accordingly, has not been harmed by paying overcharges. Notably, Cigna has not alleged a breach or damages flowing from a breach of the plan agreement. Cigna's allegations that "the ASCs . . . maliciously and wrongfully interfered with the economic relationships between Cigna and its members" and that Defendants "have caused harm to the relationship between Cigna and its members" are insufficient to allege damages flowing from the alleged interference.

## VIII. DEFENDANTS HAVE NOT VIOLATED SECTION 18-13-119 OF THE COLORADO CRIMINAL CODE

Section 18-13-119 does not prohibit the practice of reducing a patient's copayment or deductible to in-network responsibility levels. Instead, by its express terms, Section 18-13-119 prohibits only "[b]usiness practices that have the effect of **eliminating the need for actual payment** by the recipient of health care of required copayments and deductibles." C.R.S. 18-13-119 (emphasis added). By contrast, the Colorado legislature in Section 18-13-119.5, which prohibits abuse of property insurance, expressly provided that the provision would apply to all "[b]usiness practices that have the effect of **reducing or eliminating** the need for actual payment of required

copayments and deductibles." C.R.S. 18-13-119.5 (emphasis added). The legislature chose not to include the phrase "reducing" in Section 18-13-119. The phrase cannot now be read into the statute by implication. Cigna alleges that the ASCs have engaged in the practice of reducing deductibles and copayments to in-network levels. Counterclaim ¶ 2. Because this practice does not violate Section 18-13-119, Cigna's claim for declaratory relief under Section 18-13-119 of the Colorado Criminal Code (Count IX) must be dismissed.

## IX. PLAINTIFFS HAVE NOT SUFFICIENTLY PLED A CLAIM UNDER SECTION 18-4-405

Cigna's claim under Section 18-4-405 fails for numerous reasons. As an initial matter, none of the Plaintiffs have alleged that they are the rightful owners of property that has been stolen and, accordingly, do not have standing to assert a claim under Section 18-4-405. *See Cedar Lane Inv. v. Am. Roofing Supply*, 919 P.2d 879, 882 (Colo. Ct. App. 1996). Cigna's Section 18-4-405 claims must also be dismissed because Cigna has also not plausibly alleged misrepresentations, reliance or actual damages. C.R.S. 18-4-405; CRS 18-4-401; *People v. Norman*, 703 P.2d 1261, 1268 (Colo. 1985). "There can be no 'deception' if the victim is not deceived." *People v. Terranova*, 38 Colo. App. 476, 483 (1976).

Dated:  April 11, 2014						Respectfully submitted,

/s/ Joe R. Whatley, Jr.
Joe R. Whatley, Jr.
Colorado State Bar No. 38820
WHATLEY KALLAS, LLP
720 East Durant Street
Suite E6
Aspen, CO  81611
Tel: 970-300-4848
Fax: 970-429-8280
Email: jwhatley@whatleykallas.com

Edith M. Kallas
WHATLEY KALLAS, LLP
1180 Avenue of the Americas, 20th Floor
New York, NY  10036
Tel.: (212) 447-7060
Fax: (800)922-4851
Email: ekallas@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA  30306
Tel.: (404) 607-8222
Fax: (404) 607-8451
Email: dwinegard@whatleykallas.com

W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place Tower, Suite 1000
Birmingham, AL  35203
Tel.: (205) 488-1200
Fax: (800) 922-4851
Email: tbrown@whatleykallas.com

Henry C. Quillen
WHATLEY KALLAS, LLP
1 New Hampshire Avenue
Suite 125
Portsmouth, NH 03801
Tel.: (603) 766-4902
Fax: (603) 766-1901
Email: hquillen@whatleykallas.com

*Attorney for Plaintiffs and Counterclaim Defendants*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this the 11th day of April, 2014, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Joe R. Whatley, Jr.*
Joe R. Whatley, Jr.
