# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

_____

Civil Action No. 13-cv-03422
_____

ARAPAHOE SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
HAMPDEN SURGERY CENTER, LLC,
KISSING CAMELS SURGERY CENTER, LLC,
SURGCENTER OF BEL AIR, LLC, and
WESTMINSTER SURGERY CENTER, LLC,

    Plaintiffs,

v.

CIGNA HEALTHCARE, INC.,
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
CIGNA HEALTHCARE - MID-ATLANTIC, INC., and
CIGNA HEALTHCARE OF COLORADO, INC.,

    Defendants.

_____

**STIPULATION REGARDING THE COLLECTION AND PRODUCTION OF
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**
_____

This Stipulation sets forth the general agreement between Plaintiffs and Counterclaim Defendants Arapahoe Surgery Center, LLC, Cherry Creek Surgery Center, LLC, Hampden Surgery Center, LLC, Kissing Camels Surgery Center, LLC, SurgCenter of Bel Air, LLC, Westminster Surgery Center LLC, and Surgical Center Development, Inc. d/b/a SurgCenter Development and Defendants and Counterclaim Plaintiffs Cigna Healthcare, Inc., Connecticut General Life Insurance Company, Cigna Health and Life Insurance Company, Cigna Healthcare - Mid-Atlantic, Inc., and Cigna

Healthcare of Colorado, Inc. (individually, a "Party" and collectively, the "Parties") regarding the production of paper documents ("Documents") and electronically stored information ("ESI") in the above-captioned case (the "Action").

**I.     GENERAL TERMS**

   A.     <u>Application</u>. The procedures set forth in this Stipulation shall govern the production of Documents and ESI (as those terms are used in the Federal Rules of Civil Procedure, including Rule 34(a)) relevant to this Action. To the extent that relevant ESI includes text messages, instant messages, and personal e-mail accounts not supported by the Parties, the Parties will make reasonable efforts to collect and produce this information (subject to relevant general and specific objections), provided a custodian has control over this data and it is available in a format that is accessible by the Parties. In the event that any Party identifies a particular source of responsive Documents or ESI for which application of this Stipulation would be impossible or otherwise unduly burdensome or impractical, the Party identifying the source will promptly notify other Parties, and the Parties may meet and confer concerning the source.

   B.     <u>Scope of Discovery</u>. This Stipulation does not affect the proper subject matter of discovery in this Action. Nor does this Stipulation imply that Documents or ESI produced under its terms are relevant or admissible in this Action or in any other litigation.

   C.     <u>Preservation of Data</u>. This Stipulation does not alter or expand the preservation obligations of any Party.

   D.     <u>Privileges</u>. Nothing in this Stipulation shall be interpreted to require the disclosure of Documents or ESI that a Party contends are protected by the attorney-

client privilege, the work-product doctrine, or any other applicable privilege or protection.

    E.    <u>Legibility</u>.  The Parties will make reasonable efforts to ensure that all Documents and ESI they produce are legible.  If a copy is not legible (i) and it is possible to produce a legible copy, such a legible copy will be produced (subject to relevant general and specific objections) within five (5) business days of a request from a receiving Party, or as mutually agreed upon by the Parties but (ii) if no legible copy can be made, then the original will be made available for inspection and copying within ten (10) business days of a request from a receiving Party, or as mutually agreed upon by the Parties.

    F.    <u>Modification and Amendment</u>.  This Stipulation may be modified or amended by written agreement of the Parties.

    G.    <u>Reservation of Rights</u>.  The Parties reserve all rights under the Federal Rules of Civil Procedure, the Local Rules of Practice of the U.S. District Court for the District of Colorado, and applicable Judicial Practice Standards.

    H.    <u>Definitions</u>.

    1.    "Metadata" is defined as (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

2. "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified.

## II.     COLLECTION OF DOCUMENTS AND ESI

A. <u>Custodians</u>. Within 30 days of receipt of a written discovery request from another Party or from Entry of an Order consistent with this Stipulation, the responding Party shall identify a reasonable subset of ESI custodians that are likely to have ESI responsive to those written discovery requests. Prior to the production of ESI, each Party shall provide to all other Parties (i) a copy of that Party's organizational chart or comparable document, to the extent such document is available, and (ii) a list of ESI custodians from whom ESI will be collected.

B. <u>Sources</u>. The Parties shall take reasonable efforts to identify and collect any Documents and ESI potentially relevant to this Action from all sources of potentially responsive information, including servers, network drives, and shared drives.

C. <u>Search of ESI</u>. The Parties may use keyword searching to identify ESI that is reasonably likely to have discoverable information regarding the subject matter of this Action. If any Party chooses to use keyword searching to identify potentially relevant ESI, that Party shall offer to meet and confer with regard to the search terms to be used and the sources of ESI to be searched. If the Parties disagree on the applicable keywords to be used or sources of ESI to be searched, any Party may file an appropriate motion for determination by the Court. During the pendency of any such motion, the producing Party's production obligation will be stayed.

D. <u>Collection of ESI</u>. The Parties shall use best efforts to collect ESI in a

4

forensically sound manner that does not alter metadata or other file attributes.

### III.     PRODUCTION OF DOCUMENTS

A.     <u>File Type</u>.  The Parties shall produce Documents as Group IV black and white, single-page TIFF images at not less than 300 dpi resolution, along with associated document-level text files, image load files (.DII, LFP, and OPT) indicating appropriate document and family breaks, as well as metadata load files in delimited text format containing the fields required by Section IV(C).  The TIFF image must convey the same information as if the Document were produced in paper.

B.     <u>Extracted Text and OCR</u>.  For documents that do not contain redactions, the producing Party will produce an extracted text file for each electronic document where text can be extracted, and an Optical Character Recognition ("OCR") text file for 1) each imaged paper document, and 2) each electronic document for which text cannot be extracted.  For documents that contain redactions, the producing Party will provide an OCR text file for the unredacted portions of such documents.  Said extracted text and OCR files shall be produced as document level text files and be named consistently with their corresponding TIFF files ([producing Party's Name]-000000001.tif and [producing Party's Name]-000000001.txt).  The Parties shall agree to discuss a list of file types, not containing extracted text and for which OCR text will be provided by the producing Party at the time of production.  The Parties recognize that agreeing to a specific list now is premature as the Parties first need to understand which file types might be relevant.

C.     <u>Color Copies</u>.  A receiving Party may request that specific Documents be

produced in color for good cause.

  D. <u>Family Groups</u>.  The Parties shall maintain family groups together in one production volume and shall not break family groups apart in separate production volumes.

  E. <u>Scan Size</u>.  Reasonable efforts will be used to scan Documents at or near their original size, so that the print or image on the Document appears straight, and not skewed.  Reducing image size may be necessary to display production numbers and confidentiality designations without obscuring text.  Physically oversized originals will appear reduced.  A producing Party reserves the right to determine whether to produce oversized Documents in their original size.  A receiving Party may request that specific oversized Documents be produced in their original size for good cause.

  F. <u>Notes and Attachments</u>.  If any original Document has notes or attachments affixed thereto, the Parties will produce copies of those Documents with the accompanying notes and attachments unless privileged or exceptioned during processing.

  G. <u>Sample</u>.  At least five business days before the first deadline for the production of documents, the producing Party shall produce to the receiving Party a sample production of Documents to assist the receiving party's ESI vendor in resolving any formatting or load file issues before the full production is received.

**IV. PRODUCTION OF ESI**

  A. <u>File Type</u>.  Except as specified in Section IV(C) below, the Parties shall produce ESI as Group IV black and white, single-page TIFF images at not less than

300 dpi resolution, along with associated document-level text files, image load files (.DII, LFP, and OPT) indicating appropriate document and family breaks, as well as metadata load files in delimited text format containing the fields required by Section IV(B).

  B. <u>Metadata</u>.  For each item of ESI, if applicable, the Parties shall identify the following metadata:

- author/from
- recipient/to
- persons to whom the ESI was copied/CC
- persons to whom the ESI was blind copied/BCC
- the native application date on which the ESI was created
- the date the ESI was last modified
- the subject line
- the file name
- the file extension (*e.g.*, pdf, doc, ppt, etc.)
- date sent
- date received
- beginning bates
- ending bates
- beg attach
- end attach
- page count
- MD5/SHA value

- All Custodians
- Filepath
- NativeFileLink,
- the custodian(s) from whom the ESI was obtained

The Parties will take reasonable steps to preserve, to the extent they have a value, all Metadata associated with ESI even if such Metadata is not specified above for production.

    C.    <u>Native Files</u>. Microsoft PowerPoint and Excel files shall be produced as Native Files. Tiff images should also be produced for all PowerPoint or presentation files. For Excel and other spreadsheet files, the Parties agree to produce a single slipsheet for each Excel file branded with the text "File Produced In Native Format" along with the corresponding Filename, Bates number, and confidentiality designation. A Party may request that another Party produce other ESI as Native Files for good cause.

    D.    <u>Production Format for Databases and Audio-Visual Files</u>. The Parties agree to meet and confer regarding the production format for Microsoft Access or other similar databases, as well as any audio visual or media files.

    E.    <u>Voice Mail</u>. The Parties agree that voice mail need not be produced unless it is maintained and stored in a digital, searchable format and is under the control of the Parties. If the parties are aware of responsive voice mail which is under the control of the Parties which is not stored in a digital, searchable format the parties shall meet and confer with respect to its production.

F.      <u>Color</u>.  A receiving Party may request that specific ESI be produced in color for good cause.

G.      <u>De-duplication</u>.  A party is only required to produce a single copy of a responsive document and shall deduplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians.  However, hard copy documents shall not be eliminated as duplicates of responsive ESI.  In addition, if deduplication is performed, the identity of the other custodians of deduplicated items must be listed in the "All Custodians" metadata field of the copy of the single record that is produced.

H.      <u>Attachments</u>.  If any original ESI has attachments, the Parties will produce copies of that ESI with the attachments unless privileged, not responsive to a discovery request, or exceptioned during processing.

I.      <u>Preservation of Native Files</u>.  When ESI is produced, the producing Party will maintain a separate file as a Native File and, in that separate file, it will not modify the Native File in a manner that materially changes the File and the Metadata.

J.      <u>Encryption</u>: The producing Party shall encrypt all Production Data.  Such encryption should only be implemented in a manner that would not preclude the reasonable use of ESI.  Encryption should be applied using True Crypt software or via hardware encryption using hardware encrypted drives.  The producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

K.      <u>Chain of Custody</u>: Producing Party shall ship encrypted media and/or data via FedEx or UPS and provide tracking number for all shipments to ensure proper chain of

custody.

L.    Archived Materials. Absent a showing by the requesting Party of circumstances whereby the need for such ESI substantially outweighs the burden associated with recovering it and that no other source for such ESI is otherwise available, the Parties shall not be required to search Back-Up Tapes and Data or other back-up, archived, or disaster recovery systems. For purposes of this Section, "Back-Up Tapes and Data" means data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

M.    Preservation Not Required for Not Reasonably Accessible ESI. The Parties agree that the Parties need not preserve, search for, or produce (a) deleted computer files, whether fragmented or whole, (b) temporary or cache files, including internet history, web browser cache and cookie files, and (c) server, system, or network logs.

N.    Sample. At least five business days before the first deadline for the production of ESI, the producing Party shall produce to the receiving Party a sample production of ESI to assist the receiving party's ESI vendor in resolving any formatting or load file issues before the full production is received.

**V.    BATES LABELING / CONFIDENTIALITY DESIGNATIONS**

A.    Labeling. Each page of all images produced (whether Documents or ESI)

10

must be clearly labeled with an indelible, legible, unique Bates number identifier electronically "burned" onto the image. Reasonable steps shall be taken to place the Bates number at a location that does not obscure any information from the source document. In addition, to the extent any image or file is to be marked confidential, each page of the image or file to be marked confidential shall include the appropriate confidentiality designation as determined in the Protective Order separately entered into by the Parties. There shall be no other legend or stamp placed on the document image, with the exception of redacted information due to claims of applicable privileges.

    B.    <u>Consecutive Numbering</u>. The Parties agree that a convention on Bates number ordering will help the Parties better organize production of Documents and ESI in this Action. Therefore, to the extent possible, Documents and ESI shall be Bates-numbered consecutively by custodian (source), maintaining all parent-child relationships. Document numbers for documents produced by the Parties shall identify the Party's name and shall be in the format "Party Name-00000001."

    C.    <u>File Names</u>. Image file names must be unique and must correspond with the Bates number imprinted on the image. For example, if the Bates number "B0000001" was imprinted, the image would bear the name "B0000001.tif."

    D.    <u>Authenticity</u>. No Party shall object that Documents or ESI produced pursuant to this Stipulation is not authentic based upon the file naming convention described in Section V(C), above. The Parties otherwise reserve all rights regarding their ability to object to the authenticity of Documents or ESI, including the inherent unreliability of metadata.

E.  <u>Native Files</u>.  If Native Files are produced, the Party producing such Native File shall include a single-image placeholder TIFF with a single Bates number on the image itself.  As stated above, the slipsheet for each native Excel file will include the text "File Produced In Native Format" along with the corresponding File name, Bates number, and confidentiality designation.  The Native File shall not be renamed, but rather will be linked to the placeholder TIFF and the Bates number assigned thereto.  There shall be no Bates numbering of Native Files at the page level.

## VI.   PRIVILEGE AND REDACTIONS

A.  <u>Privilege Log</u>.  The Parties agree that the following categories of documents and ESI need not be identified on a privilege log: (i) all communications between counsel (including in-house counsel and counsel of record in this Action) and their respective clients since December 18, 2013; and (ii) all communications between an in-house attorney or counsel of record and their respective clients concerning scheduling, logistical, and/or other non-substantive or ministerial matters.

Further, the Parties recognize that there may be a limited number of instances where there are categories or groups of Documents or ESI in which <u>all</u> items are privileged and that, because of the large number of individual items in such a category or group, it would be a great burden to separately identify on a privilege log each individual Document or item of ESI included in that group.  The Parties agree that in such instances, in accordance with THE SEDONA PRINCIPLES: BEST PRACTICES RECOMMENDATIONS & PRINCIPLES FOR ADDRESSING ELECTRONIC DOCUMENT PRODUCTION, comment 3(c) (2007 ed.) and as appropriate, instead of

separately identifying each Document or item of ESI on its privilege log, it may instead identify categories or groups of privileged Documents or privileged ESI. In so doing, the Party shall describe in its privilege log the category or group of privileged Documents or ESI (including, without limitation, the criteria and method of delimiting the category or group), the factual basis for a reasonable belief that all Documents or ESI in the category or group are privileged, and the legal basis for the assertion of a privilege as to all Documents or ESI in the category or group. Additionally, if a Party requests further information relating to a category or group identified on another Party's privilege log, such information shall be provided so that the requesting Party has sufficient information to determine whether or not to challenge the privilege claim. The ultimate adjudication of challenged privilege claims shall be made on the basis of a document-by-document review.

      B.    <u>Redactions</u>. If the producing Party is redacting information from a page, the producing Party shall electronically "burn" the word "Redacted" onto the page at or reasonably near to the location of the redaction(s). If the producing Party redacts a document, it may withhold from the document's Load File only the metadata directly associated with the redaction.

      C.    <u>Native Files</u>. Recognizing that Native Files cannot be redacted, producing Parties shall undertake reasonable efforts to produce documents in redacted form consistent with the principles contained in this Stipulation.

      D.    <u>Clawback</u>. The inadvertent disclosure to another Party of any document which is subject to a legitimate claim that the document should have been withheld from

disclosure as a privileged attorney/client communication or attorney work product shall not constitute a waiver of any privilege or otherwise affect the right to withhold it from production as privileged or work product. If a request is made in good faith to return any such allegedly privileged or work product document that was inadvertently disclosed, the Party that received the document shall delete it and return all hard copies of it within 10 days of the request. The privilege or work product status of such document or information, if any, shall be deemed to be restored upon the making of such request, provided, however: (1) nothing herein shall preclude the non-producing party from requesting the Court to determine whether the document or information is privileged or work product. In the event the non-producing party intends to challenge the claim of privilege or work product, the non-producing party may retain a copy of such document for such purposes; (2) if the producing party either (i) expresses the intent to use such document or information at a hearing, deposition, or trial, or (ii) uses such document or information at a hearing, deposition, or trial, the producing party's right to request a return of such document or information shall be foreclosed.

DATED this 16th day of June, 2014.

Respectfully submitted,

By: */s/ Edwin P. Aro*  
Edwin P. Aro  
ARNOLD & PORTER LLC  
370 Seventeenth Street, Suite 4400  
Denver, CO 80202  
Telephone: 303.863.1000  
ed.aro@aporter.com  

By: */s/ Joe R. Whatley, Jr.*  
Joe R. Whatley, Jr.  
Colorado State Bar No. 38820  
WHATLEY KALLAS, LLP  
720 East Durant Avenue, Suite E6  
Aspen, CO 81611  
Tel: (970) 300-4848  
Fax: (970) 427-5536

Joshua B. Simon
Warren Haskel
Ryan D. McEnroe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10016
Telephone:  212.446.4800
Facsimile:  212.446.4900

*Counsel for Defendants and Counterclaim Plaintiffs*

Email: jwhatley@whatleykallas.com

Edith M. Kallas
WHATLEY KALLAS, LLP
380 Madison Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 447-7060
Fax: (800) 922-4851
Email: ekallas@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA 30306
Tel.: (404) 607-8222
Fax: (404) 607-8451
Email: dwinegard@whatleykallas.com

W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place Tower, Suite 1000
Birmingham, AL 35203
Tel.: (205) 488-1200
Fax: (800) 922-4851
Email: tbrown@whatleykallas.com

Henry C. Quillen
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, NH 03801
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

*Counsel for Plaintiffs and Counterclaim Defendants*