**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-03422-WJM-CBS

ARAPAHOE SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
HAMPDEN SURGERY CENTER, LLC,
KISSING CAMELS SURGERY CENTER, LLC,
SURGCENTER OF BEL AIR, LLC, and
WESTMINSTER SURGERY CENTER, LLC,

      Plaintiffs,

v.

Cigna HEALTHCARE, INC.,
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
Cigna HEALTHCARE – MID-ATLANTIC, INC., and
Cigna HEALTHCARE OF COLORADO, INC.,

      Defendants.

---

**PLAINTIFFS' RESPONSE TO CIGNA'S MOTION TO DISMISS
COUNTS VI AND VII OF PLAINTIFFS' SECOND AMENDED COMPLAINT[1]**

---

Plaintiffs Arapahoe Surgery Center, LLC; Cherry Creek Surgery Center, LLC; Hampden Surgery Center, LLC; Kissing Camels Surgery Center, LLC; SurgCenter of Bel Air, LLC; and Westminster Surgery Center, LLC ("Plaintiffs"), through undersigned counsel, respectfully submit this response to the Motion to Dismiss Counts VI and VII of Plaintiffs' Second Amended

---

[1] Cigna's Motion to Dismiss Counts VI and VII of Plaintiffs' Second Amended Complaint (Doc. No. 61) is cited to herein as "Brief."

Complaint filed by Defendants Cigna Healthcare, Inc.; Cigna Healthcare of Colorado, Inc.; and Connecticut General Life Insurance Co. ("Cigna").

## INTRODUCTION

Cigna's motion to dismiss Counts VI and VII of Plaintiffs' Second Amended Complaint ("SAC") should be denied. Cigna's motion is little more than a regurgitation of Cigna's motion to dismiss Plaintiffs' First Amended Complaint which was meritless. Cigna ignores and misconstrues the numerous factual allegations that were added in Plaintiffs' Second Amended Complaint.[2]

Despite Cigna's suggestion to the contrary, Plaintiffs have pled much more than parallel conduct. Plaintiffs have pled specific facts which plausibly show that Cigna joined a conspiracy to unreasonably restrain trade in violation of Section 1 of the Sherman Act and in violation of the Colorado Antitrust Act. Despite its protests to the contrary, Cigna's reason for threatening and terminating medical providers was not to shield itself from Plaintiffs' supposedly illegal activities. Even a cursory review of the relevant statutes shows that Plaintiffs' billing practices do not violate Colorado law. Instead, as the facts set forth in the SAC demonstrate, Cigna and other insurers agreed to threaten and to terminate medical providers who refer patients to Plaintiffs in order to cripple Plaintiffs' business and to benefit Cigna's co-conspirators, who compete with Plaintiffs. This group boycott, which was designed to deprive Plaintiffs of the referrals and patients necessary to compete, is a *per se* violation of Section 1 of the Sherman Act. Plaintiffs' allegations also establish a violation of the antitrust laws under rule of reason analysis.

---

[2] Cigna also relies on purported facts that are not alleged in the Complaint. See Brief, pp. 4-5.

## MOTION TO DISMISS STANDARD

In considering a motion to dismiss, a judge "must assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). However, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the …claim is and the grounds upon which it rests.'"*Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)*quoting Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden."*Id.* (quoting *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009)).

"Even [though a plaintiff must plead a plausible claim], '[g]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'"*Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted)). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974))).

# ARGUMENT

## I. PLAINTIFFS HAVE PLAUSIBLY PLED A CONSPIRACY IN VIOLATION OF SECTION 1[3]

In seeking dismissal of Plaintiffs' antitrust claims, Cigna relies heavily on this Court's Order on Defendants' Motion to Dismiss ("Order") in *Kissing Camels Surgery Center et al v. HCA, Inc. et al*, Civil Action No. 1:12-cv-03012-WJM-BNB, where the Court found that the plaintiffs had sufficiently pled conspiracy claims with regard to Centura and HCA-HealthONE but had not sufficiently alleged facts demonstrating the insurers' acquiescence to the conspiracy. Cigna's reliance, however, is misplaced. Plaintiffs have plausibly alleged facts showing that Cigna agreed to join the conspiracy.

In *Kissing Camels*, the Court found that the plaintiffs had sufficiently alleged a conspiracy in restraint of trade between HCA and Centura because the Plaintiffs had "describe[d] an overt agreement between competing parties to put Plaintiffs out of business by influencing physicians and insurers not to do business with Plaintiffs, with the goal of reducing competition for their own respective hospitals and surgery centers" as well as the specific actions taken by Centura and HCA including "a specific CASCA meeting on August 30, 2012, at which the agreement was solidified and an overt attempt was made to persuade the Insurers to assist with Centura's and HCA's conspiratorial goals, after which a number of the insurers took the actions Centura and HCA discussed." Order at 10-12. By contrast, the Court found that with regard to

---

[3]Because Plaintiffs' Section 1 claims are sufficiently pled, Defendants' motion to dismiss Plaintiffs' Colorado Antitrust Act claims should likewise be denied. *See Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1220 (10th Cir. 2009) (holding that the Colorado antitrust statute is to be interpreted in the same manner as federal antitrust claims); *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F.Supp. 1503, 1516 (D. Colo. 1992) (same).

4

the Insurer Defendants, the plaintiffs had alleged only parallel conduct. Order at 18. In reviewing the complaint, the Court found that the plaintiffs never actually alleged that the insurer defendants agreed to the conspiracy but instead found that the plaintiffs alleged "only that Centura and HCA 'attempted…to convince' the insurers, 'asked the health insurance companies … to join them', 'requested health insurers not to do business with Plaintiffs' and 'attempted to use their market power to reach agreement with' the Insurers."Order at 18 n.4 (citations omitted). Plaintiffs, here, however, have alleged such agreements.

As Plaintiffs allege in the Second Amended Complaint, the conspiracy began in 2010 and Cigna joined the conspiracy by at least 2011. SAC ¶¶ 17, 170. The conspiracy arose because HelathONE and Centura, who view the Colorado Plaintiffs as a competitive threat, agreed to pressure the key insurers in Colorado to boycott the Colorado Plaintiffs' facilities in order to steer patients from Plaintiffs' facilities to HealthONE and Centura. SAC ¶¶ 19, 155, 195. Centura and HealthONE therefore used their market power with Cigna and other health insurers to discourage them from entering into contracts with Plaintiffs, to encourage them to pay lower rates to doctors who do business with Plaintiffs, and to persuade them to take steps to stop the referral of patients to the Plaintiff facilities, including threatening and terminating the contracts of physicians referring patients to the Colorado Plaintiffs. SAC ¶ 162.

Because Centura and HealthONE are dominant hospitals and are essential to Cigna's network in Colorado, Cigna agreed to join the conspiracy with the hospitals and other insurers and to undertake actions in furtherance of the conspiracy. SAC ¶¶ 19, 155, 163. HealthONE pressured insurers, including Cigna, to prevent physicians from referring patients to the Colorado Plaintiffs' facilities. SAC ¶ 172. In response to pressure from HealthONE, Cigna not only

5

agreed to take action against its contracted physicians who referred patients to the Colorado Plaintiffs facilities, but also agreed to keep HealthONE apprised of its efforts. SAC ¶ 172. Cigna took these actions in furtherance of the conspiracy, including threatening physicians who refer patients to the Colorado Plaintiffs' facilities with termination. SAC ¶¶ 166-169.

However, by mid-2012, HealthONE went back to its co-conspirators because their actions to-date had not been completely effective. SAC ¶ 174. HealthONE specifically noted that it had focused on Cigna and other key insurers. SAC ¶ 175. HealthONE also indicated that Cigna had responded by running reports and had agreed to pursue corrective action with the physicians directing patients to out of network ASC facilities. SAC ¶ 175. Cigna representatives also attended a meeting in August 2012 where those present, including Cigna, reaffirmed their agreement to destroying Plaintiffs' businesses and to implementing a strategy to "stop" the "flow of dollars" to these facilities. SAC ¶ 176. *See also* SAC ¶ 177. After this meeting where the agreement was reaffirmed, Cigna again took specific action directed at physicians who refer patients to Plaintiffs' facilities. SAC ¶¶ 180-193. Plaintiffs, in their Second Amended Complaint, have sufficiently alleged agreement. Plaintiffs have alleged more than parallel conduct and have alleged that Cigna's actions were the result of conspiratorial agreement rather than legitimate, independent reasons. As set forth in the complaint, Cigna's purported reasons for threatening and terminating physicians who refer patients to the Colorado Plaintiffs' facilities were simply pretextual. *See* SAC ¶¶ 169, 180-193, 195.

Plaintiffs have alleged detailed facts – not simply "buzz words" – establishing an agreement in violation of Section 1. *See* Brief, pp. 7-8. Plaintiffs are not required to identify the specific Cigna representatives who made the agreement or to identity the persons with whom the

6

Cigna representatives reached agreement as Cigna suggests. *See* Brief, p. 7. In support of such a requirement, Cigna cites only *Drake v. Cox Commc'ns, Inc.*, 10-cv-2672, 2011 U.S. Dist. LEXIS 73529 (D. Kan. July 8, 2011). The Court in *Drake* simply noted that in order "[t]o withstand a motion to dismiss, a plaintiff raising a claim under Section 1 must advance more than an inference as to an alleged illegal agreement, he must advance specific allegations as the particular anticompetitive agreement." *Id.* at * 9-10. Neither the Court's decision in *Drake* nor any other authority requires Plaintiffs to identify each individual actor.

Moreover, Plaintiffs' allegations are plausible. Cigna suggests that Plaintiffs' antitrust allegations are implausible because Plaintiffs allege "that Cigna agreed in July or August of 2012 to do what it had already been doing since at least December 2011, which is nonsensical." Brief, p. 9. Cigna's argument misconstrues Plaintiffs' allegations related to Cigna's agreement in 2012 and again ignores all other factual allegations. Clearly, Plaintiffs have alleged facts supporting Cigna's agreement beginning at least in 2011, including Cigna's acquiescence to HealthONE's demands and agreement to join the conspiracy, to take actions in furtherance of the conspiracy and to keep HealthONE updated with regard to Cigna's actions. *See* ¶¶ 166-169, 172. In July 2012, HealthONE, Cigna reaffirmed its commitment to the conspiracy, and, in accordance with its earlier agreement, reported to HealthONE regarding its efforts taken in furtherance of the conspiracy. *See* SAC ¶¶ 174-176, 180-193.

Even if Cigna joined the conspiracy as a result of coercion by HealthONE, Cigna remains liable for a violation of the antitrust laws. *See MCM Partners, Inc. v. Andrews Bartlett & Assocs., Inc.*, 62 F.3d 967, 975 (7th Cir. 1995). The court in *MCM Partners* noted that the acquiescence of the coerced defendants "was essential to the success of [the] scheme, as only

7

those companies had the ability to effectively exclude MCM from the McCormick Place market by refusing to rent its equipment." *Id.* Here, the acquiescence of the insurer co-conspirators was essential to the competing hospitals' scheme because only the insurer defendants had the ability to mandate that medical providers who refer patients to the Plaintiff facilities instead refer their patients to the their co-conspirators' facilities. The cases cited by Cigna suggesting that one company's response to another company's complaints is not enough to establish concerted action are inapposite. *See* Brief, p. 8, citing *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1263 (10th Cir. 2006). Plaintiffs do not allege that Cigna acted in response to complaints. Instead, Plaintiffs allege that Cigna acted in concert with HCA-HealthONE and Centura and other insurers to prevent physicians from referring patients to the Colorado Plaintiffs' facilities and to instead steer those patients to co-conspirators HealthONE and Centura. SAC ¶¶ 19, 155, 163, 172.

At this stage, Plaintiff need not disprove all possible independent motivations or show that a conspiracy is more probable than independent action, but they must show that the existence of a prior agreement is at least plausible, not merely possible. Order at 19. Plaintiffs have alleged facts plausibly showing that Cigna reached agreement with HCA-HealthONE and Centura as well as the Insurer Defendants. Cigna's proffered reasons related to its conduct in threatening and terminating medical providers are simply insufficient and implausible in light of Plaintiffs' allegations. Moreover, in contrast to *Kissing Camels* (Order at 19), Plaintiffs have alleged that Cigna excuses are simply pretextual. *See* SAC ¶¶ 169, 180-193, 195.

First, the agreements at issue, which Cigna claims that physicians violated by referring patients to Plaintiffs, contained no prohibition on such referrals. SAC ¶¶ 169, 180-193, 195.

8

Second, Cigna argues that it "had no duty to do business with the Colorado ASCs… and it was perfectly natural and economically rational for Cigna to steer plan participants away from more expensive, out-of-network facilities like the ASCs toward less expensive, network facilities to reduce costs." Brief, p. 12. Yet, the allegations here do not involve unilateral "steering" of plan participants to in-network facilities. Cigna agreed to threaten and to terminate medical care providers who refer patients to Plaintiffs' facilities despite the fact that the plans permit members and beneficiaries to obtain healthcare from out-of-network or non-participating providers, including care at Plaintiffs' facilities. SAC ¶ 47. In fact, Cigna's members have paid higher premiums for the right to obtain medical care from the provider of their choice. SAC ¶ 45. As Plaintiffs have alleged, patients greatly benefit from treatment in ambulatory surgical care facilities as opposed to in hospitals because the cost of care is much lower, the risk of infection is much less, and scheduling is more flexible and convenient. SAC ¶ 2. Requiring patients to utilize the co-conspirator hospitals rather than Plaintiffs' facilities deprives patients of the ability to use the out-of-network benefits for which they have paid additional premiums. SAC ¶¶ 45, 165.

Plaintiffs' allegations also make economic sense. Cigna argues that "helping Centura and HealthONE to eliminate competitors would allow those providers to charge supercompetitive rates to payers like Cigna and is directly contrary to Cigna's interests. Brief, p. 12-13.[4]

---

[4] Even if Plaintiffs had only alleged parallel conduct, Cigna's argument would provide a separate basis for finding Plaintiffs' conspiracy claims to be plausibly pled because allegations establishing that a defendant's conduct was against the defendant's economic self-interest constitutes a "plus factor" further supporting the existence of a conspiracy. *See Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th. Cir. 1999) (holding that parallel behavior may be sufficient when "augmented" by evidence such as "a showing that the parties 'are acting against

Plaintiffs, however, have alleged that Cigna had a rational motive for joining the conspiracy. As set forth in the Complaint, Cigna agreed to join the conspiracy and to undertake actions in furtherance of the conspiracy because Centura and HealthONE are essential to Cigna's network in Colorado. SAC ¶¶ 19, 155, 163.

Finally, Plaintiffs' billing practices do not violate Colorado law. Section 18-13-119 does not prohibit the practice of reducing a patient's copayment or deductible to in-network responsibility levels. Instead, by its express terms, Section 18-13-119 prohibits only "[b]usiness practices that have the effect of **eliminating the need for actual payment** by the recipient of health care of required copayments and deductibles." C.R.S. 18-13-119 (emphasis added). The legislature drafted Section 18-13-119 to apply only to providers who **eliminate** deductibles or copayments, not to those who modify or reduce patient responsibility. By contrast, Section 18-13-119.5, which prohibits abuse of property insurance, expressly applies to all "[b]usiness practices that have the effect of **reducing or eliminating** the need for actual payment of required copayments and deductibles." C.R.S. 18-13-119.5 (emphasis added). Clearly, the legislature chose not to include the phrase "reducing" in Section 18-13-119, and the phrase cannot be read into the statute by implication. Plaintiffs' billing practices do not violate Colorado law. In fact, as set forth in the Complaint, Audubon Ambulatory Surgical Center and other Centura ASC's used billing practices similar to the Plaintiffs' at their own ambulatory surgery centers. SAC ¶ 154.

Plaintiffs have also sufficiently alleged that they have been harmed and continue to be harmed as a result of Cigna's violation of Section 1, including being paid lower rates, having

---

their own individual business interests'). Plaintiffs, however, have alleged much more than parallel conduct.

fewer surgeries performed at the facilities, otherwise having business diverted to competitors who were part of the conspiracy, and having access to far fewer patients than they would have with fair competition.SAC ¶¶ 237, 242. Conspiring to force a competitor out of business necessarily lessens competition in the market and results in more limited consumer choices. Plaintiffs accordingly have pled a violation of Section 1. Cigna's motion to dismiss Plaintiffs' Section 1 claims should be denied.

## II.     PLAINTIFFS HAVE ALLEGED A *PER SE* VIOLATION OF SECTION 1.

Group boycotts by their nature negatively impact competition and, accordingly, are not excused by a defendant's pleas of reasonableness:

> Group boycotts, or concerted refusals by traders to deal with other traders, have long been held to be in the forbidden category. They have not been saved by allegations that they were reasonable in the specific circumstances, nor by a failure to show that they fixed or regulated prices, parcelled out or limited production, or brought about a deterioration in quality. Even when they operated to lower prices or temporarily to stimulate competition they were banned. For, as this Court said in *Kiefer-Stewart Co. v. Seagram & Sons*, 340 U.S. 211, 213, "such agreements, no less than those to fix minimum prices, cripple the freedom of traders and thereby restrain their ability to sell in accordance with their own judgment."

*Klor's v. Broadway-Half Stores*, 359 U.S. 207, 212 (1959) (footnote omitted) (citations omitted) (internal quotation marks omitted).

The facts set forth in the SAC demonstrate the type of group boycott which has traditionally merited *per se* treatment. As the Court noted in *Northwest Wholesale Stationers*, "Cases to which this Court has applied the *per se* approach have generally involved joint efforts by a firm or firms to disadvantage competitors by 'either directly denying or persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive struggle.'" *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 294

(1985) (quoting L. Sullivan, *Law of Antitrust* 261-262(1977)). Plaintiffs have alleged that Centura and HCA-HealthONE, Plaintiffs' competitors, conspired with the major competing health insurers in Colorado to cut off the relationship between Plaintiffs and the referring medical providers and patients that are necessary for Plaintiffs to compete. SAC ¶¶ 16, 17, 19, 155, 162-164. Moreover, Plaintiffs have alleged that Cigna conspired with its competitors – the other major health insurers in the state of Colorado. SAC ¶¶ 16, 18, 156. Cigna's suggestion that Plaintiffs have not alleged a conspiracy involving competitors disregards Plaintiffs' well-pled facts.

Cigna's purported justifications for its conduct do not counsel against *per se* treatment. First, given Plaintiffs' allegations, the defendants' boycotting practices cannot be "saved by allegations that they were reasonable in the specific circumstances." *Klor's*, 359 U.S. at 212. Second, as Plaintiffs' have alleged, Cigna's excuses are simply pretextual. SAC ¶¶ 169, 180-193, 195. Finally, Cigna's reasons for its conduct are not pro-competitive but are instead designed to eliminate consumer choices. *See e.g.*, SAC ¶¶ 155, 165, 196. Accordingly, Plaintiffs have pled a *per se* violation of Section 1.

### III. PLAINTIFFS HAVE ALSO ALLEGED A VIOLATION OF THE ANTITRUST LAWS UNDER THE RULE OF REASON

Cigna argues that Plaintiffs' antitrust claims are insufficient to withstand rule of reason scrutiny because Plaintiffs have not alleged an injury to competition. Brief, pp. 14-15. Cigna's argument again ignores Plaintiffs' well pled allegations. As alleged in the Complaint, Plaintiffs provide an important alternative for their patients, who are consumers of healthcare and the Plaintiffs increase consumer welfare. SAC ¶¶ 2, 155. Plaintiffs have also alleged that requiring referrals to in-network facilities deprives patients of their ability to use their out-of-network

benefits for which they paid additional premiums. SAC ¶ 165. Cigna responds that Plaintiffs do not allege that Cigna's plan members cannot seek service from the ASCs on their own accord without a referral. Brief, p. 15. Cigna's argument is simply ludicrous. Plaintiffs are ambulatory surgical care facilities. SAC ¶ 1. Physicians perform procedures at the Plaintiffs' ASCs. SAC ¶ 153. Obviously, these physicians' utilization of the facilities is necessary to the Plaintiff ASCs. For this reason, Cigna has threatened and, in fact, terminated physicians who perform procedures at the Plaintiffs' ASCs in furtherance of the alleged conspiracy. SAC ¶¶ 162, 164, 166-170, 180-193. By coercing its in-network physicians to refer their patients to certain in-network facilities, Cigna deprives patients of the ability to access Plaintiffs' facilities which provide numerous benefits and of the ability to use their out-of-network benefits for which they paid additional premiums. SAC ¶¶2, 45, 151-153, 155, 165. Accordingly, Plaintiffs have alleged that Cigna's conduct has had an adverse effect on competition.

## CONCLUSION

For the reasons set forth herein, Cigna's Motion to Dismiss Counts VI and VII of Plaintiffs' Second Amended Complaint should be denied.

Dated: August 13, 2014                    Respectfully submitted,

                                                                  */s/ Joe R. Whatley, Jr.*
                                                                  Joe R. Whatley, Jr.
                                                                  Colorado State Bar No. 38820
                                                                  WHATLEY KALLAS, LLP
                                                                  720 East Durant Street
                                                                  Suite E6
                                                                  Aspen, CO  81611
                                                                  Tel: 970-300-4848
                                                                  Fax: 970-429-8280
                                                                  Email: jwhatley@whatleykallas.com

                                                                  Edith M. Kallas
                                                                  WHATLEY KALLAS, LLP
                                                                  1180 Avenue of the Americas, 20th Floor
                                                                  New York, NY  10036
                                                                  Tel.: (212) 447-7060
                                                                  Fax: (800)922-4851
                                                                  Email: ekallas@whatleykallas.com

                                                                  Deborah J. Winegard
                                                                  WHATLEY KALLAS, LLP
                                                                  1068 Virginia Avenue, NE
                                                                  Atlanta, GA  30306
                                                                  Tel.: (404) 607-8222
                                                                  Fax: (404) 607-8451
                                                                  Email: dwinegard@whatleykallas.com

                                                                  W. Tucker Brown
                                                                  WHATLEY KALLAS, LLP
                                                                  2001 Park Place Tower, Suite 1000
                                                                  Birmingham, AL  35203
                                                                  Tel.: (205) 488-1200
                                                                  Fax: (800) 922-4851
                                                                  Email: tbrown@whatleykallas.com

Henry C. Quillen
WHATLEY KALLAS, LLP
1 New Hampshire Avenue
Suite 125
Portsmouth, NH 03801
Tel.: (603) 766-4902
Fax: (603) 766-1901
Email: hquillen@whatleykallas.com

*Attorneys for Plaintiffs and Counterclaim Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 13th day of August, 2014, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Joe R. Whatley, Jr.*
Joe R. Whatley, Jr.
