**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-3422-WJM-CBS

ARAPAHOE SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
HAMPDEN SURGERY CENTER, LLC,
KISSING CAMELS SURGERY CENTER,
SURGCENTER OF BEL AIR, LLC, and
WESTMINSTER SURGERY CENTER, LLC,

      Plaintiffs / Counterclaim Defendants,

v.

CIGNA HEALTHCARE, INC.,
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
CIGNA HEALTHCARE - MID-ATLANTIC, INC., and
CIGNA HEALTHCARE OF COLORADO, INC.,

      Defendants / Counterclaim Plaintiffs.

---

**ORDER GRANTING IN PART AND DENYING IN PART
COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**

---

      Plaintiffs Arapahoe Surgery Center, LLC, Cherry Creek Surgery Center, LLC,

Hampden Surgery Center, LLC, Kissing Camels Surgery Center, LLC, SurgCenter of

Bel Air, LLC ("SurgCenter"), and Westminster Surgery Center, LLC (collectively the

"ASCs") are ambulatory surgery centers bringing this antitrust action against

Defendants Cigna Healthcare, Inc., Connecticut General Life Insurance Co., Cigna

Healthcare–Mid-Atlantic, Inc., and Cigna Healthcare of Colorado, Inc. (collectively

"Cigna").[1]  (Second Am. Compl. ("SAC") (ECF No. 60) at 62-64.)  Cigna has asserted

---

      [1] The instant Motion seeks dismissal of the antitrust claims in the Second Amended
Complaint brought by only four of the six Plaintiffs (Arapahoe Surgery Center, Cherry Creek
Surgery Center, Hampden Surgery Center, and Kissing Camels Surgery Center) against only
three of the four Defendants (Cigna Healthcare, Connecticut General Life Insurance Co., and

Counterclaims under the Employee Retirement Income Security Act ("ERISA") § 502(a), 29 U.S.C. § 1132(a); the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. § 18-17-104; abuse of health insurance, Colo. Rev. Stat. § 18-13-119; civil theft, Colo. Rev. Stat. § 18-4-405; and state law claims[2] for fraud, aiding and abetting fraud, negligent misrepresentation, aiding and abetting negligent misrepresentation, unjust enrichment, and tortious interference with contract.  (ECF No. 17.)  Before the Court is the Counterclaim Defendants' Motion to Dismiss Counterclaims ("Motion").  (ECF No. 43.)  For the reasons set forth below, the Motion is granted in part and denied in part.

## I.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to

---

Cigna Healthcare of Colorado).  (SAC pp. 2, 62-63.)  However, the Motion is filed by all four Defendants, and all six Plaintiffs responded to it.  (*See* ECF Nos. 61 & 63.)  Therefore, for the purposes of this Order, the Court will use the terms "Plaintiffs" and "Defendants" when referring to the parties' positions on the Motion even where not all Plaintiffs or Defendants are implicated in the underlying claims.

[2] Cigna's state law claims against SurgCenter and Westminster Surgery Center are brought under Maryland law, as both are Maryland limited liability companies operating in Maryland, while its state law claims against the remaining ASCs are brought under Colorado law, as they are all Colorado entities.  (ECF No. 17 ¶¶ 16-21, 218, 225, 233, 240, 248, 254.)  Each of Cigna's state law claims asserts that the ASCs' conduct gives rise to a claim under both Maryland and Colorado law.  (*Id.* ¶¶ 218, 225, 233, 240, 248, 254.)

state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II.  BACKGROUND

The relevant allegations, as pled by Cigna, are as follows.

Cigna insures and administers employee health insurance benefit plans.  (ECF No. 17 ¶ 27.)  While Cigna offers some fully-insured plans which it funds itself, the majority of Cigna-administered plans are funded by the employers who sponsor them, while Cigna serves as claims administrator.  (*Id.* ¶¶ 28-29.)  The ASCs are ambulatory surgery centers providing medical services, and are all considered out-of-network facilities under Cigna's insurance plans.  (*See id.* ¶ 2.)

Under Cigna's plans, if a patient receives services from an in-network medical provider, the plan pays the provider the rate determined under the provider's contract with Cigna, while the patient pays any applicable co-payment, co-insurance, or deductible as specified in the plan.  (*Id.* ¶ 36.)  As part of the contract governing in-network providers, those providers agree not to bill patients for any difference between the charges they bill to the plan and the plan's reimbursement amounts.  (*Id.* ¶ 38.)  If a

3

patient receives services from an out-of-network provider, the provider may set its own rates for its services, which are generally higher than in-network contract rates, and the provider may bill the patient for any amount of those charges that the plan does not reimburse.  (*Id.* ¶ 39.)  Cigna limits its plans' reimbursement to out-of-network providers to a specified "Maximum Reimbursable Charge," and will not reimburse any charge that is greater than the provider's "normal charge" for that service.  (*Id.* ¶ 47.)  Patients using out-of-network providers are required to pay co-insurance, which is a percentage of the amount covered by the plan for that service, as a cost-sharing incentive for patients to use in-network providers.  (*Id.* ¶¶ 41-42.)  Cigna-administered plans do not cover charges from medical providers if the patient is not billed or required to pay their applicable cost-sharing responsibility.  (*Id.* ¶¶ 45-46.)

Cigna alleges that the ASCs operated a "fee-forgiving" or "dual-pricing" scheme in which the ASCs promised patients that they would receive medical services at in-network rates in order to induce them to use the ASCs' facilities.  (*Id.* ¶¶ 62-63, 68-71.) The ASCs estimated in-network rates based on Medicare rates, which were much lower than the "inflated" rates the ASCs later submitted to Cigna for reimbursement, and waived the patients' co-insurance payments, billing them small amounts or nothing at all.  (*Id.*)  Cigna asserts that the charges the ASCs submitted were "phantom charges," because the ASCs never intended to collect those amounts from the patients.  (*Id.* ¶ 71.)  While the ASCs disclosed to Cigna on their claim forms that "[t]he insured's portion of this bill has been reduced in amount so the patient's responsibility for the deductible and copay amount is billed at in network rates," they did not disclose how the

charges were computed or that the ASCs did not charge the patients the amounts later submitted to Cigna.  (*Id.* ¶ 77.)

Cigna alleges that, in reliance on the "phantom rates" in the ASCs claims, they misled and induced Cigna into overpaying reimbursements for medical services that should have been excluded from plan coverage because the "phantom rates" were not the ASCs' "normal charge" for that service.  (*Id.* ¶¶ 47, 73.)  Cigna also alleges that the ASCs' billing practices induced patients to breach the terms of their plans.  (*Id.* ¶ 261.)

On April 11, 2014, the ASCs filed the instant Motion.  (ECF No. 43.)  Cigna filed a Response (ECF No. 45), and the ASCs filed a Reply (ECF No. 47).

### III.  ANALYSIS

The ASCs' Motion seeks dismissal of all of Cigna's Counterclaims, arguing that Cigna lacks standing to assert its Counterclaims, and that Cigna has insufficiently pled each of its claims under Rule 12(b)(6).  (ECF No. 43.)  The Court will discuss each argument in turn.

### A.    Standing

The Motion first asserts that Cigna lacks standing to pursue any of its Counterclaims, because any injury suffered from the alleged overpayments was suffered by the entity funding the plan.  (ECF No. 43 at 1.)  Because Cigna admits that the majority of its plans are funded by the employers who sponsor them, not by Cigna, the ASCs argue that Cigna has suffered no "injury in fact" when Cigna serves only as the plans' administrator.  (*Id.*)

In response, Cigna notes that it fully funds some of its plans, and thus has

directly suffered an injury from overpayments as to those plans.  (ECF No. 45 at 4.)  As to the employer-funded plans, Cigna argues that it is explicitly authorized under the plans' terms to recover overpayments on the plans' behalf, and that as to its ERISA claim, ERISA explicitly authorizes a fiduciary to recover benefits paid by the plan.  (*Id.*)  In Reply, the ASCs concede Cigna's argument under ERISA, but argue that Cigna lacks standing to assert its RICO and state law claims because an injury or damages is an element of each of those claims.  (ECF No. 47 at 1.)

The ASCs' Reply essentially converts its standing argument to an argument aimed at the injury or damages element of each claim.  At least as to the minority of plans that Cigna funds itself, Cigna has asserted that it directly suffered an injury by overpaying reimbursements to the ASCs.  This satisfies the minimal requirement of a "concrete and particularized" injury sufficient to confer standing on Cigna to bring its claims.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Accordingly, the Court rejects the ASCs' argument that the Counterclaims should be dismissed based on lack of standing, and denies the Motion in that respect.

**B.    ERISA § 502(a)**

Cigna's ERISA claim asserts that the ASCs are liable to pay restitution to Cigna in the amount of the overpayments Cigna made, in contravention of the terms of its plans, based on the inflated charges in the ASCs' claims.  (ECF No. 17 at 40-41.)  Cigna also seeks declaratory relief and a permanent injunction requiring the ASCs to submit to Cigna only the amounts that the ASCs actually charge the patients and to exclude any additional amount from their future claims.  (*Id.* ¶ 199.)

6

ERISA § 502(a) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan."  29 U.S.C. § 1132(a)(3).  A plan administrator may maintain such an action for restitution if it "seek[s] to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the plan, and (3) that are within the possession and control of the defendant beneficiary".  *Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1122 (10th Cir. 2004) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-21 (2002); *Bombardier Aerospace Emp. Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 356 (5th Cir. 2003)).

Here, Cigna claims that the overpayments it seeks to recover are specifically identifiable, that those overpaid funds belong in good conscience to the plans, and that they are in the possession of the ASCs.  (ECF No. 45 at 9-10.)  In response, the ASCs argue that the funds are not specifically identifiable merely by being designated "overpayments".  (ECF No. 47 at 8.)  The Court agrees.

In the cases Cigna cites in support of its argument the "specifically identifiable" funds were either in separate accounts or were paid by specified third-party payors. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363-64 (2006) (separate fund, distinct from general assets, defined as "recoveries from a third party"); *Dillard's Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 894, 901 (8th Cir. 2006) (overpayments resulting from payments of benefits by Social Security Administration); *Admin. Comm.*

*of Wal-Mart Assocs.*, 393 F.3d at 1122 (funds in trust account, later deposited in court registry).  In contrast, Cigna has not alleged that the overpayments here are located in a separate fund, that they were paid by any third party, or that they are otherwise distinct from the ASCs' general assets.  Accordingly, the Court finds that the overpayments sought by Cigna are not in a specifically identifiable fund, and thus are not properly the subject of a § 502(a)(3) claim.  Therefore, the Motion is granted as to Cigna's ERISA § 502 claim seeking restitution.

However, Cigna's § 502 claim also seeks a declaratory judgment that Cigna may offset future reimbursements to the ASCs in the amount of the overpayments, and an injunction to prevent the ASCs from submitting claims in amounts greater than any amount the patient is not required to pay.  (ECF No. 17 ¶¶ 198-99.)  The ASCs' Motion generally asserts that Cigna is merely attempting to recast its legal claims as equitable, but makes no specific arguments that such claims are not cognizable under § 502(a). (ECF No. 43 at 10-11.)

As for Cigna's request for declaratory relief, the Court agrees with the ASCs that it merely couches the restitution claim in the form of a declaration that it may obtain said restitution through offsetting future claims reimbursements.  Such re-framing does not change the nature of the relief sought, which falls outside the scope of § 502(a) because the amounts requested are not specifically identifiable funds.  Thus, the Court agrees with the ASCs that Cigna's attempt to recast its request for monetary relief as declaratory relief is unavailing.  (*Id.* at 10-11 (citing persuasive authority from S.D.N.Y., D.N.J., and N.D. Tex.).)

As for Cigna's claim for injunctive relief, the Court finds that it is distinct from

8

Cigna's claims for monetary relief.  Rather than seeking an injunction to require repayment of the overpaid amounts, Cigna seeks an injunction to require the ASCs to limit their future reimbursement claims to the amounts charged to the patients, rather than including waived co-insurance amounts or other "phantom" charges.  (ECF No. 17 at 199.)  This is not merely monetary relief couched in the language of an injunction, and the ASCs have cited no other basis for dismissing this claim.  Accordingly, the Motion has failed to demonstrate that Cigna's ERISA § 502(a) claim must be dismissed insofar as it seeks injunctive relief.

## C.    RICO and COCCA

Cigna brings claims under both RICO and COCCA, the Colorado analogue to RICO, alleging that SurgCenter entered into separate enterprises with each of the ASCs and, through these enterprises' billing schemes, committed acts of mail and wire fraud constituting a pattern of racketeering activity.  (ECF No. 17 at 41-44, 57-60.)

COCCA was patterned after RICO, and while not identical, the two statutes "are similar and are generally construed according to similar principles."  *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1076 (D. Colo. 2012) (citing *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1125 (D. Colo. 2010); *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010)); *People v. Hoover*, 165 P.3d 784, 798 (Colo. App. 2006) ("Absent a prior interpretation by our state courts, federal case law construing [RICO] is instructive because COCCA was modeled after the federal act.").  "The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity.  'Racketeering

activity' is defined in 18 U.S.C. § 1961(1)(B) as any 'act which is indictable' under federal law and specifically includes mail fraud, wire fraud and racketeering.  These underlying acts are 'referred to as predicate acts, because they form the basis for liability under RICO.'"  *Tal v. Hogan*, 453 F.3d 1244, 1261-62 (10th Cir. 2006) (internal citations omitted).

The ASCs raise three arguments in their Motion that the RICO and COCCA claims should be dismissed: (1) Cigna has failed to plausibly plead the predicate acts of mail and wire fraud because no misrepresentation was made; (2) Cigna has failed to allege injury from the ASCs' conduct; and (3) Cigna has failed to sufficiently allege an enterprise.  (ECF No. 43 at 2-10.)  As the Court finds the first argument dispositive, it will begin with that analysis.

"The elements of federal mail fraud as defined in 18 U.S.C. § 1341 are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme."  *United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003).  "The particularity requirement of Rule 9(b), Federal Rules of Civil Procedure, applies to claims of mail and wire fraud."  *Tal*, 453 F.3d at 1263 (citing *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002)).  "Thus, a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Id.* (internal quotation marks and brackets omitted).

The ASCs argue in their Motion that Cigna has failed to plead any misrepresentation because Cigna admits that the material aspects of the challenged

10

billing practices were disclosed, specifically, the ASCs' reduction of a patient's bill and deductible or co-pay amount in order to approximate in-network rates, and the fact that the in-network rate the ASCs proposed was an estimate.  (ECF No. 43 at 2-6.)  Indeed, Cigna notes in its Counterclaims that "the ASCs noted in their claim forms that '[t]he insured's portion of this bill has been reduced in amount so the patient's responsibility for the deductible and copay amount is billed at in network rates' . . . ."  (ECF No. 17 ¶ 77.)  Cigna contends, however, that this disclosure did not reveal or explain "how their charges were computed or disclose[] that the ASCs had not charged their patients for the same amounts that [they] submitted to Cigna for reimbursement."  (*Id.*)  Cigna repeatedly refers to the amounts in the ASCs' claims as "phantom charges" because they are much greater than the amounts quoted to patients.  (*Id.* ¶¶ 46, 55, 71.)  While Cigna also alleges that the ASCs misrepresented to patients that they could use in-network benefits at the ASCs' facilities, Cigna does not allege that its RICO and COCCA claims are based on such misrepresentations.  Instead, it alleges that the ASCs used such tactics to conceal the nature of the inflated charges.  (*See id.* ¶¶ 208, 289.)

The Court has reviewed Cigna's allegations in its Counterclaims and finds that it has failed to plausibly plead that the ASCs misrepresented their billing practices.  In admitting that the ASCs disclosed that they reduced the patient's portion of the bill and made the patient responsible for only an in-network deductible and co-pay amount, Cigna concedes that it was provided information from which it should have known that the ASCs were reducing the amount billed to patients and that they were attempting to approximate in-network rates.  Given this disclosure, which appeared in the ASCs'

11

claim forms, the Court finds it implausible that Cigna was misled into believing that the patient was charged the same amount that the ASCs billed to Cigna, because Cigna was aware that the ASCs' claims were higher than in-network rates.  Cigna has not alleged any other theory under which the Court could find that the ASCs made misrepresentations constituting fraud.  Cigna also fails to explain how the ASCs' failure to disclose how the in-network estimate was computed was at all material in inducing Cigna to overpay the claims.

Because the Court finds that Cigna has not plausibly pled misrepresentations constituting predicate acts under RICO, the Court finds that Cigna's allegations fail to allege a pattern of racketeering activity, and therefore fail to state a RICO claim.  *See* 18 U.S.C. § 1961(5) (a "pattern of racketeering activity" is defined as "at least two acts of racketeering activity").  As COCCA also requires a showing of a pattern of racketeering activity, Cigna's COCCA claim also fails.  *See* Colo. Rev. Stat. § 18-17-103(3) ("'pattern of racketeering activity' means engaging in at least two acts of racketeering activity").  Accordingly, the Motion is granted as to the RICO and COCCA claims, and the Court need not consider the ASCs' other arguments that those claims should be dismissed.

Finally, because Cigna admits that the ASCs disclosed their practice of attempting to approximate in-network rates and decreasing patient responsibility, the Court finds that any attempt to amend this claim would be futile.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (district court "may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint").  Therefore, the Court declines to grant leave to amend the

12

RICO and COCCA claims.

**D.      State Law Claims**

Cigna brings state law claims for fraud, aiding and abetting fraud, negligent misrepresentation, aiding and abetting negligent misrepresentation, unjust enrichment, and tortious interference with contract.  (ECF No. 17 at 44-53.)  The ASCs' Motion raises the following arguments against these claims: (1) the state law tort claims are preempted by ERISA; (2) the fraud, negligent misrepresentation, and aiding and abetting claims fail because Cigna has failed to allege misrepresentation; (3) Cigna fails to allege any unjust enrichment; and (4) Cigna's tortious interference claim is barred by the economic loss rule and fails to state a claim for interference.  (ECF No. 43 at 11-14.)  The Court will discuss each argument in turn.

1.      Preemption

"ERISA includes expansive pre-emption provisions . . . to ensure that employee benefit plan regulation would be exclusively a federal concern."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1144) (internal quotation marks omitted).  There are two aspects of ERISA preemption: (1) 'conflict preemption' and (2) remedial or 'complete preemption.'  ERISA's express conflict preemption provision states, '[ERISA] shall supersede any and all State laws insofar as they may now or hereafter *relate to* any [ERISA] plan.'"  *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1135-36 (10th Cir. 2005) (quoting 29 U.S.C. § 1144(a) (emphasis added)).  "However, recognizing that 'relates to' cannot reasonably be applied to its logical conclusion, the [Tenth Circuit] has clarified that this language must be applied with the objectives of ERISA and the effect of the state law in mind."  *Id.* at 1136.

13

If a party could have brought his claim under ERISA § 502(a), "and where there is no other independent legal duty that is implicated by a defendant's actions, then the [party]'s cause of action is completely pre-empted by ERISA § 502(a)[]." *Aetna Health*, 542 U.S. at 210. The ASCs' Motion does not establish that Cigna could have brought any of its state law claims under ERISA § 502(a), or that those claims are based solely on duties created by ERISA or the plan rather than common-law duties not to commit fraud or other torts. Thus, the Court finds that these claims are not completely preempted, and must evaluate whether conflict preemption applies.

The Tenth Circuit "has identified four causes of action that 'relate to' a benefit plan for purposes of ERISA preemption." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 990 (10th Cir. 1999).

> They involve (1) laws regulating the type of benefits or terms of ERISA plans; (2) laws creating reporting, disclosure, funding or vesting requirements for such plans; (3) laws providing rules for calculating the amount of benefits to be paid under such plans; and (4) laws and common-law rules providing remedies for misconduct growing out of the administration of such plans.

*Id.* "Claims that solely impact a plan economically . . . [and c]laims that do not 'affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries' are not preempted.'" *David P. Coldesina*, 407 F.3d at 1136 (quoting *Woodworker's Supply*, 170 F.3d at 990). Notably, "the availability of a remedy under ERISA is not relevant to the preemption analysis." *Id.* at 1139.

The ASCs argue that all of Cigna's state law claims are dependent on interpretation of the plans at issue, and that therefore those claims are preempted by

14

ERISA.  (ECF No. 43 at 11-12.)  This argument attempts to place Cigna's state law claims under the fourth of the *Woodworker's Supply* categories: "common-law rules providing remedies for misconduct growing out of the administration of such plans." 170 F.3d at 990.  Cigna disputes whether its state law claims "grow[] out of" its plans. *See id.*; (ECF No. 45 at 12.)  Even assuming that the state law claims arise from Cigna's plans, however, the ASCs have not explained how those claims go beyond "solely impact[ing] a plan economically" and instead "affect the relations among the principal ERISA entities," as medical providers are not one of these principal entities. *See David P. Coldesina*, 407 F.3d at 1136.

The Court finds that Cigna's state law claims are not preempted by ERISA because the claims at issue are based on whether the ASCs made material misrepresentations, and whether those alleged misrepresentations caused the ASCs to be unjustly enriched or caused interference with the plans.  Because the ASCs are not "principal ERISA entities", no relations between such entities are affected by the claims. The mere fact that the plan is associated with the claims, or that the plan is factually tied to the alleged tortious conduct, does not make them "relate[d] to" ERISA so as to trigger conflict preemption under this circuit's precedent.  *Id.* at 1136 (finding claim of negligent supervision by insurance company over plan advisor not preempted because it related to agency relationship not covered by ERISA); *Woodworker's Supply*, 170 F.3d at 990-92 (finding claim of fraudulent inducement to join plan not preempted because relations among principal ERISA entities are not affected and claim is not within scope of ERISA, citing cases).

Accordingly, the Court rejects the ASCs' argument that the state law claims must

15

be dismissed as preempted by ERISA, and the Motion is denied as to that argument.

> 2.   Misrepresentation

The ASCs next argue that Cigna's claims for fraud, aiding and abetting fraud, negligent misrepresentation, and aiding and abetting negligent misrepresentation all fail because Cigna has failed to plead any misrepresentation. (*Id.* at 12-13.)  The ASCs argue that such misrepresentations are essential elements of each of these claims under both Colorado and Maryland law. (*Id.*)

The Court has discussed Cigna's allegations of misrepresentations in analyzing the RICO and COCCA claims, and found that Cigna failed to plausibly plead that the ASCs misrepresented their billing practices.  As such misrepresentations were the basis for these claims, the Court agrees with the ASCs and finds that Cigna has failed to state claims for fraud, aiding and abetting fraud, negligent misrepresentation, and aiding and abetting negligent misrepresentation.  Accordingly, the Court grants the Motion as to those claims, and they are dismissed.

> 3.   Unjust Enrichment

The ASCs argue that Cigna has failed to state a claim for unjust enrichment because it admits that the ASCs provided services to the patients for which they sought reimbursement, and thus were not unjustly enriched. (ECF No. 43 at 13.)  In response, Cigna contends that its claim does not allege that the ASCs were given a benefit without providing any service at all, but rather that the ASCs were overpaid because the reimbursement vastly exceeded the value of the service provided. (ECF No. 45 at 13.)

The Court finds that Cigna sufficiently alleges unjust enrichment, as such a claim need only allege that the defendant knowingly received a benefit at the plaintiff's

16

expense that it would be unjust for the defendant to retain. *See Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008); *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). Therefore, Cigna has stated a claim for unjust enrichment, and the Motion is denied as to that claim.

      4.   <u>Tortious Interference with Contract</u>

      Cigna's tortious interference claim alleges that the ASCs' billing practices interfered with the contracts between Cigna and the patients whom it insured through its plans. (ECF No. 17 at 51-53.) The ASCs argue that this claim is barred by the economic loss rule, and that in any event, Cigna has failed to allege that the ASCs' conduct caused any interference or breach of these contracts. (ECF No. 43 at 13-14.)

      The economic loss rule bars tort claims arising from express or implied contractual duties, where no independent legal duty is breached. *Town of Alma v. AZCO*, 10 P.3d 1256, 1264 (Colo. 2000); *U.S. Gypsum Co. v. Mayor & City Council of Baltimore*, 647 A.2d 405, 410 (Md. 1994). Here, the ASCs assert that "the plan is the only possible source of duty" that would require them to refrain from using their billing practices. (ECF No. 43 at 13.) This argument is easily rejected, as no party has alleged that the ASCs were party to any Cigna plan contract out of which a legal duty could have arisen. Instead, Cigna's claim for tortious interference with contract is based on the ASCs' alleged attempts to circumvent the plan's network system, which harmed Cigna's relationships with its plan members. This claim is not based on any breach of contractual duty. Therefore, the Court finds that the economic loss rule does not bar this claim.

      The ASCs next argue that Cigna has failed to allege all the elements of a claim

17

for tortious interference.  (*Id.* at 13-14.)  A tortious interference claim has five elements under both Colorado and Maryland law: "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff."  *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991); *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 170 (Colo. 1993) ("The tortious conduct occurs when the defendant, not a party to the contract, induces the third party to breach the contract, or interferes with the third party's performance of the contract.").

The ASCs argue that Cigna has failed to allege any breach of the plan or any damages from that breach.  (ECF No. 43 at 14.)  This argument ignores Cigna's explicit allegation that the ASCs misrepresented the terms of the plans to patients, and that "[b]y these actions, the ASCs, at the direction of and in coordination with SurgCenter, induced the members to breach the terms of their plans."  (ECF No. 17 ¶¶ 260-61.) Cigna also alleges that "SurgCenter and the ASCs' tortious interference has caused damages to Cigna by causing it to make overpayments to the ASCs and has caused harm to the relationship between Cigna and its members."  (*Id.* ¶ 263.)  Although the "harm to the relationship" is unspecified, Cigna's allegation that its overpayments resulted from the ASCs' alleged interference is sufficient to assert damages.

Therefore, the Court finds that Cigna has alleged that the ASCs' conduct caused both a breach of the plan and damages resulting from the breach.  As the ASCs have not identified any other basis on which to dismiss the tortious interference with contract claim, the Motion is denied as to that claim.

18

**E.      Abuse of Health Insurance: Colorado Criminal Code § 18-13-119**

Cigna seeks declaratory relief under Colorado Criminal Code § 18-13-119, which

states in relevant part as follows:

> Health care providers - abuse of health insurance
>
> (1)  The general assembly hereby finds, determines, and declares that:
> (a)  Business practices that have the effect of eliminating the need for actual payment by the recipient of health care of required copayments and deductibles in health benefit plans interfere with contractual obligations entered into between the insured and the insurer relating to such payments;
> . . . .
>
> (2)  Therefore, the general assembly declares that such business practices are illegal and that violation thereof or the advertising thereof shall be grounds for disciplinary actions. . . .
>
> (3)  Except as otherwise provided in subsections (5), (6), and (8) of this section, if the effect is to eliminate the need for payment by the patient of any required deductible or copayment applicable in the patient's health benefit plan, a person who provides health care commits abuse of health insurance if the person knowingly:
> (a)  Accepts from any third-party payor, as payment in full for services rendered, the amount the third-party payor covers; or
> (b)  Submits a fee to a third-party payor which is higher than the fee he has agreed to accept from the insured patient with the understanding of waiving the required deductible or copayment.
>
> (4)  Abuse of health insurance is a class 1 petty offense.

Cigna seeks a declaration that the ASCs' billing practices violated § 18-13-119, and that

therefore Cigna is entitled to recover any amounts illegally obtained through such

violation.  (ECF No. 17 ¶¶ 269-70.)

In the Motion, the ASCs argue that their billing practices as alleged by Cigna do

not violate § 18-13-119 because they reduce, but do not eliminate, a patient's need for

19

payment.  (ECF No. 43 at 14-15.)  However, the Counterclaims explicitly allege that the ASCs bill patients "little or nothing".  (ECF No. 17 ¶¶ 1, 62.)  This constitutes an allegation that, at least in some cases, the ASCs "eliminated the need for actual payment" by the patient, and then accepted Cigna's reimbursement as payment in full. *See* Colo. Rev. Stat. § 18-13-119(3).  The ASCs' Motion fails to cite any other basis for dismissal of this claim.

Accordingly, the Court finds that Cigna has stated a claim for declaratory relief as to Colorado Criminal Code § 18-13-119, and the Motion is denied as to that claim.

### F.     Civil Theft: Colorado Criminal Code § 18-4-405

Cigna's civil theft claim asserts that the ASCs' billing practices resulted in knowing misrepresentations in the claims submitted to Cigna, as a result of which Cigna paid more than $12.5 million to the ASCs that did not belong to them.  (ECF No. 17 at 55-56.)  As a result, Cigna brings a claim under Colorado Criminal Code § 18-4-405, "Rights in stolen property", which permits the owner of property obtained by theft to maintain a civil action against the taker of that property.  "Theft" is defined in the Colorado Criminal Code as "knowingly obtain[ing], retain[ing], or exercis[ing] control over anything of value of another without authorization or by threat or deception . . . ." Colo. Rev. Stat. § 18-4-401.

The ASCs argue that, although Cigna's civil theft claim is based on the allegation that the amounts of the claims the ASCs submitted to Cigna constituted deception, no deception can be shown because the material elements of those billing practices were disclosed.  (ECF No. 43 at 15.)  The Court has found that the ASCs had disclosed to Cigna their practice of billing patients in such a way as to approximate in-network rates,

20

and that Cigna has not pled any material misrepresentation.  Accordingly, the Court agrees that Cigna has not pled conduct constituting theft, and therefore its civil theft claim under Colorado Criminal Code § 18-4-405 is dismissed.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Counterclaim Defendants' Motion to Dismiss Counterclaims (ECF No. 43) is GRANTED IN PART and DENIED IN PART;

2.     The Motion is GRANTED as to Counterclaim Plaintiffs' claims under RICO, COCCA, Colorado Criminal Code § 18-4-405, and ERISA § 502(a) for restitution and declaratory relief, as well as state law claims for fraud, aiding and abetting fraud, negligent misrepresentation, and aiding and abetting misrepresentation, and those claims are DISMISSED;

3.     The Motion is DENIED as to Counterclaim Plaintiffs' claims for injunctive relief under ERISA § 502(a), declaratory relief under Colorado Criminal Code § 18-13-119, and state law claims for unjust enrichment and tortious interference with contract, and those claims remain pending.

Dated this 6th day of March, 2015.

BY THE COURT:

William J. Martinez
United States District Judge

21