**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

_____

Civil Action No. 13-cv-03422
_____

ARAPAHOE SURGERY CENTER, LLC, CHERRY CREEK SURGERY CENTER, LLC,
HAMPDEN SURGERY CENTER, LLC, KISSING CAMELS SURGERY CENTER, LLC,
SURGCENTER OF BEL AIR, LLC, and WESTMINSTER SURGERY CENTER, LLC,

     Plaintiffs,

v.

CIGNA HEALTHCARE, INC., CONNECTICUT GENERAL LIFE INSURANCE CO.,
CIGNA HEALTHCARE - MID-ATLANTIC, INC., and CIGNA HEALTHCARE OF
COLORADO, INC.,

     Defendants.
_____

**FINAL PRETRIAL ORDER**
_____

**1. DATE AND APPEARANCES**

A trial date has not yet been set for this matter.

A.    Counsel for Plaintiffs and Counterclaim Defendants Arapahoe Surgery

Center, LLC, Cherry Creek Surgery Center, LLC, Hampden Surgery

Center, LLC, Kissing Camels Surgery Center, LLC, SurgCenter Of Bel Air,

LLC, Westminster Surgery Center, LLC, (collectively, the "ASCs") and

Surgical Center Development, LLC d/b/a SurgCenter Development

("SurgCenter"):

        a.    Joe R. Whatley, Jr., WHATLEY KALLAS, LLP, 720 East
            Durant Street, Suite E6, Aspen, CO 81611, Tel: (970) 300-
            4848,      Fax:      (970)429-8280,      Email:
            jwhatley@whatleykallas.com

    b.    Edith M. Kallas, WHATLEY KALLAS, LLP, 1180 Avenue of the Americas, 20th Floor, New York, NY 10036, Tel.: (212) 447-7060, Fax: (800)922-4851, Email: ekallas@whatleykallas.com

    c.    W. Tucker Brown, WHATLEY KALLAS, LLP, 2001 Park Place Tower, Suite 1000, Birmingham, AL 35203, Tel.: (205) 488-1200, Fax: (800) 922-4851, Email: tbrown@whatleykallas.com

    d.    Deborah J. Winegard, WHATLEY KALLAS, LLP, 1068 Virginia Avenue, NE, Atlanta, GA 30306, Tel.: (404) 607-8222, Fax: (404) 607-8451, Email: dwinegard@whatleykallas.com

    e.    Henry C. Quillen, WHATLEY KALLAS, LLP, 159 Middle Street, Suite 2C, Portsmouth, NH 03801, Tel.: (603) 294-1591, Fax: (800) 922-4851, Email: hquillen@whatleykallas.com

B.    Counsel for Defendants and Counterclaim Plaintiffs Cigna Healthcare, Inc., Connecticut General Life Insurance Co., Cigna Healthcare - Mid-Atlantic, Inc., and Cigna Healthcare Of Colorado, Inc. (collectively, "Cigna"):

    a.    Edwin P. Aro, ARNOLD & PORTER LLC, 370 Seventeenth Street, Suite 4400, Denver, CO 80202, Telephone: 303.863.1000, ed.aro@aporter.com

    b.    Joshua B. Simon, KIRKLAND & ELLIS LLP, 601 Lexington Avenue, New York, NY 10016, Telephone: 212.446.4800, Facsimile: 212.446.4900, Email: joshua.simon@kirkland.com

    c.    Warren Haskel, KIRKLAND & ELLIS LLP, 601 Lexington Avenue, New York, NY 10016, Telephone: 212.446.4800, Facsimile: 212.446.4900, Email: warren.haskel@kirkland.com

## 2. JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that most of the claims asserted herein were brought under federal statutes and necessarily involve adjudication of one or more federal questions. For the parties' Employment Retirement Income Security Act ("ERISA") claims, jurisdiction additionally arises under § 502(e) of ERISA, 29 U.S.C. § 1132(e). For Plaintiffs' Sherman Act claims, jurisdiction additionally arises under 28 U.S.C. § 1337. This Court has supplemental jurisdiction over the parties' state-law claims under 28 U.S.C. § 1367. Venue is appropriate in this Court because all parties either conduct a substantial amount of business in this judicial district or consent to jurisdiction by this Court.

## 3. CLAIMS AND DEFENSES

A.      **Plaintiffs and Counterclaim Defendants**

CIGNA'S VIOLATIONS OF ERISA AND BREACH OF CONTRACT

Plaintiffs Arapahoe Surgery Center, LLC ("Arapahoe"), Cherry Creek Surgery Center, LLC ("Cherry Creek"), Hampden Surgery Center, LLC ("Hampden"), Kissing Camels Surgery Center, LLC ("Kissing Camels"), SurgCenter of Bel Air, LLC ("Bel Air"), and Westminster Surgery Center, LLC ("Westminster")(collectively, "the ASCs") are ambulatory surgery centers in which patients can choose to have surgical procedures not requiring overnight stays.  The ASCs allege that Cigna breached Section 502 of ERISA, 29 U.S.C. § 1132, and its insurance contracts with its subscribers by arbitrarily and capriciously denying or reducing payments due to the ASCs without justification and in derogation of the express terms of the ERISA plans and its insurance contracts,

in order to increase its profits, discourage its subscribers' use of Plaintiffs' facilities, and to pressure the ASCs to accept lower reimbursement rates under CIGNA's direct Provider Agreements. In so doing, the Cigna denied or underpaid claims for medically necessary services provided to its members totaling millions of dollars.

In support thereof, the ASCs allege that Cigna applied a contrived "fee forgiveness" policy to dramatically reduce or deny payment for Plaintiffs' claims for medically necessary services.   The ASCs are out-of-network with Cigna.   Cigna members pay additional premiums in order to have the option of treatment by out-of-network providers such as the ASCs. In order to keep the cost of medical care affordable for their patients, and consistent with common practice in the ASC industry, the ASCs discounted patient responsibility amounts to their in-network levels and disclosed that fact to Cigna on all claim forms.   Because the ASCs do not have contracts with Cigna, they are not privy to Cigna's contractual rates.   Therefore, they estimated in-network benefit levels based on 150% of Medicare rates.   The ASCs also have no way of knowing how much Cigna will reimburse for their services until after Cigna pays a claim and provides an explanation of payments.   Consistent with common practice in the health care industry, the ASCs maintain a schedule of billed charges which they submit to all payors.   Payors rarely, if ever, pay full billed charges.

The ASCs always obtain assignment of benefits forms from patients prior to surgery and require patients to sign forms acknowledging financial responsibility if their insurance benefits are not honored.   The ASCs also always verify patients' benefits and seek authorization from health insurers, including Cigna, prior to surgery.   Cigna's plan

4

documents require it to pay for medically necessary covered services.  Under its ASO agreements, Cigna is responsible for determining medical necessity.  Cigna did not deny or reduce benefits on the basis that the services provided by the ASCs were not medically necessary and Cigna is not claiming that the ASCs submitted claims to Cigna solely because its members had insurance.

Prior to implementation of the "fee forgiveness" policy for the ASCS, Cigna had adjudicated the ASCs' claims for reimbursement for medical care according to its members' benefit plans.  Pursuant to its "fee forgiveness" policy, however, Cigna denies or significantly reduces payments to medical providers who discount patient responsibility amounts by as little as $1.00.  Cigna purports to rely on language in its plan documents that excludes from coverage "charges for which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan."  The ASCs allege that, giving this language its ordinary and plain meaning, reasonable Cigna plan members could not have understood this provision to mean that if they accepted the discount offered by the ASCs, Cigna would not pay benefits under their plans.  Reasonable plan members would also not have understood that they would be required to make significantly higher payments to the ASCs before Cigna would honor their benefits, even though they had paid higher premiums for health benefits covering out-of-network services.

The ASCs further allege that this "fee forgiveness" policy was specifically designed to allow Cigna to avoid its obligation to pay benefits and to increase its profits. Thus, Cigna's "fee forgiveness" policy and its adjudication of medical claims thereunder

serve only to unnecessarily increase healthcare costs to their subscribers and breach their fiduciary duty to their subscribers to adjudicate medical claims solely in its subscribers' interest.

After implementation of the "fee forgiveness" policy, Cigna denied the ASCs' claims with standard language quoting the exclusion from its plan documents that "charges for which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan." Cigna also denied appeals from these denials with the same standard form language, not conducting the required full and fair review.  It would have been futile for the ASCs to appeal all of these claims.

As a result of Cigna's violations of ERISA and contract law, the ASCs seek the following:

- Compensatory damages, including amounts due for all services rendered to Cigna members

- An order directing Cigna to recalculate and issue unpaid benefits to the ACS that were denied payment or underpaid as a result of Cigna's unlawful activities.

- Restitution

- Interest on all amounts as they became due

- Liquidated damages provided for under any of the member plans

- A declaratory judgment stating that Cigna is obligated to properly pay the claims submitted by the ASCs.

- An order estopping Cigna from underpaying or refusing to pay valid claims for medically necessary covered services submitted by the ASCs

- An injunction to prevent continuation or recurrence of Cigna's unlawful conduct

- Attorneys' fees and costs incurred in conjunction with this lawsuit

COLORADO DEFENDANTS' VIOLATIONS OF
FEDERAL AND STATE ANTITRUST LAWS

Plaintiffs Arapahoe, Cherry Creek, Hampden, and Kissing Camels ("the Colorado ASCs") are located in Colorado.  The Colorado ASCs further allege that Defendants Cigna Healthcare, Inc., Connecticut General Life Insurance Company, Cigna Healthcare of Colorado, Inc. ("the Colorado Defendants"), and their co-conspirators, two major Colorado hospital systems (HCA-HealthONE and Centura) and other health insurers operating in Colorado (including Aetna, Anthem, United and Kaiser), and the Colorado Ambulatory Surgery Center Association ("CASCA") conspired and entered into agreements in restraint of trade to put the Colorado ASCs out of business in violation of § 1 of the Sherman Act and the Colorado Antitrust Act.

In support thereof, Plaintiffs allege that HCA-HealthONE and Centura are "must have" hospital systems in Cigna's Colorado network and, as such, have leverage in contract negotiations with insurers.  HCA-HealthONE has additional leverage over Cigna because, during the relevant timeframe, Cigna provided health benefits to HCA-HealthONE and wanted to retain that contract.  HCA-HealthONE and Centura have joint venture ambulatory surgery centers that compete with the Colorado ASCs and view the Colorado ASCs as a threat.   Cigna and the other insurers understood that HCA-

HealthONE and Centura viewed them as a competitive threat and wanted measures taken against the Colorado ASCs that would stop the flow of patients and dollars to the Plaintiffs.  The Colorado ASCs allege that the Colorado Defendants conspired with HCA-HealthONE and other co-conspirators to choke off business to the Colorado ASCs' facilities by terminating and/or threatening to terminate physicians' network participation contracts for referring patients to those facilities, and by pressuring the co-conspirator insurance companies to terminate and/or to threaten to terminate physicians' network participation contracts if they continued referring patients to those facilities.  Cigna did not terminate or threaten to terminate any physicians who referred to out-of-network ambulatory surgery centers in Colorado other than physicians who referred patients to the Colorado ASCs, proving that Cigna's argument that its contracts required physicians to refer patients to in-network facilities is pretext.  Moreover, terminating physicians on the basis that they referred patients to out-of-network facilities would render patients' out-of-network benefits, for which they paid additional premiums, illusory.

One meeting, among others in furtherance of the conspiracy, was convened by CASCA and the Colorado Association of Health Plans ("CAHP") on August 29, 2012. Three Cigna representatives attended the August 29, 2012 meeting. At this and other meetings, inaccurate and misleading information about the Colorado ASCs' billing practices was disseminated and the participants agreed to stop the flow of dollars to the Colorado ASCs by taking measures to dry up patients referrals to these facilities.  The Colorado.  The antitrust allegations against the Colorado Defendants in this case are also the subject of another lawsuit pending in this Court against the Colorado

Defendants' co-conspirators, *Kissing Camels, et al v. Centura Health Corporation., et al*, Civil Action no. 1:12-cv-03012-WJM-BNB (the "the Centura action").

As a result of Cigna's violations of federal and state antitrust laws, the Colorado ASCs seek the following:

- A declaratory judgment stating that the Colorado Defendants have violated Section 1 of the Sherman Act

- A declaratory judgment stating that the Colorado Defendants have violated Colo. Rev. Stat. § 6-4-104

- Treble damages

- Punitive damages

- Interest

- Attorneys' fees and costs incurred in conjunction with this lawsuit

COUNTERCLAIMS

Cigna's counterclaims are entirely without merit.  In addition to Counterclaim Defendants general defenses, Counterclaim Plaintiffs' claims are barred and/or limited by the doctrines of laches and estoppel.  In addition, Counterclaim Plaintiffs' claims are barred and/or limited because they have been waived, because Cigna has unclean hands, because Cigna would be unjustly enriched if allowed to recover the relief it claims is due, and because the counterclaims are pre-empted by ERISA.

Cigna brought counterclaims against the ASCs and against Counterclaim Defendant SurgCenter Development, Inc. ("SurgCenter").  Although SurgCenter was involved in developing the ASCs in conjunction with local physicians and provides

consulting services to them, SurgCenter does not manage the ASCs.  Rather, the ASCs are managed by a Board of Managers.  After the Court's ruling on the Counterclaim Defendants' motion to dismiss, the only counterclaim remaining against SurgCenter is the claim for tortious interference with contract.

### Cigna's counterclaim for an injunction under § 502 of ERISA

For the same reasons that Cigna's reliance on its "fee forgiveness" policy to adjudicate claims violated ERISA, as discussed in conjunction with the ASCs' ERISA and breach of contract claims hereinabove, Cigna is not entitled to injunctive relief under ERISA.  In addition, Cigna's ERISA counterclaim is barred to the extent that Cigna is neither a plan administrator nor a fiduciary under the plans at issue.  Its counterclaim is also barred because Cigna does not have standing to bring the ERISA claims, because the ASCs provided a benefit to Cigna's members, because the services the ASCs provided to Cigna plan members were covered services, because Cigna cannot recover for injuries it did not suffer or for damages it did not sustain, because Cigna's claims conflict with the provisions of the plans at issue, because Cigna's interpretation of the plans at issue is arbitrary, capricious, unreasonable, unjustified and/or not legally correct, and because Cigna's interpretation of the plans at issue resulted from a conflict of interest.

### Cigna's counterclaim for unjust enrichment

Cigna's counterclaim for unjust enrichment against all of the ASCs is premised on the same allegations of fraud and reliance that were dismissed by the Court in granting Plaintiffs and Counterclaim Defendants' motion to dismiss the RICO, fraud,

aiding and abetting fraud, negligent misrepresentation and aiding and abetting negligent misrepresentation claims.  Specifically, Cigna's unjust enrichment claim is premised on the allegation that the ASCs submitted benefit claims forms to Cigna that "falsely" stated higher charges than the amounts the ASCs required patients to pay and engaged in a "fraudulent dual pricing scheme."  However, as Cigna acknowledged in its counterclaim, the ASCs always disclosed on claims forms submitted to Cigna for reimbursement: "[t]the insured's portion of this bill has been reduced in an amount so that the patient's responsibility for the deductible and copay amount is billed at in-network rates."

In addition, Cigna's counterclaim for unjust enrichment is pre-empted by ERISA and, against Westminster, it is time-barred.  The statute of limitations is not barred by the discovery rule because Cigna knew or should have known of the ASCs' billing practices as a result of the disclosure on all claims forms.

<u>Cigna's counterclaim for tortious interference with contract</u>

Cigna's counterclaim for tortious interference with contract against all of the ASCs and SurgCenter is likewise based on the same allegations of fraud and reliance that were dismissed by the Court in granting Plaintiffs and Counterclaim Defendants motion to dismiss.  In addition, Cigna cannot establish the elements of tortious interference with contract under either Colorado or Maryland law.  The contracts with which Cigna claims interference are its benefit plans.  However, these contracts were not breached because the plans do not require members to pay their full out-of-network responsibility as a condition of coverage and because Cigna cannot show intent, inducement, or wrongful conduct.

In addition, Cigna's tortious interference claims against Kissing Camels and Westminster are time-barred and the statute of limitations is not barred by the discovery rule. Moreover, its claims for tortious interference with contract are pre-empted by ERISA.

Cigna's counterclaim for declaratory relief under § 18-13-119 of the Colorado Criminal Code

Cigna also seeks declaratory relief under § 18-13-119 of the Colorado Criminal Code against the Colorado ASCs. However, there is no private right of action under this provision and therefore Cigna is not entitled to the relief sought. Moreover, the Colorado ASCs did not violate this provision because they did not waive copays and deductibles, but rather discounted them to in-network levels to make healthcare services as affordable as possible for patients.

B.    **Defendants and Counterclaim Plaintiffs**

SurgCenter and the ASCs are engaged in illegal billing schemes that have caused Cigna millions of dollars in damages. SurgCenter is in the business of setting up physician-owned ambulatory surgical centers around the country, and helped set up each ASC involved in this litigation. In setting up the ASCs, SurgCenter and its principals contacted local physicians, including physicians contracted to participate in Cigna's provider network, and offered them shares in the ASCs' business. Each ASC is an out-of-network facility, meaning that they are not part of Cigna's provider network. With SurgCenter's and the ASCs' encouragement, these physicians-investors referred their patients to the ASCs for medical treatment. These referrals benefited the

physicians financially and helped them collect hundreds of thousands of dollars from the ASCs, but they also violated the physicians' contracts with Cigna—which obligate them to refer patients to Cigna's in-network providers, except in very limited circumstances not applicable here.

The ASCs all also followed the same "fee forgiving" and "dual pricing" schemes, which were created by SurgCenter and adopted by each ASC at SurgCenter's direction. These schemes worked as follows. Because the ASCs are out-of-network facilities, Cigna plan members who go to them would normally have higher cost-sharing responsibilities (co-insurance, co-payments, and deductibles) than if they had gone to an in-network provider.  This different tiering of members' in-network versus out-of-network cost-sharing is a fundamental part of modern managed care networks. Channeling plan members to in-network providers, which helps keep down health care costs and also helps reduce the price of health care plans and plan premiums.  But the ASCs circumvented these mechanisms by promising to bill patients only their "in-network" cost-sharing responsibility—eliminating patients' incentive to seek treatment from in-network providers, and disrupting Cigna's provider network.

To make good on their promise of billing patients at "in-network" rates, the ASCs started with a baseline charge based on 150 percent of the Medicare fee schedule. The ASCs then applied the members' in-network cost-sharing levels to that baseline, and waived the out-of-network cost-sharing responsibilities that members must pay under their health care plans.

When the ASCs submit charges to Cigna, however, they do not submit the charges they used to calculate their patients' cost-sharing responsibility (*i.e.*, the amounts that the ASCs had actually charged patients).   Instead, the ASCs submit exorbitant charges that equaled as much as 800 percent of the Medicare schedule (that is, over five times as much as the 150 percent charge the ASCs used to calculate the amounts they collected from patients). As a result, the "charges" the ASCs submit to Cigna bear no relation to what the ASCs actually charge patients.   The ASCs never disclosed that they charged Cigna based on a 800% Medicare rate for the same services for which they had charged patients based on a 150% Medicare rate.   Cigna did not learn the details of the ASCs' billing schemes until after Cigna conducted its own investigation and analysis of the ASCs' claims.

These schemes have caused Cigna to overpay for the ASCs' claims, causing Cigna millions of dollars in damages.   The ASCs' practices also remove incentives for Cigna members to receive services from in-network providers, which ultimately results in increased costs for members and plan sponsors.   Cigna-administered plans contain various provisions to guard against these improper billing practices, and Cigna has had a longstanding, nationwide business practice of investigating and denying claims from healthcare providers who engage in such practices.   Courts have consistently found these types of billing practices improper, and have affirmed the right of healthcare plans not to cover these kinds of inflated charges. Indeed, the Colorado General Assembly has declared these types of schemes illegal and has enacted laws to stop them. *See* Colo. Rev. Stat. Ann. § 18-13-119 (West 2011).

Cigna initially paid the ASCs involved in this litigation based on the grossly inflated charges they submitted, for a total of approximately $18.5 million. Each of the ASCs funneled a portion of this fraudulently-obtained money back to SurgCenter, which retains a 35% interest in each ASC through an affiliated company.   Once Cigna's special investigation unit suspected that the ASCs were engaging in these schemes, it opened an investigation and asked the ASCs to confirm their billing practices.   At SurgCenter's direction, however, the ASCs refused to provide information that would allow Cigna to pay their claims in accordance with the terms of its administered plans. Cigna accordingly began reducing and/or denying payment on the ASCs' claims.   Cigna ultimately adopted a policy of reimbursing the ASCs' claims based on the rate that the ASCs actually used to calculate their patients' cost-share—which was 150 percent of Medicare.

Around the same time, Cigna's provider contracting team in Colorado discovered that several in-network physicians were referring Cigna members to these out-of-network ASCs.   As noted above, Cigna's agreements with providers obligate them to refer patients to other in-network providers, except in very limited circumstances not applicable here.   These out-of-network referrals to the ASCs were a breach of the physicians' agreements with Cigna, undercut Cigna's mechanisms for steering patients to in-network providers, and increased health care costs for Cigna (along with plan sponsors and plan members).   Consistent with its nationwide practice, Cigna sent warning letters to a number of its in-network physicians who persisted in sending patients to these ASCs, and in some cases ultimately terminated network agreements

with those providers.  Cigna took these actions for independent business reasons to protect its provider network and protect its plans and itself from the ASCs' illegal billing schemes, and did not—as Plaintiffs claim—take these actions in furtherance of any alleged conspiracy.

Through this action, Cigna seeks to stop the ASCs and SurgCenter from continuing to engage in these harmful billing practices, and to recover Cigna's losses caused by Counterclaim Defendants' unlawful conduct.

        1.    Cigna's Claims

SurgCenter and the ASCs' illegal schemes gave rise to the following claims under federal and state law:

Injunction under ERISA § 502(a).  Cigna seeks a permanent injunction directing the ASCs to submit to Cigna only charges that the ASCs actually use to determine plan members' cost-sharing responsibility, and not to submit charges for amounts that the ASCs do not actually require the member to pay (including, without limitation, the waiver of any portion of the members' required OON co-insurance, co-payment, and deductible amounts).

Declaratory Relief under Colorado Criminal Code § 18-13-119.  Cigna seeks a declaration that the Colorado ASCs violated Colorado Criminal Code § 18-13-119, which states that "[b]usiness practices that have the effect of eliminating the need for actual payment by the recipient of health care of required copayments and deductibles . . . interfere with contractual obligations entered into between the insured and the insurer"; such practices are illegal under Colorado law, and "violation thereof or

the advertising thereof shall be grounds for disciplinary actions." Colo. Rev. Stat. Ann. §§ 18-13-119(1)(a), (2).  Section 18-13-119 also states that "if the effect is to eliminate the need for payment by the patient of any required deductible or co-payment applicable in the patient's health benefit plan, a person who provides health care commits abuse of health insurance if the person knowingly (a) [a]ccepts from any third-party payor, as payment in full for services rendered, the amount the third-party payor covers; or (b) [s]ubmits a fee to a third-party payor which is higher than the fee he has arranged to accept from the insured patient with the understanding of waiving the required deductible or co-payment." *Id.* §§ (3)(a)-(b).  Cigna also seeks a declaration that it is entitled to recover from the Colorado ASCs all amounts paid as a result of the Colorado ASCs' illegal conduct, as well as reasonable and necessary attorneys' fees and costs.

Unjust Enrichment.  Cigna alleges that the ASCs were unjustly enriched when Cigna paid claims based on the ASCs' stated "charges" submitted to Cigna that were significantly higher than the actual amounts the ASCs required Cigna plan members to pay.

Tortious Interference with Contract.  SurgCenter and the ASCs knew that Cigna's plans required members to pay their cost-sharing responsibility for the plan to cover a portion of the ASCs' charges, but the ASCs, at the direction of and in coordination with SurgCenter, knowingly misrepresented to patients that they could use their "in-network" benefits at the ASCs.  The ASCs and SurgCenter also intentionally and maliciously misrepresented to Cigna plan members the terms of the members' plans and the nature of the dispute between Cigna and the ASCs to damage Cigna's relationship with its

members.  These tortious actions caused damages in the form of Cigna's excessive payments to the ASCs, and also caused harm to Cigna's relationships with its customers and members.

Declaratory Relief (General).  Cigna seeks a declaration that "the claims for reimbursement submitted by the ASCs are not for covered services and are not payable under employee health and welfare benefit plans that are insured or administered by Cigna."

### 2.   Cigna's Defenses to Plaintiffs' Claims

In addition to Cigna's general defenses that Plaintiffs' claims are barred and/or limited by the doctrines of unclean hands, equitable estoppel, illegality, recoupment, and setoff; their own misconduct; and their failure to mitigate damages, Cigna's defenses to Plaintiffs' claims include the following:

ERISA Claims.  Cigna's defenses to Plaintiffs' ERISA claims include:

- The plans at issue do not cover charges that the member is not billed for or required to pay, and here, the ASCs never billed or required their patients to pay the amounts that the ASCs charged Cigna (800 percent of Medicare). Instead, the ASCs billed patients no more than their in-network cost-sharing responsibility based on 150 percent of Medicare.  Cigna therefore acted reasonably in limiting the ASCs' reimbursement to what the members' plans allowed based on the ASCs' charge of 150 percent of Medicare;

- Cigna did not abuse its discretion in denying or reducing payments to the ASCs;

- The ASCs lack standing because they did not receive assignment of benefits for all of the benefit claims;

- The ASCs failed to exhaust administrative remedies as required by ERISA;

- Cigna is not a "plan administrator" as defined by ERISA and applicable law;

- The ASCs' fiduciary duties claim seeks only monetary restitution, which is not available relief under § 502(a)(3); and

- Cigna fully reviewed every appeal submitted by the ASCs once the fee-forgiving protocol was implemented, and in fact, the ASCs failed to comply with plan appeals procedures by refusing to provide Cigna with certain requested information.

Contractual Claims.  Cigna's defenses to Plaintiffs' contractual claims include:

- Cigna's plans expressly limited coverage to what the ASCs billed members for their services, not what the ASCs billed Cigna;

- The ASCs are not the intended beneficiaries of the relevant contracts;

- The ASCs have suffered no cognizable damages as a result of any alleged "breach":  because they assert this claim as patients' assignees, the ASCs may only recover damages suffered by their patients, from whom the ASCs collected no more than a fraction of the amounts that the patients were required to pay;

- The implied covenant claim is duplicative of the breach of contract claim; and

- An implied covenant may not be used to contradict the express terms of a contract.

<u>Antitrust Claims.</u>  Cigna's defenses to Plaintiffs' antitrust claims include:

- The ASCs have no evidence that Cigna conspired with any of the alleged co-conspirators;

- Cigna had independent, legitimate, and pro-competitive reasons for its actions, including protecting its provider network, managing costs for plans and their sponsors (which the ASCs sought to circumvent through improper referrals and fee-forgiving), enforcing the terms of its plans by deterring the ASCs' practices, and deterring violations of the Colorado fee-forgiving statute;

- The ASCs lack proof of antitrust injury by reason of Cigna's conduct; and

- Cigna's alleged conduct is protected under the *Noerr-Pennington* doctrine and the First Amendment to the Constitution of the United States.

## 4. STIPULATIONS

A.    Stipulated Facts.

1. Arapahoe, Cherry Creek, Hampden, Kissing Camels, Bel Air, and Westminster have not entered into provider agreements with Cigna and are therefore considered out-of-network with Cigna.

2. At all relevant times, the ASCs submitted claims to Cigna for payment for medical services provided to Cigna's members.

3. Cigna's plan documents describe the benefits available to members under the plan, including a description of out-of-network benefits for plans with such benefits.

4.  Cigna's plan documents contain a clause excluding from coverage "charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan."

5.  Cigna interprets this clause the same way across all plans.

6.  Cigna offers both fully insured and self-funded plans in Colorado and Maryland.

7.  Many of Cigna's plans are Administrative Services Only ("ASO") plans, in which Cigna serves as the Administrator and the funds paid to medical providers come from the bank accounts of the employers sponsoring the plans.

8.  Cigna uses a template for its ASO agreements.

9.  Some of the plans offered in Colorado and Maryland are not governed by ERISA.

10. Three Cigna representatives attended the August 29, 2012 joint Colorado Association of Health Plans and Colorado Ambulatory Surgery Center Association meeting.

11. Cigna is a managed care company that acts as either the claims administrator of employer-sponsored healthcare benefits plans or as an insurer of various healthcare insurance policies.

12. The vast majority of Cigna's plans are self-funded by employers, who offer plan coverage to employees as a benefit of employment and for which Cigna provides only administrative services.

13. Cigna also offers fully insured plans, for which groups or individuals pay premiums and Cigna underwrites, meaning that Cigna funds pay the claims for medical services.

14. The plans at issue in this case (the "Plans") cover only a portion of any "Covered Expenses."

15. Most of the Plans at issue offer members the choice of receiving services either from health care providers that contract with Cigna to participate in Cigna's provider network or from providers outside that network.

16. The Plans generally require members to pay a higher percentage of the covered amount of the service for out-of-network services.

17. The Plans generally limit reimbursement for out-of-network services to the "Maximum Reimbursable Charge" (or an equivalent term) for "covered services."

18. The Plans generally exclude from coverage providers' charges "to the extent that they are more than Maximum Reimbursable Charges."

19. Each of the ASCs was formed as an LLC.

20. Once each ASC was operational, physician-investors began performing services at the ASCs, including for patients covered by plans administered by Cigna.

21. Each ASC began operations without a contract with Cigna and continues to be out of network with Cigna.

22. The physicians that invest in the ASCs are generally in-network providers with Cigna and other commercial payors.

23. Each ASC initially implemented a policy pursuant to which the ASCs charged patients no more than their in-network responsibility.

24. Most insurance plans—including plans administered by Cigna—include higher cost-sharing responsibilities for out-of-network services than in-network services.

25. To estimate patient responsibility, the ASCs verified each Cigna member's in-network and out-of-network benefits before treatment.

26. The ASCs always verify patients' insurance benefits before surgery.

27. Cigna's investigation of Kissing Camels was opened on June 30, 2011.

28. After Cigna determined that the ASCs had engaged in "fee forgiving," Cigna began denying the ASCs' claims, citing the language in its plans excluding from coverage "charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan."

29. Three groups of Cigna providers challenged their terminations in three separate arbitrations.

30. Each arbitration has since ended, and the terminations remain in effect.

31. Under the network savings program, Cigna would send out-of-network claims to vendors that had negotiated rates with the provider.

32. In the event that the vendor repriced the claim, the provider agreed not to balance bill the member and, if the claim was priced under an ASO plan, Cigna would receive a percentage of the amount saved from the provider's billed charges.

33. Cigna informed each ASC that it had determined the ASC was fee forgiving.

34. Each of the providers who received warnings and termination notices from Cigna referred patients to the Colorado ASCs' out-of-network facilities.

35. The patients that were referred to these Colorado ASCs had the option of having their surgeries performed at facilities in Cigna's network.

36. Cigna processed the ASCs' claims under Cigna's members' applicable out-of-network benefits prior to Cigna's implementation of the "fee forgiveness" protocol for each ASC.

37. Each Colorado ASC is still operating and continues to see patients.

38. The Colorado ASCs have sources for patients other than Cigna members, including Medicare and Medicaid workers' compensation programs, self-pay patients, and other insurers.

B.   Stipulations Concerning Evidence.

1. The Parties stipulate and agree that, consistent with the Agreement Regarding the Production of Materials from Related Action dated June 16, 2014, (D.E. 54), the Parties may offer documents or deposition testimony produced in *Kissing Camels Surgery Center v. Centura Health Corporation*, et al., 12-cv-3012 (D. Colo.) (the "Centura Action") at trial.  The parties further stipulate and agree that, to the extent documents or testimony are produced in the Centura Action after this Pre-trial Order is filed (the "Supplemental Centura Discovery"), the Parties may supplement their exhibit or witness lists with Supplemental Centura Discovery the Parties intend to be offered at trial, provided that any such supplement must be exchanged no later than 30 days before trial.  The Parties further stipulate and agree that any objections to such exhibits or witnesses shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after such supplements are exchanged.

2. The Parties stipulate and agree that all documents produced in discovery and bearing a production number by any Party to this action are accurate and authentic

versions of such documents and qualify as business records within the meaning of Federal Rules of Evidence 901 and 803(6).  The Parties further stipulate and agree that they will not object to the admissibility of any of the documents produced by any Party during the course of this litigation (the "Production Documents") on the grounds that any such document is not an accurate or authentic version of the document or is not a business record under Federal Rules of Evidence 901 and 803(6).   The Parties reserve the right to make any other objections to the admissibility or relevance of the Production Documents, or any other documents the Parties offer at trial.

3. The Parties stipulate and agree that they will exchange the following no later than 30 days before trial:  (i) any summaries prepared pursuant to Federal Rule of Evidence 1006, (ii) any documents underlying such summaries (which need not be included on the exhibit lists appended to this Joint Pre-trial Order), and (iii) any documents the Parties intend to be offered at trial that are not Supplemental Centura Discovery and are not included on the exhibit lists appended to this Joint Pre-trial Order (the "Supplemental Documents"), provided that the Parties may exchange no more than 100 Supplemental Documents each.  The Parties further stipulate and agree that any objections to Supplemental Documents shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after the Supplemental Documents are exchanged.

4. The Parties stipulate and agree that documents produced by the Parties or the parties to the Centura Action in the same "family group" as any document on the

Parties' exhibit list may be offered at trial, even if such documents were not included on the Parties' respective exhibit lists.

    C.      Other Stipulations.

1.    Counterclaim Defendant SurgCenter stipulates and agrees that it will not argue at trial that non-party Surgical Center Development #3, LLC is legally responsible for any of the conduct alleged in Cigna's counterclaims.  In agreeing to this stipulation, in no way does Counterclaim Defendant SurgCenter waive its right to argue at trial that it cannot be held responsible for tortious interference and that it took no action resulting in tortious interference with contract.

## 5. PENDING MOTIONS

    A.    Defendants' and Counterclaim Plaintiffs' Motion for Summary Judgment

        1.    Opening Brief Filing Date: April 23, 2015

        2.    Plaintiffs and Counterclaim Defendants' Opposition Brief Filing Date: May 28, 2015

        3.    Defendants and Counterclaim Plaintiffs' Reply Brief Filing Date: June 23, 2015

    B.    Plaintiffs' and Counterclaim Defendants' Motion for Summary Judgment

        1.    Opening Brief Filing Date: April 23, 2015

        2.    Plaintiffs and Counterclaim Defendants' Opposition Brief Filing Date: May 28, 2015

        3.    Plaintiffs and Counterclaim Defendants' Reply Brief Filing Date: June 23, 2015

# 6.  WITNESSES

I.  **PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' WITNESSES**

A.  Nonexpert witnesses to be called by Plaintiffs and Counterclaim

Defendants.

1.  Witnesses who will be present at trial:

a.  Cynthia Aikin – 8505 East Orchard Road, Greenwood Village, CO 80111; (303) 566-2337. Ms. Aikin is expected to testify about Cigna's contracting with providers in Colorado and the August 29, 2012 CAHP/CASCA meeting.

b.  Brent Ashby – 3030 N Circle Dr # 101, Colorado Springs, CO 80909; (719) 867-7500. Mr. Ashby is expected to testify about CASCA, CASCA activities regarding out-of-network ASCs in Colorado, CASCA meetings, including CASCA's meeting with payors and CAHP, competition for ASCs in Colorado, and Audubon Surgery Center's operations and policies.

c.  Lisa Austin – 1658 Cole Boulevard, Suite 100, Lakewood, CO 80401; (877) 710-3047. Ms. Austin is expected to testify about CASCA, CASCA activities regarding out-of-network ASCs in Colorado, CASCA meetings, including CASCA's meetings with payors and CAHP, competition for ASCs in Colorado and Pinnacle III's management of Centura joint venture ASCs.

d.  Michael Battistoni – 900 Cottage Grove Road, Hartford, CT 06152; (860) 226-6000. Mr. Battistoni is expected to testify about Cigna's out-of-network payments and summary plan documents and ASO agreement provisions regarding payments to out-of-network providers.

e.  Tracy Ciprik – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Ms. Ciprik is expected to testify about Cherry Creek's business operations and policies, its collection of patient responsibility amounts, its recruitment of staff, Cigna's payments and denials of its claims for reimbursement submitted to Cigna, its appeals of Cigna's claims adjudications, and its communications with Cigna.

f.  Mary Ellen Cisar – 900 Cottage Grove Road, Hartford, CT 06152; (860) 226-8367. Ms. Cisar is expected to testify about the development and implementation of Cigna's "fee forgiveness" policy, the operations of the SIU, Cigna's investigations of the Plaintiff ASCs, Cigna's adjudications claims.

g.  Lisa Cox – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Ms. Cox is expected to testify about Arapahoe and the other Colorado ASCs' business operations and policies,  collection of patient responsibility amounts, recruitment of staff, Cigna's payments and denials of claims for reimbursement submitted to Cigna, appeals of Cigna's claims adjudications, and communications with Cigna.

h.  Allyson Day – 8505 East Orchard Road, Greenwood Village, CO 80111; (303) 729-7280. Ms. Day is expected to testify about Cigna's "fee forgiveness" policies, the investigations of various of the Plaintiff ASCs, Cigna's communications with the ASCs and Cigna patients, Cigna's adjudication of claims submitted by the ASCs, and handling of appeals from the ASCs.

i.  Jeanne Desautels – 3801 E Florida Ave, Denver, CO 80222; (303) 757-0034. Ms. Desautels is expected to testify about is expected to testify about CASCA, CASCA activities regarding out-of-network ASCs in Colorado, CASCA meetings, including CASCA's meetings with payors and CAHP, competition for ASCs in Colorado, USPI's management of Centura joint venture ASCs and its payment and collection policies.

j.  Natalie Furmanowski – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Ms. Furmanowski is expected to testify about Arapahoe's business operations and policies, Arapahoe's collection of patient responsibility amounts, Cigna's payments and denials of Arapahoe's claims for reimbursement submitted to Cigna, Arapahoe's appeal of Cigna's claims adjudications and its communications with Cigna.

k.  Dean Grohskopf – 8505 East Orchard Road, Greenwood Village, CO 80111; (303) 729-8400. Mr. Grohskopf is expected to testify about Cigna's contracting and communications with providers in Colorado, Cigna's terminations of physicians in Colorado, and communications with Cigna's SIU.

l.  Paul Elliott, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Elliott is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and the termination of payor contracts.

m.  Kenneth Finn, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Finn is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and the termination of payor contracts.

n.  Thomas Hixson – 900 Cottage Grove Road, Hartford, CT 06152; (860) 226-6819. Mr. Hixson is expected to testify about Cigna's business operations, the operations of Cigna's SIU, Cigna's "fee forgiveness" policy, Cigna's SPDs and ASO agreements, and Cigna's adjudication of claims submitted by the Plaintiff ASCs.

o.  Davis Hurley, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Hurley is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and the termination of payor contracts.

p.  Tommy Kline – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Mr. Kline is expected to testify about Hampden Surgery Center's business operations and policies, its collection of patient responsibility amounts, its recruitment of staff, Cigna's payments and denials of its claims for reimbursement submitted to Cigna, and its appeals of Cigna's claims adjudications.

q.  Robin Mastrianni – 900 Cottage Grove Road, Hartford, CT 06152; (860) 226-1569. Ms. Mastrianni is expected to testify about Cigna's "fee forgiveness" policies, the investigations of various of the Plaintiff ASCs, Cigna's communications with the ASCs and Cigna patients, Cigna's adjudication of claims submitted by the ASCs, and handling of appeals from the ASCs.

r.  Emily McCarthy – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Ms. McCarthy is expected to testify about SurgCenter's operations and policies, the development of the Plaintiff ASCs, reasons patients choose treatment at an ASC, billing and collection policies used in the ASC industry,

negotiations with managed care companies, Cigna's communications with patients, and termination of physicians in Colorado.

s.  Janet Pogar – C/O Hogan Lovells US, LLP, Columbia Square, 555 Thirteenth Street, NW, Washington, DC 20004; (202) 637-5600. Ms. Pogar is expected to testify about Anthem's operations and contracting in Colorado, its communications regarding the Plaintiff ASCs, and CAHP's meetings with CASCA.

t.  Marc Reece – 1370 Grant Street, Suite 205, Denver, CO 80203; (303) 335-0137. Mr. Reece is expected to testify about CAHP, its calls, meetings and communications with CASCA and CASCA management, and its deliberations regarding out-of-network ASCs.

u.  David Roy – 4900 South Monaco St., Denver, CO 80237; (303) 788-2500. Mr. Roy is expected to testify about HCA's ASCs, competition faced by its ASCs, CASCA, CASCA activities regarding out-of-network ASCs in Colorado, CASCA's meetings with payors and CAHP, and HCA's termination of transfer agreements with Arapahoe.

v.  Kim Simensky – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200 Ms. Simensky is expected to testify about Westminster's business operations and policies, Westminster's collection of patient responsibility amounts, Cigna's payments and denials of Westminster's claims for reimbursement submitted to Cigna, Westminster's appeal of Cigna's claims adjudications and its communications with Cigna.

w.  Chris Skagen - 3333 South Bannock Street, Suite 400, Englewood, CO 80110; (303) 761-1048. Mr. Skagen is expected to testify about CASCA, CASCA activities and strategy regarding out-of-network ASCs in Colorado, CASCA meetings, including CASCA's meetings with payers and CAHP, competition for ASCs in Colorado, and communications with CASCA members and governmental authorities.

x.  Lise Streit – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Ms. Streit is expected to testify about Kissing Camel's business operations and policies, Kissing Camel's collection of patient responsibility amounts, Cigna's payments and denials of Kissing

Camel's claims for reimbursement submitted to Cigna, Kissing Camel's appeal of Cigna's claims adjudications and its communications with Cigna.

y. Janice Stewart – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Ms. Stewart is expected to testify about SurgCenter of Bel Air's business operations and policies, Bel Air's collection of patient responsibility amounts, Cigna's payments and denials of Bel Air's claims for reimbursement submitted to Cigna, Bel Air's appeal of Cigna's claims adjudications and its communications with Cigna.

z. Steven Topper, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Topper is expected to testify about the development and management of Kissing Camels, competition for ASC services in Colorado Springs, patients' choice of ASCs for treatment, termination of payor contracts, and Kissing Camels participation agreement with Kaiser.

aa. Ronald Wright – 8505 East Orchard Road, Greenwood Village, CO 80111; (303) 691-1035. Mr. Wright is expected to testify about Cigna's Medical Economics Unit, total medical costs, and analysis of payments to providers in Colorado.

2. Witnesses who may be present at trial if the need arises:

a. Stan Anderson – 11960 Lioness Way #190, Parker, CO 80134; (303) 794-1111. Mr. Anderson is expected to testify about HCA's ASCs, competition faced by its ASCs, CASCA, CASCA activities regarding out-of-network ASCs in Colorado, and CASCA meetings, including CASCA's meetings with payers and CAHP.

b. Elaine Auen – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Ms. Auen is expected to testify about SurgCenter's operations and policies and the development and management of the Plaintiff ASCs.

c. Terri Bartunek – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Ms. Bartunek is expected to testify about Cherry Creek's business operations and policies, its collection of patient responsibility amounts, its recruitment of staff, Cigna's payments

and denials of its claims for reimbursement submitted to Cigna, its appeals of Cigna's claims adjudications and its communications with Cigna.

d. Pamela Braun – 6465 Greenwood Plaza Blvd #300, Centennial, CO 80111; (303) 267-3300. Ms. Braun is expected to testify about Cigna's contracting with providers in Colorado and the August 29, 2012 CAHP/CASCA meeting.

e. Steven Bryant – 8505 East Orchard Road, Greenwood Village, CO 80111; (303) 782-1525. Mr. Bryant is expected to testify about Cigna's Medical Economics Unit, total medical costs, and analysis of payments to providers in Colorado.

f. Mark Carley – 188 Inverness Dr W Ste 500, Englewood, CO 80112; (303) 715-7000. Mr. Carley is expected to testify about Centura's managed care contracts and communications with payers in Colorado.

g. Jeffrey Chain, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Chain is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

h. Marc Conner, DPM – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Conner is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

i. Linda Cooper – 3800 N Central Ave. Suite 460, Phoenix, AZ 85012; telephone number unknown. Ms. Cooper is expected to testify about Aetna's operations and contracting in Colorado, its communications regarding the Plaintiff ASCs, and CAHP's meetings with CASCA.

j. Christopher D'Ambrosia, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. D'Ambrosia is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

k.  Jackie Driscoll – 1852 Lake Drive, Larkspur, CO 80118; telephone number unknown. Ms. Driscoll is expected to testify about Centura's managed care contracts and communications with payers in Colorado.

l.  Rosalie Einspahr – 13840 E Hampden Pl., Aurora, CO 80014; (303) 252-6373. Ms. Einspahr is expected to testify about CASCA, CASCA activities regarding out-of-network ASCs in Colorado, CASCA meetings, including CASCA's meetings with payers and CAHP, competition for ASCs in Colorado and Pinnacle III's management of Centura joint venture ASCs.

m.  Paul Elliott, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Elliott is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

n.  Kenneth Finn, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Finn is expected to testify about the formation of Kissing Camels Surgery Center, services available at Kissing Camels Surgery Center, patients' reasons for choosing Kissing Camels and his termination from Cigna.

o.  Wayne Gersoff, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Gersoff is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

p.  Eric Gessner, DPM – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Gessner is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

q.  Randy Haffner – 188 Inverness Dr W Ste 500, Englewood, CO 80112; (303) 715-7000. Mr. Haffner is expected to testify about Centura's operations and competition in Colorado.

r.  Steven Hammerstrom, DPM – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Hammerstrom is expected to testify about SurgCenter's operations and policies, the development of

the Plaintiff ASCs, the Board of Managers' role at the ASCs, and the reasons patients choose treatment at an ASC.

s. Belinda Hazleton – 131 Wilderness Way, Bristol, CT 06010; (860) 573-8268. Ms. Hazleton is expected to testify about Cigna's "fee forgiveness" policies, the investigations of various of the Plaintiff ASCs, Cigna's communications with the ASCs and Cigna patients, Cigna's adjudication of claims submitted by the ASCs, and handling of appeals from the ASCs.

t. Christopher Huser, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Huser is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

u. Leonard Kalm – 4900 South Monaco St., Denver, CO 80237; (303) 788-2500. Mr. Kalm is expected to testify about HCA's ASC business and competition in Colorado, its managed care contracting and its communications with Cigna, and HCA's termination of transfer agreements with Arapahoe.

v. Stephanie Levantis – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Ms. Levantis is expected to testify about SurgCenter's operations and policies and the development and management of the Plaintiff ASCs.

w. Craig Louks, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Louks is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

x. Philip Lyons – 6465 Greenwood Plaza Blvd #300, Centennial, CO 80111; (303) 267-3300. Mr. Lyons is expected to testify about CAHP, CAHP's  meetings and conference calls with CASCA, and United's operations in Colorado.

y. Donna Maurio – 6465 Greenwood Plaza Blvd #300, Centennial, CO 80111; (303) 267-3300. Ms. Maurio is expected to testify about United's contracting with providers in Colorado, its threats to terminate and terminations of provider contracts in Colorado, and its payments to ASCs in Colorado.

z. Christine Merryman – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Ms. Merryman is expected to testify about SurgCenter's operations and policies, the development of the Plaintiff ASCs, reasons patients choose treatment at an ASC, billing and collection policies used in the ASC industry, negotiations with managed care companies, and termination of physicians in Colorado.

aa. Jim Miles – 1700 Lincoln Street, Suite 4700, Denver, CO 80203;(303) 749-7268. Mr. Miles is expected to testify about CASCA, CASCA's calls and meetings with payers and CAHP regarding out-of-network ASCs in Colorado, and CASCA's development of strategy regarding out-of-network ASCs.

bb. Barbara Miller – 6465 S Greenwood Plaza Blvd, Suite 300Centennial, CO 80111; (800) 516-3344. Ms. Miller is expected to testify about United's contracting with providers in Colorado, its threats to terminate and terminations of provider contracts in Colorado, and its payments to ASCs in Colorado.

cc. Cary Motz, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Motz is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

dd. Stephanie Pederson – 6465 S. Greenwood Plaza Blvd, Ste. 300, Centennial, CO 80111; (303) 267-3253. Ms. Pederson is expected to testify about CAHP, CAHP's meetings and conference calls with CASCA, and United's operations in Colorado.

ee. Chad Prusmack, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Prusmack is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

ff. Ben Price – 1370 Grant Street, Suite 205, Denver, CO 80203; (303) 832-9611. Mr. Price is expected to testify about CAHP, its calls, meetings and communications with CASCA and CASCA management, and its deliberations regarding out-of-network ASCs.

gg. Daniel Reeves – 6001 E Woodmen Rd, Colorado Springs, CO 80923; (719) 571-1000. Mr. Reeves is expected to testify about the operations and management of Audubon Surgery Center, Audubon's relationship with Penrose Hospital, competition faced by Audubon, the termination of Penrose's transfer agreement with Kissing Camels, and Centura's managed care contracts.

hh. Scott Ross, MD – C/O Whatley Kallas, LLP, 2001 Park Place North, 1000 Park Place Tower, Birmingham, AL 35203; (205) 488-1200. Dr. Ross is expected to testify about the development and management of Plaintiff ASCs, patients' choice of ASCs for treatment, and termination of payer contracts.

ii. Margaret Sabin – 6001 E Woodmen Rd., Colorado Springs, CO 80923; (719) 571-1000. Ms. Sabin is expected to testify about Centura's operations in southern Colorado, competition faced by Centura in southern Colorado, the joint venture with Audubon Surgery Center, communications with payers, Centura's managed care contracts, and Penrose's termination of Penrose's transfer agreement with Kissing Camels.

jj. Robert Schwartz – 3333 S. Bannock St. #400, Englewood, CO 80110; (303) 761-1048. Mr. Schwartz is expected to testify about CASCA, CASCA activities and strategy regarding out-of-network ASCs in Colorado, CASCA meetings, including CASCA's meetings with payers and CAHP, competition for ASCs in Colorado, and communications with CASCA members and governmental authorities.

kk. Kelley Serafin – 379 Cornell Drive, Woodland Park, CO 80863; telephone number unknown . Ms. Serafin is expected to testify about Kissing Camel's business operations and policies, its collection of patient responsibility amounts, its recruitment of staff, Cigna's payments and denials of its claims for reimbursement submitted to Cigna, its appeals of Cigna's claims adjudications and its communications with Cigna.

ll. Jameson Smith – 6001 E Woodmen Rd, Colorado Springs, CO 80923; (719) 571-1000. Mr. Smith is expected to testify about the operations and management of Audubon Surgery Center, Audubon's relationship with Penrose Hospital, competition faced by Audubon, the termination of Penrose's transfer agreement with Kissing Camels, and Centura's managed care contracts.

mm.    Ronald Snow – 4900 South Monaco St., Denver, CO 80237; (303) 788-2500. Mr. Snow is expected to testify about HCA's ASC business and competition in Colorado, its contracts and communications with Cigna, and its termination of transfer agreements with Arapahoe.

nn. Carol Thomas – 1830 Franklin St #405, Denver, CO 80218; (720) 984-1993. Ms. Thomas is expected to testify about Cigna's contracting with providers in Colorado and the August 29, 2012 CAHP/CASCA meeting.

oo. Katherine Trease – C/O Andrew Ringel, Hall & Evans LLC, 1001 Seventeenth St., Suite 300, Denver, CO 80202; (303) 628-3453. Ms. Trease is expected to testify about Humana's operations and contracting in Colorado, its communications regarding the Plaintiff ASCs, and CAHP's meetings with CASCA.

B.    Witnesses where testimony is expected to be presented by means of deposition and, if not taken steno graphically, a transcript of pertinent portions of the deposition testimony:

a.    No such testimony is expected at this time.

Plaintiffs and Counterclaim Defendants reserve the right to call any witness who may be required for rebuttal purposes.

C.    Expert witnesses to be called by Plaintiffs and Counterclaim Defendants

1.    Witnesses who will be present at trial:

a.    Forrest McCluer, Ph.D. - Dr. McCluer is expected to testify about antitrust analysis, injury, and damages.

b.    Daniel Slottje, Ph.D. - Dr. Slottje is expected to testify about the Plaintiffs' damages.

2.    Witnesses who may be present at trial if the need arises:

a.    No such testimony is expected at this time.

3.    Witnesses where testimony is expected to be presented by means of a

deposition and, if not taken steno graphically, a transcript of the pertinent

portions of the deposition testimony:

a.    No such testimony is expected at this time.

II.    **DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' WITNESSES**

A.    Nonexpert witnesses to be called by Defendants and Counterclaim

Plaintiffs.

1.    Witnesses who will be present at trial:

a.    Dean Grohskopf.  Cigna, Network Management Department, 8505 East Orchard Road, Greenwood Village, CO 80111; (303) 729-8400.    Expected to testify about Cigna's development of networks and contracting, Cigna's communications about Plaintiffs, and Cigna's communications with in-network providers who referred patients to the Colorado ASCs, as well as termination of network agreements with some of those providers. Expected to testify in person.

b.    Cynthia Aikin.   Cigna, Provider Contracting Department. 8505 East Orchard Road, Greenwood Village, CO 80111; (303) 566-2337.    Expected to testify about Cigna's development of networks and contracting, Cigna's communications about Plaintiffs, and Cigna's communications with in-network providers who referred patients to the Colorado ASCs, as well as termination of network agreements with some of those providers. Expected to testify in person.

c.    Mary Ellen Cisar.  Cigna, Special Investigations Unit, 900 Cottage Grove Road, Hartford, CT 06152; (860) 226-8367. Expected to testify about Cigna's fraud investigation practices, Cigna's investigation into Plaintiffs' services and business practices, and Cigna's processing of claims and appeals pursuant to the benefits plans it administers. Expected to testify in person.

d.     Michael Battistoni.  Cigna, Director of Contracting, Non-Par Cost Containment, 900 Cottage Grove Road, Hartford, CT 06152; (860) 226-6000.  Expected to testify about Cigna's reimbursement policies, practices, and programs.  Expected to testify in person.

e.     Thomas Hixson.  Cigna, Special Investigations Unit, 900 Cottage Grove Road, Hartford, CT 06152; (860) 226-6819. Expected to testify about Cigna's fraud investigation practices and relationships with plans.  Expected to testify in person.

f.     Emily McCarthy.   1751 Warmington Court, Ballwin, MO 63021; (636) 220-7170.  Expected to testify about the ASCs' policies and business practices and SurgCenter's role therein, SurgCenter's relationship to the ASCs, as well as SurgCenter's development of ambulatory surgical centers, including the ASCs, and the ASCs.  Also expected to testify about contract negotiations with payors, including Cigna. Expected to testify in person.

g.     Christine Merryman.  8 Valley View, Ladue, MO 63124; (573) 743-3715.  Expected to testify about the ASCs' policies and business practices and SurgCenter's role therein, SurgCenter's relationship to the ASCs, as well as SurgCenter's development of ambulatory surgical centers, including the ASCs, and the ASCs.  Also expected to testify about contract negotiations with payors, including Cigna. Expected to testify in person.

h.     Tracy Ciprick.   Cherry Creek Surgery Center, 5060 S Syracuse St., Denver, CO 80237; (303) 770-1056.  Expected to testify about Cherry Creek's operations, business practices, and policies, SurgCenter's role therein and relationship to Cherry Creek, as well as Cherry Creek's interactions with Cigna.  Expected to testify in person.

i.     Natalia Furmanowski.   SurgCenter on Dry Creek d/b/a Arapahoe Surgery Center, 125 Inverness Drive East, Suite 150, Englewood, CO 80112; (303) 792-0777.  Expected to testify about Arapahoe's operations, business practices, and policies, SurgCenter's role therein and relationship to Arapahoe, as well as Arapahoe's interactions with Cigna. Expected to testify in person.

j.      Tommy Kline.   Hampden Surgery Center, 4380 South Syracuse Street #120, Denver, CO 80237; (303) 220-0810. Expected to testify about Hampden's operations, business practices, and policies, SurgCenter's role therein and relationship to Hampden, as well as Hampden's interactions with Cigna.  Expected to testify in person.

k.      Kimberly Simensky. Westminster Surgery Center, 826 Washington Road, Suite 131, Westminster, MD 21157; (410) 871-9440.      Expected to testify about Westminster's operations, business practices, and policies, SurgCenter's role therein and relationship to Westminster, as well as Westminster's interactions with Cigna.  Expected to testify in person.

l.      Janice Stewart.  SurgCenter of Bel Air, 209 Thomas Street, Bel Air, MD 21014; (410) 638-5523.   Expected to testify about Bel Air's operations, business practices, and policies, SurgCenter's role therein and relationship to Bel Air, as well as Bel Air's interactions with Cigna.  Expected to testify in person.

m.     Lise Streit.   Kissing Camels Surgery Center, 2955 Professional Place, Ste. 100, Colorado Springs, CO 80904; (719) 633-2494.  Expected to testify about Kissing Camels's operations, business practices, and policies, SurgCenter's role therein and relationship to Kissing Camels, as well as Kissing Camels's interactions with Cigna.  Expected to testify in person.

n.      Kelley Serafin.   379 Cornell Drive, Woodland Park, CO 80863; telephone number unknown.   Expected to testify about Kissing Camels's operations, business practices, and policies, SurgCenter's role therein and relationship to Kissing Camels, as well as Kissing Camels's interactions with Cigna. Expected to testify in person.

o.      Steven M. Topper, M.D.  Kissing Camels Surgery Center, 2955 Professional Place, Ste. 100, Colorado Springs, CO 80904; (719) 633-2494.  Expected to testify about Kissing Camels Surgery Center's business practices and policies, and SurgCenter's role therein, as well as Dr. Topper's role and relationship with this ASC.  Expected to testify in person.

p.      Kenneth Finn, M.D.  Kissing Camels Surgery Center, 2955 Professional Place, Ste. 100, Colorado Springs, CO 80904; (719) 633-2494.  Expected to testify about Kissing Camels's business practices and policies and SurgCenter's role therein and relationship to Kissing Camels, as well as Dr. Finn's role and relationship with this ASC and his interactions with payors, including Cigna.  Expected to testify in person.

q.      Davis Hurley, M.D.  Hampden Surgery Center, 4380 South Syracuse Street #120, Denver, CO 80237; (303) 220-0810. Expected to testify about Hampden Surgery Center's business practices and policies, and SurgCenter's role therein and relationship to Hampden, as well as Dr. Hurley's role and relationship with this ASC and his interactions with payors, including Cigna.  Expected to testify in person.

r.      Chad Prusmack, M.D.  SurgCenter on Dry Creek d/b/a Arapahoe Surgery Center, 125 Inverness Drive East, Suite 150, Englewood, CO 80112; (303) 792-0777.  Expected to testify about Arapahoe's business practices and policies, and SurgCenter's role therein and relationship to Arapahoe, as well as Dr. Prusmack's role and relationship with this ASC and his interactions with payors, including Cigna.  Expected to testify in person.

s.      Steven Hammerstrom, M.D.  SurgCenter Development, P.O. Box 1708, Pismo Beach, CA; (605) 422-1949.  Expected to testify about the development, operations and business practices of ambulatory surgical centers, including the ASCs, and SurgCenter's role therein and relationship to the ASCs, as well as interactions with payors, including Cigna. Expected to testify in person.

2.      Witnesses who may be present at trial if the need arises:

a.      Allyson Day.  Cigna, Special Investigations Unit.  8505 East Orchard Road, Greenwood Village, CO 80111; (303) 729-7280. Expected to testify about Cigna's investigation into the Plaintiffs' service and business practices, and Cigna's processing of claims and appeals pursuant to its benefits plans.  Expected to testify in person.

b.      Robin Mastrianni.  Cigna, Special Investigations Unit. 900 Cottage Grove Road, Hartford, CT 06152; (860) 226-1569.

Expected to testify about Cigna's investigation into the Plaintiffs' service and business practices, and Cigna's processing of claims and appeals pursuant to the benefits plans it administers.  Expected to testify in person.

c.  Kim Bimestefer.  Cigna, President - Mountain States Region, 8505 East Orchard Road, Greenwood Village, CO 80111; (303) 566-2337.  Expected to testify about Cigna's business operations in Colorado, including Cigna's development of networks and contracting, Cigna's communications about Plaintiffs, and Cigna's communications with in-network providers who referred patients to the Colorado ASCs, as well as termination of network agreements with some of those providers.  Expected to testify in person.

d.  Ronald Wright.  Cigna, Medical Economics Unit, 8505 East Orchard Road, Greenwood Village, CO 80111; (303) 691-1035.  Expected to testify about Cigna's business and analysis of medical costs and claims.  Expected to testify in person.

e.  Steven Bryant.  Cigna, Medical Economics Unit, 8505 East Orchard Road, Greenwood Village, CO 80111; (303) 782-1525.  Expected to testify about Cigna's business and medical costs.  Expected to testify in person.

f.  Leslie Dahlberg.  PO Box 491, Colorado Springs, CO 80901; (719) 338-1276.  Expected to testify about her experience with Dry Creek as the mother of members who received services at Dry Creek and analysis of medical costs and claims.  Expected to testify in person.

g.  Timothy Thompson.  6244 Red Canyon Dr., Apt. B, Highlands Ranch, CO 80130; (410) 638-0377.  Expected to testify about his experience as a member who received services at SurgCenter on Dry Creek.  Expected to testify in person.

h.  J. Paul Elliott, M.D.  SurgCenter on Dry Creek, 125 Inverness Drive East, Suite 150, Englewood, CO 80112; (303) 792-0777.  Expected to testify about SurgCenter on Dry Creek's business practices and policies, and SurgCenter's role therein, as well as his role and relationship with this ASC.  Expected to testify in person.

i.    Lisa Cox.  SurgCenter Development, P.O. Box 1708, Pismo Beach, CA; (303) 332-4170. Expected to testify about the ASCs' policies and business practices and SurgCenter's role therein, SurgCenter's relationship to the ASCs, as well as SurgCenter's development of ambulatory surgical centers, including the ASCs, and the ASCs.  Also expected to testify about contract negotiations with payors, including Cigna. Expected to testify in person.

j.    Elaine Auen.  SurgCenter Development, P.O. Box 1708, Pismo Beach, CA; (303) 902-5486.  Expected to testify about the ASCs' business practices and policies and SurgCenter's role therein.  Expected to testify in person.

k.    Janet Pogar.  Anthem, Regional Vice President, Provider Engagement and Contracting.  C/O Hogan Lovells US, LLP, Columbia Square, 555 Thirteenth Street, NW, Washington, DC 20004; (202) 637-5600.  Expected to testify about Anthem's provider contracting.  Expected to testify in person.

l.    Christopher Skagen.  Colorado Ambulatory Surgery Center Association, 3333 South Bannock Street, Suite 400, Englewood, CO 80110; (303) 761-1048.  Expected to testify about CASCA's operations, purpose and practices, and industry issues that CASCA has considered and/or addressed.  Expected to testify in person.

m.    Timothy P. Giess.  Aetna.  May be contacted only through counsel:  Joshua Lipton, Gibson, Dunn & Crutcher LLP, 1050 Connecticut Avenue, N.W., Washington, DC 20036-5306, (202) 955-8226.  Expected to testify about Aetna's provider contracting and business operations, and its business interactions with the ASCs and investigation into their billing practices.  Expected to testify in person.

n.    Katherine Trease.  Humana Health Plan, Inc., Vice President of Network Operations, C/O Andrew Ringel, Hall & Evans LLC, 1001 Seventeenth St., Suite 300, Denver, CO 80202; (303) 628-3453.  Expected to testify about Humana's operations and provider contracting, and business interactions with CAHP.

o.    Marc Reece.  Colorado Association of Health Plans, 1370 Grant Street, Suite 205, Denver, CO 80203; (303) 335-0137. Expected to testify about CAHP's operations, purpose and

practices, and industry issues that CAHP has considered and/or addressed.  Expected to testify in person.

p.      Stephanie   Pedersen.      UnitedHealthcare,   Network Management, 6465 S. Greenwood Plaza Blvd, Ste. 300, Centennial, CO 80111; (303) 267-3253.  Expected to testify about UHC's business and provider contracting.  Expected to testify in person.

Cigna also reserves the right to call any witness that may be required for rebuttal purposes.

B.      Witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony:

a.      No such testimony is expected at this time.

C.      Expert witnesses to be called by Defendants and Counterclaim Plaintiffs.

1.      Witnesses who will be present at trial:

a.      Sean M. May, Ph.D.   Charles River Associates, 200 Clarendon Street, Boston, MA 02116; (617) 425-3000. Expected to testify about the managed care industry, including plan structures and provider contracting; the impact of the ASCs' and SurgCenter's conduct on the managed care industry, including on consumers, employers, Cigna and other managed care companies, and healthcare providers; Cigna's damages from the ASCs' and SurgCenter's conduct;   and the deficiencies in Plaintiffs' experts' opinions and their damage theories and calculations.  Expected to testify in person.

2.      Witnesses who may be present at trial if the need arises:

a.      No such testimony is expected at this time.

3.      Witnesses where testimony is expected to be presented by means

of a deposition and, if not taken steno graphically, a transcript of the

pertinent portions of the deposition testimony:

a.      No such testimony is expected at this time.

## 7. EXHIBITS

A.    Lists of Exhibits

1.      Plaintiffs and Counterclaim Defendants: see the attached Schedule

A.

2.      Defendants and Counterclaim Plaintiffs: see the attached Schedule

B.

3.      Other Parties: none.

B.      **Copies of listed exhibits must be provided to opposing counsel and**

**any *pro se* party no later than 30 days before trial.  The objections contemplated**

**by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served by hand delivery**

**or facsimile no later than 14 days after the exhibits are provided.**

## 8. DISCOVERY

Fact discovery has been completed and expert disclosures have been made.

Expert depositions have not yet occurred, as the Court's scheduling order provides that

"the parties shall not take expert depositions prior to the Court's resolution of all

dispositive motions."  (Dkt. 39, at 16.)   The parties "will complete expert depositions

within 40 days after the Court rules on all dispositive motions."  (*Id.*)

Pursuant to the procedural schedule in *Kissing Camels Surgery Center, LLC et al. v. Centura Health Corporation, et al.*, 12-cv-3012 (D. Colo.) (the "Centura Action"), further discovery may occur after the submission of this Order.  Pursuant to the Parties' stipulation that they may offer documents or deposition testimony produced in the Centura Action at trial, the Parties have stipulated that to the extent Supplemental Centura Discovery is produced in the Centura action, the Parties may supplement their exhibit or witness lists with Supplemental Centura Discovery that the Parties intend to be offered at trial, provided that any such supplement must be exchanged no later than 30 days before trial.  Such documents will not be counted toward the additional exhibits that the Parties may supplement the exhibit lists pursuant to the Stipulation of Evidence No. 3 described in Section 4 above.

The Parties further reserve the right to depose any witness that appears on any Party's witness list but was not included in the initial disclosures of any party or the initial disclosures in this action.

## 9. SPECIAL ISSUES

The antitrust conspiracy alleged by Plaintiffs is also at issue in the pending case *Kissing Camels Surgery Center, LLC et al v. Centura Health Corporation, et al.*, 12-cv-3012 (D. Colo.).

## 10. SETTLEMENT

The Parties, by their undersigned counsel, hereby certify:

A.      Counsel for the parties have spoken by telephone on a few occasions to discuss in good faith the settlement of the case.

B.      The participants in the settlement conferences included counsel.

C.      The parties were promptly informed of all offers of settlement.

D.      Counsel for the parties intend to hold future settlement conferences.

E.      It appears from the discussion by all counsel that there is little possibility of settlement at this time.

F.      Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR.16.6.  However, no formal ADR has occurred.

## 11. OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed it with the clients against whom claims are made in this case.

## 12.  EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice.  The pleadings will be deemed merged herein.  This Final Pretrial Order supersedes the Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order,

reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

### 13.  TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

The parties expect a two-week combined jury and bench trial, at the conclusion of which the jury will receive a verdict form to decide those claims triable by jury.  After the jury renders its verdict, the parties expect the court will render its verdict on those claims that are not triable by jury.  The parties anticipate that the case will be tried in the Honorable William A. Martinez's courtroom in the Alfred A. Arraj Courthouse, 901 19th Street, Denver, Colorado 80294.

DATED this _____ day of _____, 20_____.


                                        BY THE COURT


                                        _____
                                        United States Magistrate Judge


APPROVED:


By: /s/ Joe R. Whatley, Jr.                By: /s/ Warren Haskel
Joe R. Whatley, Jr.                        Joshua B. Simon
Colorado State Bar No. 38820               Warren Haskel
WHATLEY KALLAS, LLP                        KIRKLAND & ELLIS LLP
720 East Durant Avenue, Suite E6           601 Lexington Avenue
Aspen, CO 81611                            New York, NY 10016
Tel: (970) 300-4848                        Tel:  212.446.4800
Fax: (970) 427-5536                        Fax:  212.446.4900
Email: jwhatley@whatleykallas.com          Email: jsimon@kirkland.com
                                           Email: whaskel@kirkland.com

Edith M. Kallas
WHATLEY KALLAS, LLP                        Edwin P. Aro
380 Madison Avenue, 23rd Floor             ARNOLD & PORTER LLC
New York, NY 10017                         370 Seventeenth Street, Suite 4400
Tel: (212) 447-7060                        Denver, CO 80202
Fax: (800) 922-4851                        Tel: (303) 863-1000
Email: ekallas@whatleykallas.com           Fax: (303) 832-0428
                                           Email: ed.aro@aporter.com

Deborah J. Winegard
WHATLEY KALLAS, LLP                        *Counsel for Defendants and Counterclaim
1068 Virginia Avenue, NE                   Plaintiffs*
Atlanta, GA 30306
Tel.: (404) 607-8222
Fax: (404) 607-8451
Email: dwinegard@whatleykallas.com

W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place Tower, Suite 1000
Birmingham, AL 35203
Tel.: (205) 488-1200
Fax: (800) 922-4851
Email: tbrown@whatleykallas.com

*Counsel for Plaintiffs and Counterclaim Defendants*