**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-3422-WJM-CBS

ARAPAHOE SURGERY CENTER, LLC,
CHERRY CREEK SURGERY CENTER, LLC,
HAMPDEN SURGERY CENTER, LLC,
KISSING CAMELS SURGERY CENTER,
SURGCENTER OF BEL AIR, LLC, and
WESTMINSTER SURGERY CENTER, LLC,

      Plaintiffs / Counterclaim Defendants,

v.

CIGNA HEALTHCARE, INC.,
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
CIGNA HEALTHCARE – MID-ATLANTIC, INC., and
CIGNA HEALTHCARE OF COLORADO, INC.,

      Defendants / Counterclaim Plaintiffs.

---

**ORDER GRANTING IN PART AND DENYING IN PART
MOTIONS FOR SUMMARY JUDGMENT**

---

Plaintiffs and Counterclaim Defendants Arapahoe Surgery Center, LLC, Cherry

Creek Surgery Center, LLC, Hampden Surgery Center, LLC, Kissing Camels Surgery

Center, LLC, SurgCenter of Bel Air, LLC ("SurgCenter"), and Westminster Surgery

Center, LLC ("Westminster") (collectively "Plaintiffs" or the "ASCs") are ambulatory

surgery centers bringing this action against Defendants Cigna Healthcare, Inc.,

Connecticut General Life Insurance Co., Cigna Healthcare – Mid-Atlantic, Inc., and

Cigna Healthcare of Colorado, Inc. (collectively "Cigna").  (ECF No. 60 at 56–64.)  The

ASCs bring claims under the Employee Retirement Income Security Act ("ERISA")

§ 502(a), 29 U.S.C. §§ 1132(a) and 1133; the Sherman Act, 15 U.S.C. §§ 1 *et seq.*,

and the Colorado Antitrust Act, Colo. Rev. Stat. §§ 6-4-101 *et seq.*; and state law

claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  (*Id.*)  Cigna has asserted Counterclaims under ERISA for injunctive relief; a related claim for declaratory relief; a claim under a Colorado criminal statute prohibiting abuse of health insurance, Colo. Rev. Stat. § 18-13-119; and state law claims[1] for unjust enrichment and tortious interference with contract.[2]  (ECF No. 17.)  Before the Court are the parties' respective Motions for Summary Judgment ("Motions").  (ECF Nos. 105, 106.)  For the reasons set forth below, the Motions are each granted in part and denied in part: Cigna's Motion is granted in full as to the ASCs' antitrust claims and in part as to the ERISA claims; the ASCs' Motion is granted in full as to Cigna's abuse of health insurance counterclaim and in part as to the unjust enrichment and tortious interference claims; and the Motions are otherwise denied.

## I.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v.*

---

[1] Cigna's state law claims against SurgCenter and Westminster are brought under Maryland law, as both are Maryland limited liability companies operating in Maryland, while its state law claims against the remaining ASCs are brought under Colorado law, as they are all Colorado entities.  (ECF No. 17 ¶¶ 16–21, 218, 225, 233, 240, 248, 254.)  Each of Cigna's state law claims asserts that the ASCs' conduct gives rise to a claim under both Maryland and Colorado law.  (*Id.* ¶¶ 218, 225, 233, 240, 248, 254.)

[2] Cigna also brought additional counterclaims under ERISA, Colorado Criminal Code § 18-4-405, RICO, and COCCA, as well as state law claims alleging fraud and negligent misrepresentation, all of which were previously dismissed.  (ECF No. 80.)

*Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if

the evidence is such that it might lead a reasonable trier of fact to return a verdict for

the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all

reasonable inferences therefrom in the light most favorable to the nonmoving party.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the

Court must resolve factual ambiguities against the moving party, thus favoring the right

to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  BACKGROUND

The following relevant facts are undisputed, unless otherwise noted.

Cigna is a managed care company offering health insurance benefit plans, some

of which it funds itself, and most of which are funded by the employers or entities that

sponsor them, while Cigna serves as claims administrator.  (Cigna's Statement of

Material Facts ("Cigna's SMF") (ECF No. 90 at 3–27) ¶¶ 1–2.)  Cigna maintains a

network of medical providers who agree in their network contracts to accept discounted

rates for their services.  (*Id.* ¶¶ 5–6.)  The ASCs are ambulatory surgery centers

providing medical services, and are all considered out-of-network facilities under

Cigna's insurance plans.  (*Id.* ¶¶ 23, 26.)  Cigna's plans all contain a clause delegating

to Cigna "the discretionary authority to interpret and apply plan terms and to make

factual determinations in connection with its review of claims under the plan."  (*Id.* ¶ 22.)

Under Cigna's plans, if a patient receives services from an out-of-network medical provider, the patient pays any applicable co-payment, coinsurance, or deductible (collectively referred to as the patient's "cost share"), as specified in the plan. (*Id.* ¶ 14.)  As compared to in-network services, the plans generally require patients to pay a higher cost share for out-of-network services.  (*Id.* ¶ 15.)  The plans contain a section entitled "Exclusions, Expenses Not Covered and General Limitations," which reads in relevant part: "Covered Expenses will not include, and no payment will be made . . . [for] charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan." (*Id.* ¶ 18.)  Cigna interprets this exclusion provision to mean that the plan is not responsible for a charge that the provider does not require a member to pay, including any cost share obligation under the member's plan.  (*Id.* ¶ 19.)

Cigna also limits its plans' reimbursement to out-of-network providers to a specified "Maximum Reimbursable Charge," and will not reimburse any charge that is greater than the provider's "normal charge" for that service.  (*Id.* ¶¶ 20–21.)  Patients using out-of-network providers are also generally subject to a deductible for those providers, one which is separate from their in-network deductible.  (*Id.* ¶ 17.)

As out-of-network providers, the ASCs adopted a billing policy under which they would charge patients no more than those patients' in-network cost share responsibility, rather than the higher out-of-network cost share provided under Cigna's plans.  (*Id.* ¶ 33.)  In discussing these costs with patients, the ASCs sometimes referred to the out-of-network cost share obligations as "penalties."  (*Id.* ¶ 38.)  As the ASCs did not have

all of Cigna's plan documents, they estimated the patient's in-network cost share, calculating this estimate in many cases by using 150% of the Medicare rate for the relevant procedure.  (*Id.* ¶¶ 39–40.)  When the patient had no in-network responsibility, the ASC would collect no cost share from the patient.  (*Id.* ¶ 41; *see also* ECF No. 116 at 7.)  When the ASCs submitted benefits claims to Cigna requesting reimbursement for their services, they charged rates as out-of-network facilities.  (Cigna's SMF ¶ 52.)

Cigna contends that, in practice, the ASCs often accepted payments from it and other insurers as payment in full without charging the patients anything at all, and without holding the patient responsible for any difference between the insurer's payment and the amount in the ASCs' claims.  (*Id.* ¶¶ 42–43.)  The ASCs dispute this, contending that they only charged a patient nothing when that patient had no in-network responsibility, and that patients for whom Cigna did not pay benefits have since received a bill reflecting the balance due.  (ECF No. 116 at 7.)  The ASCs required all their patients to sign "Assignment of Benefits" forms, which contain an acknowledgement that the patient understands that he or she is "financially responsible for all charges regardless of any applicable insurance or benefits payments," or on some versions of the form, the patient agrees "to pay all sums due the facility at the usual and customary charge of the facility."  (ASCs' Statement of Material Facts ("ASCs' SMF") (ECF No. 97 at 4–19) ¶ 7.)  Pursuant to these forms, the ASCs contend that they have billed patients when Cigna denied their claims.  (*Id.* ¶ 8.)  Cigna does not dispute that such forms were signed, but it does dispute that patients were billed for outstanding balances, or that the ASCs ever intended to hold patients responsible for more than the calculated in-network cost share.  (ECF No. 112 at 2–3.)

5

Cigna began investigating the ASCs' billing practices, and based on Cigna's belief that the ASCs were forgiving fees, Cigna began sending notices to physicians who had referred patients to the ASCs, reminding them to refer patients to in-network providers and threatening to terminate them from Cigna's network if they did not desist. (Cigna's SMF ¶¶ 62–63.)  Cigna also sent surveys to their members who had received services from the ASCs, which revealed that the patients paid lower cost shares than the amounts specified in their plans for out-of-network providers.  (*Id.* ¶ 73.)

Based on this information, Cigna implemented a "fee-forgiving protocol" for processing claims from the ASCs, under which it reduced reimbursement to the ASCs based on the amount the patient paid in cost share.  (*Id.* ¶ 79.)  Cigna "flagged" the ASCs' claims pursuant to its determination that they were forgiving fees, which routed claim processing to Cigna's Special Investigation Unit.  (ASCs' SMF ¶¶ 68.)  The ASCs do not dispute that Cigna's fee-forgiving protocol led to reduced reimbursement payments, but also note that on the majority of the ASCs' claims, Cigna denied the claim in full and paid nothing.  (ECF No. 116 at 13.)  Cigna asserts that, under the protocol, its Special Investigation Unit withheld payment for claims for which the ASCs refused to provide Cigna with information about the amount the patient had paid in cost share.  (Cigna's SMF ¶ 68.)  However, it is undisputed that, in the fall of 2014, Cigna changed its fee-forgiving protocol for paying the ASCs' claims from "full denial" to processing the claim at 150% of Medicare.  (*Id.* ¶ 75.)

The ASCs had a general policy of appealing claims through Cigna's administrative process when Cigna reimbursed less than 60% of the billed charges.  (*Id.* ¶ 59; ASCs' SMF ¶ 17.)  However, one of the ASCs, Westminster, did not appeal any of

Cigna's denials of claims until March 14, 2013.  (Cigna's SMF ¶ 60.)

The ASCs filed this action on December 18, 2013.  (ECF No. 1.)  Cigna filed an Answer and Counterclaims on February 10, 2014.  (ECF Nos. 16, 17.)  On March 6, 2015, the Court entered an Order Granting in Part and Denying in Part the ASCs' Motion to Dismiss Cigna's Counterclaims.  (ECF No. 80.)  The Court dismissed counterclaims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and its state analogue, some of Cigna's counterclaims under ERISA, and several state law claims.  (*Id.* at 21.)

On April 23, 2015, Cigna and the ASCs each filed their respective Motions.  (ECF Nos. 90, 97.)  The parties each filed Responses (ECF Nos. 112, 116) and Replies (ECF Nos. 123, 124).

## III.  ANALYSIS

Cigna's Motion seeks summary judgment on each of the ASCs' claims against it, as well as on its counterclaims against the ASCs.  (ECF No. 90.)  The ASCs' Motion seeks summary judgment in their favor on each of Cigna's counterclaims, as well as on all of the ASCs' own claims except for their antitrust claims.  (ECF No. 97.)  The Court will therefore discuss the parties' respective arguments as to each set of claims in turn.

### A.    Antitrust: ASCs' Claims VI & VII

Cigna challenges the ASCs' Claims VI and VII, which allege antitrust violations under the Sherman Act and the Colorado Antitrust Act, respectively.[3]  (ECF No. 90 at

---

[3]  The Colorado Antitrust Act is the state law analogue to the Sherman Act.  *See* Colo. Rev. Stat. § 6-4-119 ("the courts shall use as a guide interpretations given by the federal courts to comparable federal antitrust laws").  Because federal antitrust law principles apply to both the federal and state antitrust claims, the Court will analyze both claims together.  *See Four*

27–36.)  Cigna raises three arguments: (1) the ASCs have failed to present any evidence of a conspiracy, either direct or circumstantial; (2) there is no evidence of an unlawful restraint of trade; and (3) there is no evidence of an antitrust injury.  (*Id.*)  Because the Court finds the third argument dispositive, its analysis begins there.

"An antitrust injury is defined as an injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 882 (10th Cir. 1997).  "Antitrust injury" is not enumerated as an element of any of the Sherman Act claims discussed above, yet it is a necessary element of any antitrust claim.  *See NYNEX Corp. v. Discon*, 525 U.S. 1278, 135 (1998) (a plaintiff in a § 1 claim must show harm to the competitive process); *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 750 (10th Cir. 1999) (claim under the Clayton Act requires that the plaintiff show an antitrust injury); *Rural Tele. Serv. Co., Inc. v. Feist*, 957 F.2d 765, 768 (10th Cir. 1992) (holding that an antitrust injury is a necessary element of a § 2 claim).

Cigna here argues that the ASCs' antitrust claims must fail for lack of antitrust injury because they allege only injury to themselves as competitors, not injury to competition itself.  (ECF No. 90 at 35–37.)  Cigna argues that the ASCs remain open for business, demonstrating that they have not been pushed out of the market by Cigna's alleged anticompetitive acts, and that economic losses to the ASCs cannot alone constitute an injury to competition.  (*Id.*)

In response, the ASCs argue that the antitrust injury resulting from Cigna's acts

---

*Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1220 n.1 (10th Cir. 2009).

is supported by the expert report of Dr. R. Forrest McCluer, Ph.D.  (ECF No. 120-16 at 22–25, 35–37.)  The paragraphs the ASCs cite in support of their argument fall under two separate headings in Dr. McCluer's report: "The High Cost of [Hospital Outpatient Departments] Relative to ASC" (which falls under the broader heading "The Rise of Outpatient Surgeries"), and "Demonstrating the Fact of Antitrust Injury."  Under the first of these two headings, Dr. McCluer opines that costs for procedures performed at ASCs are typically significantly lower—sometimes by two to three times—than the same procedure performed at a hospital, and that consequently, "the out of pocket costs to [patients] as well as the total cost of health care can rise as a result of excluding Plaintiffs from the market . . . ."  (*Id.* at 22–25.)

Under the second heading, Dr. McCluer explains that antitrust injury exists when an anticompetitive act restricts consumer choices, or results in increased costs to consumers.  (*Id.* at 35.)  He opines that "the alleged joint-boycott and conspiracy had the effect of diverting cases away from Plaintiff ASCs and redirected them, at least to some degree, to [hospital outpatient departments]."  (*Id.* at 36.)  Finally, Dr. McCluer cites specific examples of physicians that moved the site of planned surgeries from the ASCs to hospitals in Cigna's network, in response to Cigna's warning and termination letters.  (*Id.*)

The ASCs argue that *Full Draw Products* supports a finding that "a loss resulting from an attempt to cripple or eliminate a competitor is precisely the type of loss to be expected as the result of an illegal boycott," and is therefore an antitrust injury.  (ECF No. 116 at 45.)  The Court rejects the implication in this argument that any injury

caused by a *per se* illegal boycott is necessarily an antitrust injury, as the Supreme Court has spoken definitively on that issue. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 341–42 (1990) ("We also reject respondent's suggestion that no antitrust injury need be shown where a *per se* violation is involved. The *per se* rule is a method of determining whether § 1 of the Sherman Act has been violated, but it does not indicate whether a private plaintiff has suffered antitrust injury and thus whether he may recover damages . . . .").

However, the Court agrees that *Full Draw Products* encourages a case-specific analysis of whether the alleged injury stems from the anticompetitive effects of the challenged conduct. Indeed, in a related case alleging the same underlying conspiracy, this Court previously cited *Full Draw Products*' holding that a plaintiff's injury alone can constitute antitrust injury under certain circumstances. *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, 2015 WL 5081608, at *7 (citing *Full Draw Prods.*, 182 F.3d at 254 ("We have no doubt that alleging the loss of one of two competitors in this case alleges injury to competition. . . . Because defendants' alleged boycott reduced a competitive market of two producers to a market of one monopolist, Full Draw quite clearly alleged substantial injury to competition from defendants' group boycott.")). In *Kissing Camels*, the Court found that the plaintiffs—which included many of the same Plaintiff ASCs in the instant case—had sufficiently presented evidence of antitrust injury despite a failure to discuss anticompetitive impacts on any competitor other than the plaintiffs themselves. *Id.* The Court noted that the plaintiffs' antitrust expert analyzed the relevant market and found that, "because it is highly concentrated, elimination of

any of the Plaintiffs as competitors would have a substantial negative impact on competition." *Id.* The Court concluded that, in the concentrated Colorado Springs market at issue in *Kissing Camels*, the plaintiffs had presented sufficient evidence that the evidence of harm to themselves established harm to competition. *Id.*

In the instant case, however, the ASCs point to no such market analysis or any similar evidence. Rather, the evidence the ASCs cite from Dr. McCluer's report consists of generalized opinions regarding the lower cost of procedures at ASCs as compared to hospitals, and specific examples of business the ASCs lost as a result of Cigna's actions. Even viewed in the light most favorable to the ASCs, the Court finds this evidence insufficient to defeat summary judgment on the issue of antitrust injury. Notably, there is no evidence that any of the Plaintiff ASCs in this case have actually been excluded from the market; rather, the evidence shows only that they suffered some amount of lost business as a result of Cigna's acts.[4] (*See* ECF No. 120-16 at 36–37.) The ASCs have not pointed to any part of Dr. McCluer's expert report that analyzes the competitiveness of the relevant markets to indicate that such lost business substantiates an antitrust injury. They have not even directed the Court to evidence showing, for example, that their businesses are likely to fail if such losses continue.

---

[4] While there is no requirement that a competitor be eliminated to establish an antitrust injury, the ASCs' citation to *Full Draw Products* is inapposite where no such elimination has occurred. (*See* ECF No. 116 at 46 (quoting *Full Draw Prods.*, 182 F.3d at 755 ("The mere fact that the number of competitors after the boycott matches the number before . . . does not cure the anticompetitive effect of the boycott, which is the elimination of a competitor by means other than 'the economic freedom of participants in the relevant market.'")).) The cited passage from *Full Draw Products* explained that an antitrust injury occurred when a competitor was eliminated, even though from a consumer's perspective, it had only one choice in the market both before and after the challenged boycott—not, as the ASCs appear to suggest, that the fact of a competitor's survival after a boycott has no impact on the antitrust injury analysis.

Instead, they point to Dr. McCluer's opinions on increased costs to patients, apparently arguing that increased costs demonstrate competitive harm.  However, Dr. McCluer does not reference any concrete instances of increases in costs to patients on which a jury could rely to find that such harm occurred, nor does he opine that costs necessarily, or even probably, increased in this case.  (*See id.* at 22–25, 35–37.) Without more, it would be unreasonable for a jury to take the large inferential step from Dr. McCluer's generalized opinions to find that patient costs increased as a result of anticompetitive activity in the instant case.

The Court has no obligation to sift through Dr. McCluer's report, or the record as a whole, to determine whether there is any other evidence of an antitrust injury. *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) (holding that the Court is "not obligated to comb the record in order to make [the plaintiff's] arguments for [it]"). "[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004).  Given the lack of evidence of an antitrust injury, the Court holds that no reasonable jury could find in the ASCs' favor on its antitrust claims.  Accordingly, Cigna's Motion is granted as to the ASCs' Claims VI and VII under the Sherman Act and the Colorado Antitrust Act.

**B.    ERISA: ASCs' Claims I, II, & III and Cigna's Counterclaim I**

The ASCs' Claims I, II, and III are all brought under various provisions of ERISA, arguing that Cigna violated the statute by failing to pay benefits (Claim I), breaching its

fiduciary duty as an insurer and third-party administrator (Claim II), and failing to provide a full and fair review of the ASCs' claims (Claim III).  (ECF No. 60 at 56–60.)  Cigna raises four general arguments that summary judgment is warranted on these claims: (1) under the "abuse of discretion" standard of review, Cigna correctly interpreted its plans, and its actions to deny or reduce benefits payments were supported by substantial evidence; (2) the ASCs failed to exhaust administrative remedies for at least some of their claims; (3) the ASCs' Claim II for restitution fails because purely monetary compensation is unavailable under ERISA § 502(a)(3) and there is no evidence Cigna gained from its acts; and (4) the ASCs' Claim III fails because Cigna reviewed every appeal after the fee-forgiving protocol was implemented.  (ECF No. 90 at 37–43.)  The ASCs, too, seek summary judgment on these claims, arguing that Cigna's interpretation of its plans was erroneous as a matter of law.  (ECF No. 97 at 20–28.)

Cigna's Counterclaim I is also brought under § 502(a)(3), and the sole remaining relief sought is an injunction requiring the ASCs to submit to Cigna only the amounts that the ASCs actually charge the patients and to exclude any additional amount from their future claims.[5]  (ECF No. 17 at 41.)  Both parties seek summary judgment on that claim as well.

1.   Standard of Review

ERISA § 502(a) authorizes a civil action "by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the

---

[5] Cigna originally sought declaratory relief under Counterclaim I as well, but that request was dismissed in a prior order.  (ECF No. 80 at 8.)

plan . . . ."  29 U.S.C. § 1132(a)(1).  However, "ERISA does not set out the appropriate

standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility

determinations."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989).  In

*Firestone*, the Supreme Court established the proper standard of review for such

claims, holding that "a denial of benefits challenged under § 1132(a)(1)(B) is to be

reviewed under a *de novo* standard unless the benefit plan gives the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe the

terms of the plan."  *Id.* at 115.  "If the plan provides for such discretion, then the proper

standard of review is abuse of discretion."  *McClenahan v. Metro. Life Ins. Co.*, 621 F.

Supp. 2d 1135, 1139 (D. Colo. 2009) *aff'd*, 416 F. App'x 693 (10th Cir. 2011).  The

parties here do not dispute that all of the plans at issue in this case contain a provision

granting Cigna discretionary authority to interpret and apply plan terms, and to make

benefits determinations.  (Cigna's SMF ¶ 22.)  Thus, it would appear that under

*Firestone*, the abuse of discretion standard applies.

     In Colorado, however, the analysis does not end there.  On August 6, 2008,

Colorado Revised Statutes § 10-3-1116(2) became effective, which reads:

> An insurance policy, insurance contract, or plan that is
> issued in this state that offers health or disability benefits
> shall not contain a provision purporting to reserve discretion
> to the insurer, plan administrator, or claim administrator to
> interpret the terms of the policy, contract, or plan or to
> determine eligibility for benefits.

Colo. Rev. Stat. § 10-3-1116(2).  On its face, this statute would seem to render void the

discretionary clauses for those Colorado plans that Cigna insures, such that the

applicable standard of review for those plans would revert to the default *de novo*.

14

However, despite the fact that Cigna does not raise the issue in its own Motion or in its response to the ASCs' Motion (*see* ECF No. 90 at 37–38; ECF No. 112 at 17–19), when faced with a potential conflict between state and federal laws, the Court must consider the question of preemption.

"ERISA includes expansive pre-emption provisions . . . to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1144) (internal quotation marks omitted). "There are two aspects of ERISA preemption: (1) 'conflict preemption' and (2) remedial or 'complete preemption.'" *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1135-36 (10th Cir. 2005) (citing 29 U.S.C. § 1144(a)).

The Tenth Circuit has not reached the preemption question with respect to § 10-3-1116(2), but other judges in this District have thoroughly discussed the issue. *See McClenahan*, 621 F. Supp. 2d at 1140–1142; *see also Kohut v. Hartford Life & Acc. Ins. Co.*, 710 F. Supp. 2d 1139, 1147–49 (D. Colo. 2008). The Court is persuaded by the reasoning in *McClenahan*, which found that: (1) § 10-3-1116(2) was not expressly preempted by ERISA because it fell within the savings clause for a state regulation of insurance pursuant to the prescribed analysis in *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003); and (2) § 10-3-1116(2) was not preempted by ERISA due to a conflict because the abuse of discretion standard of review arises from contractual drafting, not from any ERISA provision, and therefore the state statute does not affect ERISA's statutory enforcement scheme.[6] *McClenahan*, 621 F. Supp. 2d at

---

[6] Ultimately, *McClenahan* found that § 10-13-1116(2) did not require *de novo* review under the facts of that case, because the relevant events giving rise to McClenahan's claims occurred before the effective date of the Colorado statute and the statute could not be applied

1140–42.  The Court agrees with and adopts the preemption analysis in *McClenahan*,

and concludes, for the same reasons articulated therein, that § 10-13-1116(2) is not

preempted by ERISA.  Therefore, for those plans subject to this Colorado statute,

namely, any Colorado plans that Cigna insures, the discretionary clause is void and the

Court must apply *de novo* review.[7]

  The parties do not dispute that Maryland lacks a parallel statute.  The ASCs also

agree that Cigna's self-funded plans—those in which, for example, an employer acts as

insurer and Cigna as mere administrator—are not subject to § 10-13-1116(2).  (*See*

ECF No. 97 at 22.)  These plans, all of which contain a discretionary clause, must

therefore be reviewed under an abuse of discretion standard of review.  *See Firestone*,

489 U.S. at 115.  Under the abuse of discretion standard, the court "will uphold the

decision of the plan administrator so long as it is predicated on a reasoned basis, and

there is no requirement that the basis relied upon be the only logical one or even the

superlative one."  *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124,

1134 (10th Cir. 2011) (internal quotation marks omitted) (referring to "arbitrary and

capricious" standard); *see also Loughray v. Hartford Grp. Life Ins. Co.*, 366 F. App'x

913, 923 (10th Cir. 2010) ("In the ERISA context, we treat the abuse of discretion and

the arbitrary and capricious standards of review as interchangeable.").  In determining

whether the plan administrator's interpretation was within its discretion, the Court must

---

retroactively under Colorado law.  Because the facts in this case occurred well after August 2008, no issue of retroactivity is raised by the facts of the instant case.

 [7] The same would be true for any plans at issue here that are not subject to ERISA, but as the parties have not enumerated the specific plans, the Court cannot determine at this stage whether any such plans exist.

"look for 'substantial evidence' in the record to support the administrator's conclusion, meaning 'more than a scintilla' of evidence 'that a reasonable mind could accept as sufficient to support a conclusion.'"  *Eugene S.*, 663 F.3d at 1134 (quoting *Adamson v. UNUM Life Ins. Co. Of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006)).

The ASCs raise an additional issue affecting the standard of review: the effect of a potential conflict of interest.  The ASCs argue that, for those plans in the abuse of discretion category which Cigna insures itself (limited, of course, to some number of the Maryland plans at issue, since the insured Colorado plans are in the *de novo* category), Cigna saved money by denying its members' claims, and therefore had an inherent conflict of interest from its dual role as evaluator and payer of benefits claims.  (ECF No. 116 at 28.)  The ASCs argue that this conflict of interest must be considered as a factor when determining whether Cigna abused its discretion.  (*Id.* (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)).)  Cigna argues that a dual role conflict does not alter the standard of review (ECF No. 124 at 16), and the Court does not disagree.  But Cigna has not cited any authority contradicting the ASCs' argument that this conflict of interest is a factor that may be considered when reviewing Cigna's exercise of discretion for possible abuse.  The Court therefore agrees that conflict of interest is a factor in evaluating a potential abuse of discretion for any plans that Cigna insures.

The ASCs argue that the conflict of interest should also be considered for plans that Cigna merely administered, even though it did not benefit monetarily from denial of claims, because Cigna applied a uniform policy when it denied claims and its decisions were therefore uniformly "tainted by self-interest."  (ECF No. 116 at 28.)  While this

17

argument is logical, it is unsupported; the sole authority the ASCs cite for this proposition deals with a completely unrelated issue. (*Id.* (citing *Phelan v. Wyo. Associated Builders*, 574 F.3d 1250, 1255 (10th Cir. 2009) (affirming a district court's remedy reversing member's termination from insurance plan because it was a permissible equitable remedy under ERISA § 502(a)(3))).) The Court therefore declines to apply the conflict of interest factor outside the plans where Cigna has a dual role.

     2.   <u>Exhaustion of Administrative Remedies</u>

     Cigna seeks summary judgment on the ASCs' ERISA claims as to some of the applicable plans for failure to exhaust administrative remedies, based on the argument that the ASCs conceded that they did not appeal some of the benefits claims that were denied or reduced. (ECF No. 90 at 41–42.) Specifically, Cigna states that the ASCs admitted that they do not appeal benefits claims where Cigna paid 60% or more of the amount that was billed, and one ASC—Westminster—admitted that it did not appeal any Cigna benefits claims until March 14, 2013. (*Id.*; Cigna's SMF ¶ 60.) The ASCs do not dispute these admissions, but they argue that appeals were futile under Cigna's fee-forgiving protocol. (ECF No. 116 at 11, 33–34.)

     In an unpublished decision on which Cigna relies, the Tenth Circuit states, "We agree with the Seventh Circuit's approach to evaluating a claim of futility and hold that in order to satisfy the futility exception to the exhaustion requirement, plaintiff must establish that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'" *Rando v. Standard Ins. Co.*, 182 F.3d 933 (10th Cir. 1999) (table) (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)) (brackets omitted). While this decision is not binding, the

Court is persuaded that the bar for showing futility is high.

Nevertheless, the Court concludes that the ASCs have shown futility here for those claims that were not appealed after the imposition of Cigna's fee-forgiving protocol. Once Cigna imposed a blanket policy of how to handle the ASCs' claims, the ASCs could be certain that Cigna would reject their appeals pursuant to that policy. However, the ASCs have presented no evidence that their appeals would have been futile *before* the imposition of the fee-forgiving protocol. As such, the Court finds that the ASCs' ERISA claims are barred for failure to exhaust administrative remedies as to any claim for benefits that was not appealed through both administrative levels provided under the plans, if those claims were denied before the dates that the fee-forgiving protocol was applied.[8] Cigna's Motion is therefore granted in this limited respect.

3.     Interpretation of Plans and Denial of Benefits

Both parties move for summary judgment on the question of whether Cigna was entitled to deny the ASCs' claims for benefits, in whole or in part, pursuant to the terms of their plans. (ECF No. 90 at 38–41; ECF No. 97 at 20–28.) "In interpreting an ERISA plan, [the Court] examine[s] the plan documents as a whole and, if unambiguous, construe[s] them as a matter of law." *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1237 (10th Cir. 2012) (internal quotation marks omitted).

Cigna's Motion cites three provisions of the plans that it believes supported its actions on the ASCs' claims: (1) an exclusion from the definition of "Covered Expenses" for "charges which you[, the plan member,] are not obligated to pay or for which you are

---

[8] These dates are listed in the Affidavit of Mary Ellen Cisar. (ECF No. 104.) They vary by facility as well as by which claims submission system was used. (*Id.*)

not billed or for which you would not have been billed except that they were covered under this plan" (Cigna's SMF ¶ 18); (2) the requirement to pay an out-of-network deductible amount before receiving any reimbursement for out-of-network services (*id.* ¶ 16); and (3) the "Maximum Reimbursable Charge," which can be no more than the "provider's normal charge for a similar service" (*id.* ¶ 20).  (ECF No. 90.)  Cigna interpreted the Covered Expenses exclusion language as permitting it to refuse requests for reimbursement for more than "the charge that [the ASCs] used to calculate the members' in-network cost-sharing responsibility."  (ECF No. 90 at 39.)  Cigna further argues that, because of the out-of-network deductible requirement, many members who had not satisfied that requirement would not have received any coverage anyway.  (*Id.*)

As to the Covered Expenses exclusion, the ASCs' Motion argues that it does not support denying the claims because the plan member was never "not obligated to pay or . . . not billed" for the ASCs' services.  (ECF No. 97 at 22–23.)  Instead, the ASCs argue, their patients sign forms acknowledging that the patient is "financially responsible for all charges regardless of any applicable insurance or benefits payments."  (ASCs' SMF ¶ 7.)  Cigna disputes whether all patients signed such forms, and also disputes whether the ASCs ever actually intended to make their patients financially responsible for more than the cost-share amount the ASCs calculated.  (*See* ECF No. 112 at 2–3.)

As to the Maximum Reimbursable Charge and deductible requirements, the ASCs argue that these cannot serve as bases for Cigna's decision to deny claims either.  (ECF No. 97 at 24–25.)  The ASCs contend that neither of these provisions establishes a basis for exclusion from coverage; they merely define terms that might

20

limit payments on covered claims.  (*Id.*)  The ASCs also note that Cigna's denial letters issued after it implemented the fee-forgiving protocol all cited only the Covered Expenses exclusion.  (ASCs' SMF ¶ 18.)  Those letters stated that the denial was based on information that the particular ASC facility "did not obligate its patients to pay their full cost share obligation . . . or did not bill its patients for the same." (*Id.*)  Cigna does not contest the ASCs' assertion that its cited basis for denial was only the Covered Expenses exclusion.

Both parties cite out-of-circuit decisions to support their arguments, but neither cited decision is precisely on point.  The ASCs cite *North Cypress Medical Center Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 196 (5th Cir. 2015), which discussed Cigna's denial of claims by an out-of-network medical provider who did not charge its patients for the coinsurance provided for in their plans.  Evaluating the claim denials under abuse of discretion review, the Fifth Circuit noted that the first step is to determine whether Cigna's interpretation of the plans is "legally correct," viewing the plan language from the perspective of an average plan participant.  *Id.* at 195–96. From that perspective, the Fifth Circuit stated that "[t]here are strong arguments that Cigna's plan interpretation is not 'legally correct,'" because it questioned whether patients reading the Covered Expenses exclusion "would understand that they *have no insurance coverage* if they are not charged for coinsurance.  That is, would a plan member understand the language to *condition* coverage on the collection of coinsurance, rather than simply describing the fact that the insurance does not cover all of a patient's costs." *Id.* at 196 (emphasis in original).  While this case offers a

persuasive analysis, it fails to resolve the instant case; the Fifth Circuit's analysis raised questions but did not offer definitive answers, and was arguably dicta, since the issue of legal correctness was not decided but was remanded to the district court.  Furthermore, the instant case is distinguishable, at least as to the claims for which Cigna did not completely deny coverage but reduced the amount it paid.

Cigna relies on *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698 (7th Cir. 1991), which evaluated a similar decision by Cigna to deny claims by the plaintiff medical provider because he had waived his patients' co-payments and had agreed to accept as payment "whatever the insurer would pay." *Id.* at 699.  The Seventh Circuit found that the Covered Expenses exclusion applied to relieve Cigna of its coverage obligation under the applicable plan, because "[b]y promising that he would look exclusively to CIGNA for payment, Kennedy relieved [the patient] of any legal obligation to pay.  So Kennedy's charge *to the patient* was zero, and 80% of nothing is nothing." *Id.* at 701 (emphasis in original).  Viewing the facts in the light most favorable to the ASCs, however, *Kennedy* is distinguishable from the instant case.  Here, there is a factual dispute as to whether the ASCs did, in fact, charge their patients some cost share and hold them financially responsible for the entire claimed amount if Cigna refused to pay.  If the ASCs' patients were billed for the charges and obligated to pay them, then the Covered Expenses exclusion does not apply.

Given the factual dispute in the record regarding whether the ASCs' patients were or were not held financially responsible for the charges here, the Court cannot determine whether the Covered Expenses exclusion applied as a matter of law. Consequently, with respect to this issue, the ASCs' Motion must be denied, and Cigna's

Motion must also be denied, at least as to the plans subject to *de novo* review.

As to the plans subject to abuse of discretion review, however, further analysis is required.  A legally incorrect reading of the plans may still be enforced if it was reasonable, within Cigna's discretion, to interpret its plans in this manner.  On this point, Cigna argues that it had substantial evidence to support its decision, because it surveyed its plan members and determined that the ASCs charged patients less than their full cost share responsibility under the plans, and sometimes charged them nothing.  (ECF No. 90 at 40–41.)  Relying on *North Cypress*, the ASCs respond that Cigna's decisions were unreasonable because the plans' language does not condition coverage on full cost share payments.  (ECF No. 116 at 30–33; ECF No. 97 at 23–25.) However, the ASCs' arguments are aimed at those circumstances where Cigna's ultimate decision was to deny the claim in its entirety and pay nothing at all.  It is undisputed that, at least after the fall of 2014, Cigna changed its fee-forgiving protocol from "full denial" to paying some percentage of the claim based on its calculation of 150% of Medicare reimbursements.  (ASCs' SMF ¶ 75.)  Thus, there were some circumstances where Cigna appeared to decide that the Covered Expenses exclusion applied to bar coverage completely, and other circumstances where it determined that the charge was covered but calculated a lower reimbursable amount.

Whether Cigna's decision was within its discretion depends on which of these two circumstances applied to a particular claim.  When Cigna determined that the expense was covered, its decision to reduce payment on the claim was based on its interpretation of the Covered Expenses exclusion in the context of the amount the patient was charged.  For example, where Cigna had performed patient surveys and

23

investigations and understood that the ASCs calculated a patient's cost share as 150% of Medicare, Cigna's decision to cover only 150% of Medicare was based on substantial evidence because the information it had at the time suggested that the patient was being billed only for 150% of Medicare. *See Adamson*, 455 F.3d at 1212, 1214 ("The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole. . . .  In applying this standard of review, we consider the evidence before the plan administrator at the time he made the decision to deny benefits.").

Even viewing these facts in the light most favorable to the ASCs, and considering Cigna's conflict of interest for those plans that it insures, the Court finds that Cigna's decision to reduce these payments was not unreasonable and was within its discretion.  As such, Cigna's decision to reduce payments on the ASCs' claims must be upheld for those plans that are subject to abuse of discretion review.  Cigna's Motion is therefore granted as to those plans.

However, the patient surveys and cost share calculations do not provide substantial evidence for Cigna to completely decline coverage.  For those claims on which Cigna chose to pay nothing, Cigna's decision was reasonable only if it was supported by substantial evidence that the patients were "not obligated to pay or . . . not billed" for *anything at all*.  Because this rests on the same disputed evidence discussed above regarding whether the ASCs held patients responsible for the charges, the Court must deny summary judgment for both parties on these claims.

In summary, the Court grants Cigna's Motion on Claim I with respect to those plans that are subject to abuse of discretion review (the Maryland plans and the self-funded plans) where Cigna paid on the claim but reduced the amount to 150% of

Medicare, and denies the ASCs' Motion with respect to those plans.  As to those same

plans where Cigna denied the claim completely, and as to all other plans, both parties'

motions are denied on Claim I.

### 4.   Breach of Fiduciary Duty: Claim II

Cigna argues that Claim II fails because it is duplicative of Claim I, and that

insofar as it seeks restitution, such purely monetary compensation is unavailable under

ERISA § 502(a)(3).  (ECF No. 90 at 42.)  Cigna further argues that the claim fails on the

merits because there is no evidence Cigna gained any benefit from its acts.  (*Id.*)

As to the first argument, the ASCs state that Cigna has merely misread the

Second Amended Complaint.  (ECF No. 116 at 34.)  While Claim I seeks restitution of

unpaid benefits, Claim II seeks "equitable, injunctive and declaratory relief."  (ECF No.

60 at 57–59.)  Given this clarification, and in reliance on the ASCs' representation that

they do not seek restitution under Claim II, the Court rejects Cigna's first argument.

As to Cigna's argument that the breach of fiduciary duty claim fails on the merits,

the ASCs respond that Cigna's decisions to deny the ASCs' claims benefited Cigna,

and/or the sponsors for which it administered the plan, at the expense of subscribers,

which is the behavior prohibited under 29 U.S.C. § 1106.  (ECF No. 116 at 35.)

Because the fee-forgiving protocol undisputedly reduced or eliminated claim payments,

the ASCs argue that Cigna saved money for whichever entity funded the plan by

implementing the protocol, and the subscriber was left to pay out of pocket.  (*Id.*)  This

characterization supports a finding that Cigna did, in fact, gain from denying or reducing

claim payments.

Since the Court has found a material factual dispute as to whether Cigna's fee-forgiving protocol was permissible under ERISA, the same dispute prevents the Court from determining as a matter of law whether the use of the protocol constituted a breach of Cigna's fiduciary duty. As such, both parties' Motions are denied as to Claim II.

     5.    <u>Full and Fair Review: Claim III</u>

The ASCs' Claim III challenges Cigna's acts in denying the ASCs' claims for benefits on the basis that Cigna failed to provide a "full and fair review" of the claims. (ECF No. 60 at 59–60.)

Pursuant to 29 U.S.C. § 1133(2), an employee benefit plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." This full and fair review must include "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 893–94 (10th Cir. 1988) (internal quotation marks omitted).

Cigna's sole argument in its Motion is that it fully reviewed every one of the ASCs' appeals after the fee-forgiving protocol was implemented. (ECF No. 90 at 43.) But, as the ASCs point out, the fee-forgiving protocol itself was a blanket policy that did not provide them with an opportunity to challenge the evidence Cigna relied upon in issuing its denials. (ECF No. 116 at 35.) As there is a factual dispute preventing summary judgment on whether the fee-forgiving protocol was permissible under ERISA,

the Court cannot grant summary judgment as to whether its use deprived the ASCs of a full and fair review.  Accordingly, both parties' Motions are denied as to Claim III.

6.   Counterclaim I

Cigna's Counterclaim I seeks injunctive relief requiring the ASCs to limit their future claims to only the amounts that the ASCs actually charge the patients.  (ECF No. 17 at 41.)  Cigna argues that it merits summary judgment because the ASCs' policy of discounting patients' cost share "violated the terms of Cigna's ERISA-governed plans." (ECF No. 90 at 45.)  However, the Court's finding that Cigna's decision to reduce payment on some of its claims was within its discretion does not equate to a finding that the ASCs violated the terms of the plans.  Cigna's Motion fails to articulate a genuine argument for summary judgment on this counterclaim, and it is therefore denied.

Similarly, because the Court found above that there are material factual disputes such that it cannot determine as a matter of law whether Cigna's interpretation of its plans was permissible, the ASCs' Motion on this counterclaim is also denied.

**C.   Contract: ASCs' Claims IV & V**

The ASCs bring claims for breach of contract and breach of the implied covenant of good faith and fair dealing with regard to any plans at issue in this case that are not covered by ERISA.  (ECF No. 60 at 60, 62.)  The ASCs seek damages resulting from the alleged breaches as assignees of the plan subscribers.  (*Id.*)  Cigna contends that summary judgment should be granted on these claims, arguing that (1) no breach occurred; (2) the ASCs cannot recover damages; and (3) Claim V, the implied covenant claim, is duplicative and fails on the merits.  (ECF No. 90 at 43–44.)  On these claims as well, the ASCs argue that Cigna's legally incorrect interpretation of its plans

mandates judgment in the ASCs' favor as to those plans not covered by ERISA.  (ECF No. 97 at 27–28.)

As to the argument that no breach occurred because the Covered Expenses exclusion permitted denial of the claims, the same factual dispute identified above prevents the Court from granting summary judgment on this issue.  Cigna's argument that it merely "enforc[ed] this contractual term" has not been established as a matter of law at this stage of the case.

The same factual dispute precludes summary judgment on Cigna's damages argument.  Cigna argues that no damages are recoverable by the ASCs because they bring these claims solely as assignees of their patients, and their patients were never obligated to pay more than a fraction of what their plans required.  (ECF No. 90 at 43–44.)  Because this factual assertion is in dispute, the question of what damages were suffered remains in dispute.

Finally, as to the implied covenant claim, Cigna argues that it should be dismissed as duplicative of the breach of contract claim, and that it cannot be used to contradict the express terms of the contract.  (*Id.* at 44.)  Cigna cites only one unpublished case for its argument that an implied covenant claim should not proceed alongside a contract claim arising from the same facts, and in that case, the plaintiff stipulated to dismiss the claim without prejudice.  *See Aurora Commercial Corp. v. PMAC Lending Servs., Inc.*, 2014 WL 859253, at *5 (D. Colo. Mar. 5, 2014).  The Court therefore rejects this argument as completely unsupported.  Cigna's other argument on this claim relies on its position that its interpretation of the plans was permissible, which

is the subject of a factual dispute and cannot support summary judgment.

Accordingly, Cigna's Motion is denied as to the ASCs' Claims IV and V.  Given the factual disputes on which these claims rely, the ASCs' Motion is also denied as to these claims.

## D.     Abuse of Health Insurance: Cigna's Counterclaim IX

Cigna's Counterclaim IX seeks declaratory relief under Colorado Criminal Code § 18-13-119, which states in relevant part as follows:

> Health care providers - abuse of health insurance
>
> (1)  The general assembly hereby finds, determines, and declares that:
> (a)  Business practices that have the effect of eliminating the need for actual payment by the recipient of health care of required copayments and deductibles in health benefit plans interfere with contractual obligations entered into between the insured and the insurer relating to such payments;
>
> * * *
>
> (2)  Therefore, the general assembly declares that such business practices are illegal and that violation thereof or the advertising thereof shall be grounds for disciplinary actions. . . .
>
> (3)  Except as otherwise provided in subsections (5), (6), and (8) of this section, if the effect is to eliminate the need for payment by the patient of any required deductible or copayment applicable in the patient's health benefit plan, a person who provides health care commits abuse of health insurance if the person knowingly:
> (a)  Accepts from any third-party payor, as payment in full for services rendered, the amount the third-party payor covers; or
> (b)  Submits a fee to a third-party payor which is higher than the fee he has agreed to accept from the insured patient with the understanding of waiving the required deductible or copayment.
>
> (4)  Abuse of health insurance is a class 1 petty offense.

Cigna requests a declaration that the Colorado ASCs' billing practices violated § 18-13-

119, and that therefore Cigna is entitled to recover any amounts illegally obtained through such violation.  (ECF No. 17 at 53–55.)

The ASCs argue that Cigna lacks standing to enforce a criminal statute against the ASCs, and that no private right of action exists for a violation of § 18-13-119.  (ECF No. 97 at 29–30.)  The ASCs also argue that they have not violated the statute on the merits.  (*Id.* at 30–31.)  The Court agrees that this claim fails because there is no civil cause of action for a violation of § 18-13-119, and therefore it need not discuss the ASCs' other arguments.

Cigna contends that the fact that § 18-13-119 is a criminal statute providing for no explicit civil remedy does not bar its claim, because the Court should imply a private civil cause of action.  (ECF No. 112 at 30.)  Cigna urges the Court to apply the analysis of whether to imply a private right of action set forth in *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992).  However, *Allstate* dealt not with a criminal statute, but with a civil statute providing for certain disclosures in sales of automobile insurance, which was "totally silent on the matter of remedy."  *Id.* at 910.  The court was therefore required to determine whether a private cause of action existed "[b]ecause the statutory scheme does not expressly provide a method for enforcing a violation" of the statute.  *Id.* at 911 (setting forth three factors for consideration).

The instant case is distinguishable, as § 18-13-119 provides explicitly for criminal sanctions, treating violations as "a class 1 petty offense."  Cigna responds to this argument in a footnote, citing an unpublished case from this District and quoting from it as follows: "provision of a criminal penalty does not necessarily preclude implication of

30

a private cause of action." (ECF No. 112 at 31 n.5 (citing *Chafin v. Stasi*, 2015 WL 1525542, at *16 (D. Colo. Mar. 31, 2015).) This is a serious misstatement of the cited case, which reads in context as follows:

> Though a provision of a criminal penalty does not necessarily preclude implication of a private cause of action, a 'bare criminal statute,' which contains absolutely no indication that a civil remedy is available, does not provide a basis from which to infer a private cause of action. Indeed, congressional intent to create such a remedy, the most important factor to consider when determining if an implied private remedy exists, cannot be found on the face of this statute. Instead, the purpose of the statute is to provide protection against interference with the legislative process. Accordingly, not only does this statute fail to provide a private cause of action to support Plaintiff's claims, but there is no legislative intent to support an implied private remedy.

*Chafin*, 2015 WL 1525542, at *16 (citations omitted).

Read in context, the Court finds *Chafin* persuasive and concludes that a similar analysis applies here. Cigna notes that the statutory purpose of § 18-13-119 is to protect insurers' contractual relationships with their insureds, but the statute also explicitly states that its violation "shall be grounds for disciplinary actions," not for a civil cause of action. Colo. Rev. Stat. § 18-13-119(2). Cigna has pointed to nothing that suggests a congressional intent to create a private right of action on which an insurer may sue to protect its contracts with its insureds; indeed, such action would likely be duplicative of a tort claim for interference with contract, since the statute provides that the prohibited business practices "interfere with contractual obligations entered into between the insured and the insurer." *Id.* § 18-13-119(1)(a).

The Court concludes that no private right of action is implied in § 18-13-119. Accordingly, the Court finds that Cigna may not bring a claim for declaratory relief as to § 18-13-119, and the ASCs' Motion is granted as to Counterclaim IX.

**E.     State Law Claims: Cigna's Counterclaims VII & VIII**

Cigna brings state law claims for unjust enrichment and tortious interference with contract.  (ECF No. 17 at 44–53.)  The ASCs' Motion raises the following arguments against these claims: (1) both the unjust enrichment claim and the tortious interference with contract claim fail because the Court already found that Cigna failed to allege misrepresentation; (2) the unjust enrichment claim is preempted by ERISA; (3) the statute of limitations bars at least some of these claims; (4) the unjust enrichment claim fails because the ASCs did not receive any benefit to Cigna's detriment; (5) the tortious interference claim fails because Cigna has not shown that the ASCs intentionally induced the patients to breach their contracts, that the ASCs acted wrongfully, or that Cigna suffered damages; and (6) Cigna lacks standing to bring these claims on behalf of employer-funded plans because Cigna suffered no damages.  (ECF No. 97 at 31–40.)  The Court will discuss each argument in turn.

1.     Misrepresentation

The ASCs' Motion argues that the Court's rulings with respect to Cigna's allegations of fraud and misrepresentation in its order on the ASCs' Motion to Dismiss Cigna's Counterclaims mandate summary judgment on both the unjust enrichment and tortious interference claims.  (ECF No. 97 at 31–32, 35.)  The ASCs argue that both claims are based on alleged misrepresentations or fraud, and that the Court rejected Cigna's allegations that the ASCs misrepresented their billing practices.  (*Id.*)

32

In its ruling on the ASCs' Motion to Dismiss Cigna's Counterclaims, the Court found that Cigna failed to plausibly plead that the ASCs misrepresented their billing practices because Cigna admitted that the ASCs disclosed on their claim forms that they reduced the patient's portion of the bill and made the patient responsible for only an approximate in-network deductible and co-pay amount.  (ECF No. 80 at 11–12.)  The Court concluded that Cigna had not plausibly pled misrepresentations constituting predicate acts under RICO, and dismissed that counterclaim and its parallel state claim.  (*Id.*)  The Court found that the same alleged misrepresentations were the basis for Cigna's counterclaims for fraud, aiding and abetting fraud, negligent misrepresentation, and aiding and abetting negligent misrepresentation, and dismissed those claims as well.  (*Id.* at 16.)  However, the Court found that Cigna had sufficiently stated a claim for unjust enrichment and tortious interference with contract, and denied the Motion to Dismiss as to those claims.  (*Id.* at 16–18.)

The ASCs' argument in the instant Motion is based on Cigna's allegations in its Counterclaims, which reference alleged misrepresentations of charges for the ASCs' services on both of the remaining claims.  (ECF No. 17 at 50–53.)  While the Court's findings as to misrepresentations impact the factual narrative on which both claims are predicated, neither of these claims necessarily fails without proof of these misrepresentations or fraud.  The essence of Cigna's unjust enrichment claim is that Cigna overpaid benefits claims in amounts that exceeded the value of the reimbursed service, and that it would be unjust for the ASCs to retain these additional amounts.  (*Id.* at 50–51.)  The tortious interference claim alleges that the ASCs induced patients not to pay the amounts they were contractually obligated to pay and misrepresented the

33

terms of their insurance plans, causing the patients to breach their contracts and

causing Cigna to overpay claims.  (*Id.* at 51–53.)  Notably, the alleged

misrepresentation of the terms of the patients' insurance plans was not within the scope

of the Court's findings in its prior order.  (ECF No. 80 at 11 ("While Cigna also alleges

that the ASCs misrepresented to patients that they could use in-network benefits at the

ASCs' facilities, Cigna does not allege that its RICO and COCCA claims are based on

such misrepresentations.  Instead, it alleges that the ASCs used such tactics to conceal

the nature of the inflated charges.").)

Accordingly, the Court rejects the ASCs' argument that the Court's prior order

requires granting summary judgment on the unjust enrichment and tortious interference

claims.

2.    Preemption

The Court previously found, in the context of the ASCs' Motion to Dismiss, that

Cigna's state law counterclaims were not subject to either express preemption or

conflict preemption.  (ECF No. 80 at 13–16.)  The ASCs' Motion now argues that the

unjust enrichment claim is preempted because it requires interpretation of Cigna's

benefit plans to determine whether the claims were overpaid.  (ECF No. 97 at 33–34.)

In response, Cigna argues that the unjust enrichment claim does not require such

interpretation, because it is based on a determination that the amounts Cigna paid the

ASCs exceeded the value of the services the ASCs provided.  (ECF No. 112 at 33.)

The Court agrees with Cigna that, read properly, the unjust enrichment claim is based

on a finding that Cigna made overpayments relative to the actual value of the services

rather than relative to what Cigna was contractually permitted to pay under the plans. Therefore, this claim is not preempted, and the Court denies the ASCs' Motion in that respect.

     3.   <u>Statute of Limitations</u>

The ASCs argue that both the unjust enrichment claim and the tortious interference claim are barred in part by the applicable statute of limitations. (ECF No. 97 at 32–33, 36.) As to the unjust enrichment claim, the ASCs argue that the Maryland statute of limitations for an unjust enrichment claim seeking monetary restitution is three years, and that Cigna was aware of Westminster's billing practices more than three years before it filed its counterclaim against Westminster. (*Id.* at 32–33.) As to the tortious interference claim, the ASCs argue that Cigna was aware of and began investigating the ASCs' claim practices more than two years before it brought its counterclaim against Kissing Camels (in Colorado), and more than three years before it brought its counterclaim against Westminster (in Maryland). (*Id.* at 36.)

Cigna opposes on three bases: (1) the unjust enrichment and tortious interference claims were compulsory counterclaims that relate back to the date the ASCs filed their initial complaint (December 18, 2013), not the date the counterclaims were filed (February 10, 2014); (2) these claims did not accrue when Cigna began investigating the ASCs' billing practices, but rather when Cigna knew that it was overpaying claims or that its plan members had been induced to breach; and (3) separate claims accrued as to each patient whose benefits were overpaid or who breached the contract, such that at least those claims based on later transactions are not barred. (ECF No. 112 at 37–39.) Cigna does not dispute the applicable statutory

limitation periods.  (*See id.*)

As to the question of relation back, the ASCs argue that these are not compulsory counterclaims, under the test articulated in *Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir. 1974).  The Court disagrees.  Cigna's counterclaims for unjust enrichment and tortious interference are based on largely the same issues of fact as the ASCs' principal claims, much of the same evidence supports or refutes both sets of claims, and the two sets of claims are logically related in the sense that they arose from the same business practices by each party that are challenged by the opposing party.  *See Pipeliners Local*, 503 F.2d at 1198.  Therefore, the relevant date for measuring whether these claims are timely is December 18, 2013.

As to accrual, the Court agrees with Cigna that separate claims accrued as to each overpaid claim or each patient who was induced to breach the contract, rather than a generalized accrual for the entire category of unjust enrichment or tortious interference claims when Cigna began investigating each ASC's practices.  Each benefits claim gives rise to separate damages based on the particular facts of that patient's services.  As such, the Court holds that the following claims are time-barred: (1) any claims for tortious interference by Colorado ASCs that accrued before December 18, 2011, and (2) any claims for unjust enrichment, or for tortious interference by Westminster, that accrued before December 18, 2010.  The ASCs' Motion as to these claims is granted in part in that limited respect.

4.      Unjust Enrichment: Counterclaim VII

The ASCs argue that Cigna's claim for unjust enrichment fails because the ASCs provided services to the patients for which they sought reimbursement and thus were

36

not unjustly enriched, and because Cigna did not suffer a detriment from paying the claims.  (ECF No. 97 at 34–35.)  In response, Cigna contends that there is evidence the ASCs were overpaid based on the value of the service provided, because the ASCs charged their patients based on lower rates than that submitted to Cigna, and because the fee schedule was set to achieve an average reimbursement of 20–30% of the billed charges.  (ECF No. 112 at 33.)  Cigna further argues that it has necessarily suffered a detriment because it has paid the difference between the charges the ASCs submitted and the true value of their services.  (*Id.* at 33–34.)

The Court finds that Cigna has presented sufficient evidence of unjust enrichment, when viewing the facts in the light most favorable to Cigna.  An unjust enrichment claim requires evidence that the defendant knowingly received a benefit at the plaintiff's expense that it would be unjust for the defendant to retain.  *See Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008); *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007).  Cigna has presented evidence on which a reasonable jury could rely that the actual value of the services the ASCs provided was lower than the amount of the claims it submitted.  If the jury finds as much, then Cigna paid claims at rates higher than the value of the services provided, which constitutes a detriment.  Therefore, Cigna has stated a claim for unjust enrichment, and the ASCs' Motion is denied as to Counterclaim VII.

5.    Tortious Interference with Contract: Counterclaim VIII

Cigna's tortious interference claim alleges that the ASCs' billing practices interfered with the contracts between Cigna and the patients whom it insured through its plans.  (ECF No. 17 at 51–53.)  The ASCs argue that Cigna has failed to present

37

evidence supporting all the elements of a claim for tortious interference.  (ECF No. 97 at 36–40.)

A tortious interference claim has five elements under both Colorado and Maryland law: (1) existence of a contract between the plaintiff and a third party; (2) knowledge of that contract by the defendant; (3) the defendant's intentional, improper interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff.  *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991); *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 170 (Colo. 1993).  The ASCs challenge the latter three elements of this claim.

As to breach, the ASCs argue that the plans do not require a member to pay his or her full cost share as a condition of coverage.  (ECF No. 97 at 37–38.)  But Cigna explains that the cost share provisions of its plans require payment of specified portions of out-of-network services, and to the extent that the ASCs' patients did not do so, they breached their contracts.  (ECF No. 112 at 34–35.)  The Court agrees with Cigna that a reasonable jury could find that cost share payments were required under the contracts and that a patient's failure to pay under this provision in full was a breach.  This finding is not made unreasonable by a Cigna employee's statement that a patient's choice to obtain treatment at the ASCs' facilities did not breach the contract, as the ASCs suggest.  (ECF No. 97 at 38; *see also* ECF No. 112 at 35 n.7.)

As to intent and improper interference, the ASCs contend that there is no evidence they intended to induce a breach.  (ECF No. 97 at 38–39.)  Again, the Court finds that Cigna has presented sufficient evidence to satisfy this element.  A reasonable jury could infer intent from the ASCs' admitted practices of offering to provide out-of-

network services at in-network rates, and of accepting much lower cost share payments from patients than provided for in their plans.  Such an inference could support a jury's conclusion that the ASCs therefore intended to obtain these patients' business by discounting their cost share rates below what their plans called for, which caused resulting interference with the contracts under Cigna's theory of the case.

Finally, the ASCs challenge Cigna's evidence of damages, arguing that Cigna paid no more than its plans required it to pay.  (ECF No. 97 at 40.)  However, this depends on whether Cigna's plans in fact permitted it to discount or deny claims under its fee-forgiving protocol, as it later did.  As discussed above, there are factual disputes as to whether the fee-forgiving protocol was appropriate under the plans.  If the protocol was permissible, then Cigna's acts to pay claims in full (before the protocol was implemented) resulted in overpayments that caused it damages.  Consequently, there is a factual dispute preventing summary judgment.

The Court finds that Cigna has provided sufficient evidence to satisfy all elements of its tortious interference with contract claim, and therefore the ASCs' Motion is denied as to that claim.

6.    Standing

The ASCs argue that, as to the self-funded plans, Cigna lacks standing to seek money damages for its unjust enrichment and tortious interference claims because any damages were suffered by the plan sponsor, not Cigna.  (ECF No. 97 at 41.)  Cigna points out that its agreements with clients for self-funded plans explicitly authorize it to "take all reasonable steps to recover . . . overpayment[s]" on behalf of the plan sponsor.  (ECF No. 112 at 40.)  The ASCs respond that these claims do not seek

"overpayments," and even assuming they do, such overpayments can only be determined with reference to plan interpretation such that the claims are preempted by ERISA.  (ECF No. 123 at 22–23.)  The Court rejects this revived preemption argument, for the same reasons discussed above.

As to whether the restitution and damages sought in the unjust enrichment and tortious interference claims are "overpayments," the Court's above analysis of each of these claims at Parts III.E.4–5 clarifies that the relief sought by both claims may be characterized as overpayments.  The unjust enrichment claim seeks restitution of the amount it paid above the actual value of the ASCs' services, while the tortious interference claim seeks damages for the difference between what Cigna paid and what it could have paid for the ASCs' services in the absence of interference.  As such, the Court finds that the relief sought in these claims is covered by the agreement between Cigna and its plan sponsors for it to seek overpayments on their behalf, and therefore Cigna has standing to pursue these claims.

## F.     Declaratory Relief: Cigna's Counterclaim XII

Lastly, the ASCs argue that Cigna's Counterclaim XII for declaratory relief should have been dismissed in the Court's prior Order on the ASCs' Motion to Dismiss, because it seeks "a declaration that the claims for reimbursement submitted by the ASCs are not for covered services, and are not payable under employee health and welfare benefit plans that are insured or administered by Cigna . . . [and] that the ASCs must return all sums received from Cigna."  (ECF No. 17 at 61.)  The ASCs point to the Court's analysis of Cigna's request for declaratory relief encompassed in its Counterclaim I, which held that "it merely couche[d] the restitution claim in the form of a

40

declaration" and that such relief was not cognizable under ERISA § 502(a).  (ECF No. 80 at 8.)  The ASCs also argue that this claim is redundant because the issues contained therein will be resolved by resolution of the ASCs' own claims.  (ECF No. 97 at 41.)

Cigna agrees that the first part of its declaratory relief claim—seeking a declaration that the ASCs' claims are not for covered services—was dismissed by the Court's prior order.  (ECF No. 112 at 39.)  As to the second part of the claim, which seeks a declaration that the claims are not payable, Cigna argues that this request for relief is like the injunctive relief sought in Counterclaim I under ERISA that the Court permitted to proceed.  (*Id.* at 39–40.)

The Court agrees with Cigna on this issue, and now clarifies its prior order.  Cigna's counterclaims for declaratory relief that only seek restitution of payments fall outside the scope of § 502(a) and were therefore dismissed, whether they occurred in Counterclaim I or Counterclaim XII.  (*See* ECF No. 80 at 8–9.)  That ruling included Cigna's request for declarations that "any payments the ASCs received under such claims should be returned to Cigna," and that "the claims for reimbursement submitted by the ASCs are not for covered services . . . ."  (ECF No. 17 at 60–61.)  While the remaining request for declaratory relief, which seeks a declaration that the ASCs' claims "are not payable under employee health and welfare benefit plans that are insured or administered by Cigna," may ultimately reveal itself to be redundant, the Court cannot find as much at this stage given the factual disputes in the remaining claims.

Accordingly, summary judgment is not appropriate on Cigna's remaining request for declaratory relief, and the ASCs' Motion is denied as to Counterclaim XII.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Cigna's Motion for Summary Judgment (ECF No. 105) is GRANTED IN PART as to Plaintiffs' Claims VI and VII under the Sherman Act, as to Plaintiffs' Claim I solely on certain theories of liability specified at Part III.B.3, above, and as to certain unexhausted ERISA benefits claims as described at Part III.B.2, above, and DENIED IN PART in all other respects;

2.  Plaintiffs' and Counterclaim Defendants' Motion for Summary Judgment (ECF No. 106) is GRANTED IN PART as to Cigna's Counterclaim IX for declaratory relief under Colorado Criminal Code § 18-13-119, and as to certain portions of Cigna's Counterclaims VII and VIII that are time-barred as described at Part III.E.3, above, and DENIED IN PART in all other respects; and

3.  This case remains set for a jury trial to commence on October 17, 2016.  Given the reduction in the number of claims remaining for trial, the length of trial shall be shortened to ten days, and will conclude on Friday, October 28, 2016.

Dated this 21st day of March, 2016.

BY THE COURT:

William J. Martinez
United States District Judge